Exhibit 16

**REMARKS**

Claims 1-20 are pending.

Claims 1-20 are rejected under 35 U.S.C. 101 as being directed to ineligible subject matter.

Claims 2, 6, 13 & 17 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre- AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. Claims have been amended.

Claims 2 & 13 are rejected as failing to define the invention in the manner required by 35 U.S.C. 112(b) or pre-AIA 35 U.S.C. 112, second paragraph. The claim(s) are narrative in form and replete with indefinite language. The structure which goes to make up the device must be clearly and positively specified. The structure must be organized and correlated in such a manner as to present a complete operative device. The claim(s) must be in one sentence form only. Note the format of the claims in the patent(s) cited. Claims 2 & 13 recites the limitation "the digital artifact" in line 1 of the claim. There is insufficient antecedent basis for this limitation in the claim. Claims have been amended.

Claims 6 & 17 provides for the use of coupon, but, since the claim does not set forth any steps involved in the method/process, it is unclear what method/process applicant is intending to encompass. A claim is indefinite where it merely recites a use without any active, positive steps delimiting how this use is actually practiced. Claims 6 & 17 is rejected under 35 U.S.C. 101 because the claimed recitation of a use, without setting forth any steps involved in the process, results in an improper definition of a process, i.e., results in a claim which is not a proper process claim under 35 U.S.C. 101. See for example Ex parte Dunki, 153 USPQ 678 (Bd.App. 1967) and Clinical Products, Ltd. v. Brenner, 255 F. Supp. 131, 149 USPQ 475 (D.D.C. 1966). Claims have been amended.

Claims 1-20 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by Abell et al. (US Patent Pub. 20030172028, referred to hereinafter as Abell).

Applicant thanks the Examiner for the courtesy of a phone conference conducted on October 20, 2015 During the phone conference, Applicant and the Examiner discussed prior art, claim terminology, and possible amendments to facilitate prosecution.

Support for amended claims can be found at the end of the 103 section.

14/083,344

103

It is respectively submitted that Abell does not reach or suggest amended independent claims which recite in part,

"receiving, at a management server, an identification ~~code associated with the user~~ of one or more products selected from a list of products using a non-browser based application through user input via a mobile device display ~~and a transaction confirmation, wherein the management server maintains a plurality of user profiles and one or more default payment methods corresponding to the user profiles~~, wherein the non-browser based ~~payment~~ application ~~in~~ is stored on a mobile device ~~maintains payment account information and is a non browser based mobile application preinstalled or downloaded and installed in a mobile device memory included in a mobile device,~~ the mobile device comprising a mobile device display, a mobile device processor, a mobile device radio interface, and a mobile device wireless fidelity (Wi-Fi) interface;

receiving, at the management server, a transaction purchase request from the non-browser based application stored on the mobile device, wherein the non-browser based application stored on the mobile device receives the transaction purchase request through user input via the mobile device display;

receiving, at the management server, ~~transaction data~~ transaction verification from a transaction server which processes the ~~remote~~ transaction using a payment method ,wherein the transaction verification indicates that the transaction has processed ~~based on input received at the payment application via the mobile device display from a user to purchase an item selected at the mobile device~~; and

after the transaction has processed, sending, from the management sever, to the non-browser based ~~payment~~ application–a digital artifact for display within a specific ~~payment~~ non-browser based application generated screen"

For example, Abell positively recites that the customer device ("mobile device") transmits the purchase request to a terminal (209) which transmits the authorization request algorithm ("purchase an item") to the financial institution ("management server") for processing in paragraph 33 and uses Bluetooth in paragraph 35 relied upon by the Examiner and shown below.

14/083,344

[0033]   The customer accessible components of network **201** includes terminal **209** affiliated with server **203** and customer-portable, wireless enabled device **211**. Terminal **209** may be a part of a larger component, such as a vending machine, as described below, or may be a cash register or similar device. **FIG. 3** illustrates a block diagram of representative sub-components of terminal **209**. As illustrated, terminal comprises wireless (or RF) antenna interface **301**, processor **303**, and memory **305**. Executing on processor **303**, is a wireless authorization algorithm (processor code) **306** that, responsive to a receipt of an activation signal, implements the processes described below and illustrated in **FIG. 5**. In the illustrative embodiment, terminal also com-

[0035]   The invention finds particular applicability within a merchant environment. Thus, the invention provides a merchant system that is enabled with a server and/or terminal that supports the Bluetooth payment method. The customer has a Bluetooth-enabled device, similar to a cellular phone or computer, and is thus able to link to the merchant's server or backend infrastructure and provide the customer's Bluetooth identifying (ID) information and an authorization to bill a particular service contract of the customer.

14/083,344

FIGURE 2



In contrast claimed embodiments don't teach use of a terminal and amended independent claims recite in part, receiving, at a management server, an identification ~~code associated with the user~~ of one or more products selected from a list of products using a non-browser based application through user input via a mobile device display ~~and a transaction confirmation, wherein the management server maintains a plurality of user profiles and one or more default payment methods corresponding to the user profiles~~, wherein the non-browser based ~~payment~~ application ~~in~~ is stored on a mobile device ~~maintains payment account information and is a non-browser based mobile application preinstalled or downloaded and installed in a mobile device memory included in a mobile device,~~ the mobile device comprising a mobile device display, a mobile device processor, a mobile device radio interface, and a mobile device wireless fidelity (Wi-Fi) interface;

receiving, at the management server, a transaction purchase request from the non-browser based application stored on the mobile device, wherein the non-browser based application stored

14/083,344

11

on the mobile  device  receives the transaction purchase request through user input via the mobile
device display;

~~receiving, at the management server, a transaction verification from a transaction server,
wherein the transaction verification  indicates  that  a transaction has processed using the payment
credentials method to purchase the one or more products;~~

receiving, at the management server, ~~transaction data~~ transaction verification from a
transaction server which  processes the ~~remote~~ transaction using a payment method ,wherein the
transaction verification  indicates  that the transaction has processed ~~based on input received at the
payment application via the mobile device display from a user to purchase an item selected at
the mobile device~~; and

after the transaction has processed, sending, from the management sever, to the non-
browser based ~~payment~~ application  a digital  artifact for display within  a specific ~~payment~~ non-
browser based application  generated screen"


Abell's design has different implications  from an engineering, reliability, scalability, and
cost perspective.  For example, the customer device ("mobile  device") hast to have software to
communicate  with the terminal and the terminal has to receive the customer entered information
("transaction confirmation ") from the customer device ("mobile  device") and transmit the
customer entered information ("transaction confirmation ") to the financial institution
("management server") so it's more complex.  Since the  customer device ("mobile  device") has
to connect to the terminal using Bluetooth, it's not as reliable  if the customer device ("mobile
device") is too far away or there are challenges with  Bluetooth synchronization  it's also not as
scalable since many terminals have to be deployed.  Therefore, it's more costly.


Furthermore, while Abell discloses that the server returns an alert of approval in
paragraph 40 relied upon by the Examiner and shown below, Abell does not disclose that  digital
artifact is based on one or more targeting parameters

[0040]   Returning now to FIG. 6, when a customer desires to make a payment utilizing the customer device, the customer selects the payment mode feature on the customer device and enters his security code to activate the algorithm as shown at block 605. The algorithm generates a packet with necessary information and issues the packet out via a wireless transmitter as indicated at block 607. When the terminal, which receives the authorization request, is programmed to provide a confirmation of approval, and that

confirmation is to be received by the customer terminal as indicated at block 609, the customer is alerted upon receipt of the approval (or rejection) as shown at block 611. The process then ends as shown at block 613.

In contrast, amended independent claims recite in part,"after the transaction has processed, sending, from the management sever, to the non-browser based ~~payment~~ application--a digital artifact for display within a specific ~~payment~~ non-browser based application generated screen

I.) To **support an obviousness rejection, the Manual of Patent Examining Procedure (MPEP) §2143.03 requires "all words of a claim to be considered" and MPEP § 2141.02** requires consideration of the "[claimed invention and prior art as a whole." Further, the Board of Patent Appeal and Interferences recently confirmed that a proper, post-KSR obviousness determination still requires the Office make "a searching comparison of the claimed invention – including all its limitations – with the teaching of the prior art." In re Wada and Murphy, Appeal 2007-3733, citing In re Ochiai, 71 F.3d 1565, 1572 (Fed. Cir. 1995) and CFMT v. Yieldup Intern. Corp., 349 F.3d 1333, 1342 (Fed. Cir. 2003). In sum, it remains well-settled law that an obviousness rejection requires at least a suggestion of all of the claim elements.. Because the obviousness rejection ignores limitations reciting in part ,

"receiving, at a management server, an identification ~~code associated with the user~~ of one or more products selected from a list of products using a non-browser based application  through user input via a mobile device display ~~and a transaction confirmation, wherein the management server maintains a plurality of user profiles  and one or more default payment methods corresponding to the user profiles,~~ wherein the non-browser based ~~payment~~ application   ~~in~~ is stored on  a mobile device ~~maintains payment account information  and is a non-browser based~~

14/083,344

13

~~mobile application preinstalled or downloaded and installed   in a mobile device memory included  in a mobile device,~~ the mobile device comprising a mobile device display, a mobile device processor, a mobile device radio interface, and a mobile device wireless fidelity (Wi-Fi) interface;

receiving, at the management server, a transaction purchase request from the non-browser based application stored on the mobile device, wherein the non-browser based application stored on the mobile device receives the transaction purchase request through user input via the mobile device display;

receiving, at the management server, ~~transaction data~~ transaction verification from a transaction server which processes the ~~remote~~ transaction using a payment method ,wherein the transaction verification indicates that the transaction has processed ~~based on input received at the payment application via the mobile device display from a user to purchase an item selected at the mobile device~~; and

after the transaction has processed, sending, from the management sever, to the non-browser based ~~payment~~ application--a digital artifact for display within a specific ~~payment~~ non-browser based application generated screen"

**of independent claims, the obviousness rejection is improper.**

**II) Furthermore, an obviousness rejection is improper per MPEP 2144, "if the art in any martial respect teaches away from the claimed invention. In re Geisler, 116 F3d 1465 1471 "  and in KSR, the Supreme Court held that "when prior art teaches away from combining known elements, discovery of a successful means of combining them ore likely to be non-obvious.  KSR Intr'l Vo. v/ Teleflex, Inc., 550(U.S. 398, 416 (20070. "** A reference may be said to teach away when a person of ordinal skill, upon reading the reference , would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant**."**

**IV)** Moreover, per MPEP 2143.01 (V),"**If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima** facie obvious". In re Ratti, 270 F.2d 810, 123 USPQ 349 (CCPA 1959) MPEP 2143.01(v) .

**Stated another way, simple substitution does not apply.**
14/083,344

IV) In addition, per MPEP 2143.01 (VI)," "**If a proposed modification would render the prior art invention being modified unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification.** In re Gordon, 733 F.2d 900, 221 USPQ 1125 (Fed. Cir. 1984)."

V) Instead, the Examiner's proposed reference and more importantly modification of the proposed reference to meet the **claim limitation appears to be based on impermissible hindsight, which is insufficient to support a** *prima facie* **obviousness rejection**

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) which has been replaced by Application No. 12/592,581) which is incorporated by reference, **support for input via the display** can be found, for example, in paragraph 28, "The radio transceiver 122 communicates with a radio processor 123, which processor has the capability to perform not only the radio communication services necessary to allow for phone and data communications, but can also execute various programs that are stored in the memory 126, **which programs can receive inputs from the user via the display** 124 and/or a keypad 125 associated with the mobile device 110."

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) which has been replaced by Application No. 12/592,581) which is incorporated by reference, **support for programs/applications** can be found, for example, in paragraph 29, "Application programs running on the radio processor 123 are commonly BREW or J2ME applications and can encompass a broad array of application types. For example, current applications include games, enterprise applications, and multimedia applications. While all such applications can be used with the present invention, or particular significance with the present invention are applications, as described further herein, that provide movie & event information applications that provide for ticket, content, item and service purchases and payment management (wallet) applications."

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) **support for identification codes** can be found, for example in paragraph 33, **"The transaction request signals and the transaction response signals associated with the**

14/083,344

**transaction preferably include identification code associated with the user, as well as information relative to the transaction, such as item, quantity, vendor, as is known. "**

**As stated in the Specification, support for list can be found below**:

[0017] "When a consumer (or user) is shopping online and they are ready to pay for their products, the consumer opens his mobile wallet and selects one of the payment methods (e.g., credit card, debit card, prepaid card, etc.) from their mobile wallet. If a default card has been selected already, this step is not necessary. "

[0020] "Referring to FIG. 2, in one implementation, the mobile application 200 maintains a shopping list 202 for a consumer. Accordingly, consumers have the ability to store their shopping list in their mobile wallet and add, delete, or change items on their shopping list either in offline or online mode."

[0021] **User input is received selecting one or more items for purchase (e.g., at the point** of sale device) (step 302). In general, the transaction being made at the point of sale device can be any type of transaction that involves the exchange or transfer of funds -- e.g., the transaction can be a payment transaction, a fund transfer, or other type of transaction. In response to a request from the user to purchase the one or more items, a total purchase amount for the one or more items is calculated (e.g., by the point of sale device) (step 304). If the user has coupons in their mobile wallet the user can either manually apply the coupon or have the coupon automatically applied during the transaction and the transaction amount is updated. **The user request to purchase an item can be received, e.g., by a user clicking on a "buy now" icon that is displayed on a graphical user interface of the point of sale device.**

As stated in US Patent Publication No. 2008/0052192 (Application No. 11/933,351) which is incorporated by reference filed on October 31, 2007 and claims priority to US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441), support for graphical user interface /menu can be found, for example, in paragraphs 122 and Figure 10a and 10 b and paragraph[h 122 shown below

14/083,344



**FIG. 10A**          **FIG. 10B**

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for digital artifact sent after the transaction can be found, for example, in the paragraphs and figure 3C below:

[0016] In another embodiment is described a system for assisting a user to complete a transaction. The system comprises a hand-held mobile device, the hand-held mobile device having: a processor; a secure memory coupled to the processor; a first transceiver coupled to the processor and adapted to send transaction request signals and receive transaction response signals over a first communication channel, the transaction request signals and the transaction response signals associated with the transaction; a visual display coupled to the processor; and a second radio transceiver coupled to the processor and adapted to send outgoing voice and data signals and receive incoming voice and data signals over a second communication channel that is different than the first communication channel, the incoming and outgoing data signals including transaction signals associated with the transaction.

14/083,344

17



FIG. 3C

[0048.] "An example of a typical transaction requiring such communication between the secure element 130 and the radio element 120 is one in which the POS terminal 150 allows for the transfer of detailed purchase information from the POS terminal 150 to the secure element 130, as well as transactional information from the POS terminal 150 and/or the transaction server 170 to the management server 180. The management server 180 can then also communicate with the radio element 120 via the radio channel. This allows for the matching and reconciliation of detailed purchase information and, if the transaction fails, failure details can be matched to the purchase information, and forwarded in real-time to the user via the radio element

**As stated in US Published Application No. 2009/0132362 (Application No. 11/944,267) which is incorporated by references, support for sending a digital artifact after a transaction can be found, for example, in the paragraphs below:**

[0023] "FIG. 5 illustrates a method 500 for managing a user profile database (e.g., user profile database 302). A user transaction on a mobile communication device is detected (e.g., by correlation engine 300) (step 502). The user transaction can be a payment transaction, a fund transfer, or other type of transaction made through a mobile communication device. In response to the user transaction, targeting parameters associated with a user profile of the user is updated (e.g., by correlation engine 300) (step 504). Updating the targeting parameters in a user profile

14/083,344

permits more relevant artifacts to be sent to a user based on transactions made by a user through a mobile communication device. In general, as usage of mobile communication devices for payment transactions increases in everyday use, the techniques described herein will permit more relevant artifacts to be sent to users than conventional systems."

[0024] "In general, the artifact can be an advertisements, receipt, ticket, coupon, media, content, and so on. "

[0017]"FIG. 1 illustrates one implementation of a communication system 100. The communication system 100 includes a hand held, wireless mobile communication device 102 a point of sale device 104 and a management server 106. In one implementation, the mobile communication device 102 includes a mobile application (discussed in greater detail below) that permits a user of the mobile communication device 102 to conduct payment transactions. Payment transactions can include, for example, using contactless payment technology at a retail merchant point of sale (e.g., through point of sale device 104), using mobile/internet commerce (e.g., purchase tickets and products, etc.), storage of payment information and other digital artifacts (e.g., receipts, tickets, coupons, etc.), storage of banking information (payment account numbers, security codes, PIN's, etc.), and accessing banking service (account balance, payment history, bill pay, fund transfer, etc.), and so on. The mobile communication device 102 can be a cellular phone, a wireless personal digital assistant (PDA), or other wireless communication device"

**As stated in US Patent Publication No. 2008/0052192 (Application No. 11/933,351) which is incorporated by reference filed on October 31, 2007 and claims priority to US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441), support for sending the digital artifact after a transactions can be found, for example, in paragraphs below:**

[0 118], "As part of an out-of-band sync between the management server 510 and the mobile communication device, the non-secure digital artifacts are downloaded and stored in the mobile communication device

14/083,344

[0119," Any pending digital artifacts (including notifications, etc.) are displayed on the mobile communication device."

Figure 10a and 10 b shown below



**FIG. 10A**



**FIG. 10B**

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for management server and transaction server can be found, for example, in the paragraph 10, "In one aspect of the invention, the present invention provides a method of completing a transaction in which a management server assists a transaction server

14/083,344

and a point of sale terminal in forwarding transaction information to a hand-held mobile device, with the transaction having originated from the hand-held mobile device"

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for transaction from mobile device can be found, for example, in the paragraph 16, "In another embodiment is described a system for assisting a user to complete a transaction. The system comprises a hand-held mobile device, the hand-held mobile device having: a processor; a secure memory coupled to the processor; a first transceiver coupled to the processor and adapted to send transaction request signals and receive transaction response signals over a first communication channel, the transaction request signals and the transaction response signals associated with the transaction; a visual display coupled to the processor; and a second radio transceiver coupled to the processor and adapted to send outgoing voice and data signals and receive incoming voice and data signals over a second communication channel that is different than the first communication channel, the incoming and outgoing data signals including transaction signals associated with the transaction."

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for transaction from mobile device can be found, for example, in the paragraph 20, "A method according to the invention includes the steps of sending a first transaction request signal from a first transceiver to any one of a plurality of conventional point-of-sale terminals using a first communication channel, the transaction request signal including an identifier stored in the secure memory and that is associated with the user of the hand-held mobile device, thereby causing the one conventional point-of-sale terminal to transmit the transaction request signal to a transaction server that is remote from the point-of-sale device;

receiving from a management server a first transaction response signal at the second transceiver over a second communication channel that is different than the first communication channel, **wherein the management server obtains transaction data from a transaction server, associates the transaction data with the user, and provides at least some of the transaction data as the first transaction response signal to the second transceiver; and**

**displaying at least some of the first transaction response signal on the visual display associated with the hand-held mobile device"**

14/083,344

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for **verification signal can be found, for example, in the paragraph 25,** "a transaction server that receives the one transaction request signal from the point-of-sale terminal, verifies the transaction, and forwards a transaction verification signal to the management server; and **a management server that receives the transaction verification signal, identifies the user corresponding thereto, and provides as one of the transaction signals a first transaction response signal to the second radio transceiver.**"

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for **transaction server and management server can be found, for example, in the paragraph 40,** "software in transaction server 170 that will extract the piggybacked payload, associate the payload with the management server 180 if needed, and then authenticate, authorize, and execute transfers of transaction information to the management server 180."

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for **management server and transaction server can be found, for example, in the paragraph 39 and Figure 1,** " In another embodiment, the piggybacked payload is sent, instead of to the transaction server 170, to the management server 180, which can then associate the transaction and notify the transaction server 170, the POS terminal 150 and/or the POE terminal as needed."

14/083,344



FIG. 1

As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) support for management server and transaction server can be found, for example, in the paragraph 48, "An example of a typical transaction requiring such communication between the secure element 130 and the radio element 120 is one in which the POS terminal 150 allows for the transfer of detailed purchase information from the POS terminal 150 to the secure element 130, as well as transactional information from the POS terminal 150 and/or the transaction server 170 to the management server 180. The management server 180 can then also communicate with the radio element 120 via the radio channel. This allows for the matching and reconciliation of detailed purchase information and, if the transaction fails, failure details can be matched to the purchase information, and forwarded in real-time to the user via the radio element

As stated in US Patent Application Publication No. 2009/0124234 (Application No. 11/939,821) support for biometrics can be found, for example, in the paragraph 4, "The method can include use of biometrics to authenticate the user before authorizing the transacation."

14/083,344

**101**

It is respectively submitted that the Applicant claims are patent eligible since they not claiming an abstract idea, but teaches a specific, novel way of paying and provide the following:

1. The transaction server acts in concert with the recited features of the mobile device to process the transaction in response to a purchase request received from a non browser mobile application based on input from the user via the mobile device display and send a transaction verification to a management server which sends a digital artifact to the non browser application after the transaction. This inextricable tie between the transaction server, management server and recited features of the mobile device is similar to the patent eligible example #4 described in "Patent Eligible Subject Matter Examples " published by the on January 27, 2015

2. Improvements to another technology (e.g. Bluetooth) or technical field (e.g. ecommerce)

3. Improvements to the function of the computer itself (e.g. payments)

4. Meaningful limitations beyond generally linking the use of an abstract idea to a particular technological environment (e.g. non browser application that receives user input via the mobile device display)

5. Does not tie up the field of mobile payments since there are other methods including Bluetooth, browser, and SMS referenced by the Examiner on page 12 of the OA as shown below:

- Using a POS terminal for processing vs a server as taught by Abell, Labrou, Bemmel, and Hammad,
- Using a plastic card that stores the credit card numbers in the card vs a server as taught by Pitroda and Forslund.
- Using SMS as taught by Ferreira.
- Using NFC as taught by Chen

**1. The transaction server acts in concert with the recited features of the mobile device to process the transaction in response to a purchase request received from a non browser mobile application based on input from the user via the mobile device display and send a transaction verification to a management server which sends a digital artifact to the non browser application after the transaction. This inextricable tie between the transaction server, management server and recited features of the mobile device is similar to the patent**

14/083,344

**eligible example #4 described in "Patent Eligible Subject Matter Examples " published by the on January 27, 2015.**

Applicant respectively submits that claims are further limited to a mobile device with a **non browser application**, processor, wireless transceiver, **a display that receives user input**, and a wireless transceiver that transmits a purchase request a transaction server that processes the transaction and sends a verification to the management server, receives a digital artifact from the management server after the transaction, and displays the digital artifact in the non browser application generated screen.

**Therefore taken as a whole the claimed inventions has additional limitations that amount to significantly more than an abstract idea.**

## 2. Improvement over existing technologies (e.g. Bluetooth)

Applicant's invention, which claims priority back 2005, teaches a specific, novel way of paying and is an improvement over Bluetooth for mobile payments ("another technology") for the following reasons:

- More convenient since users can:
  - Purchase products anytime and anywhere. In contrast, users have to drive to a physical retail store, the users mobile device has to have Bluetooth and be configured to use Bluetooth which is non trivial. Its important to note that Bluetooth was not prevalent in mobile devices 2007 when this invention was written . Merchant also has to have Bluetooth terminals.
  - Conduct banking and money management transactions anytime and anywhere.
  - Carry all of their credit cards, coupons, tickets, receipts, etc with them in their mobile device since they are digital.
- Less costly since mobile device does not have to have Bluetooth and merchants don't have to have Bluetooth terminals.  Users also save money on gas since they don't have to drive to the store.
- More scalable since the mobile device does not have to have Bluetooth and the merchants or server doesn't have to have Bluetooth terminals.

14/083,344

- Increased value to user since user specific/ personalized digital artifacts (e.g. ads, coupons, etc) are delivered to the mobile device that are correlated based on continuing data feed into a server about the users age, gender, location, transactions including those made through the mobile device and these user specific/personalized digital artifacts are delivered to the mobile device when and where the user needs them.

a.     As stated in US Patent Publication No. 2008/0052192 (application no. 11/933,351) which is incorporated by reference support for **improvement over Bluetooth** can be found, for example, in paragraph 3 "Further, wireless mobile communication devices, such as cell phones, blackberries or other personal digital assistants, are also being used for making transactions. For example, U.S. Patent Application No. US/2003/0172028 provides a description of a personal payment system that utilizes a wireless enabled device such as a cell phone. As described, the personal payment system interacts using a Bluetooth protocol with a terminal located nearby the wireless enabled device." and paragraph 5, "While the references discussed above illustrate that certain transactions are possible using wireless mobile devices, one problem associated with the references are is that implementations described in the references are not useful in a wide variety of different platforms, but rather are typically tied to a specific platform."

b. As stated in US Patent Publication No. 2008/0052192 (application no. 11/933,351) which is incorporated by reference support **improvement over NFC** can be found, for example, in paragraph 5, "While the references discussed above illustrate that certain transactions are possible using wireless mobile devices, one problem associated with the references are is that implementations described in the references are not useful in a wide variety of different platforms, but rather are typically tied to a specific platform. For example, NFC devices are only usable with NFC readers. Another problem is that conventional wireless mobile devices generally have a very limited ability to be used in transactions."

c. As stated in the Specification support for **improvement over ecommerce** can be found, for example, in paragraph 13, "The point of sale device 104 can be a desktop computer, laptop computer, terminal, or other device that is configured to receive user input selecting items for purchase or other transaction. " and in paragraph 14, for

14/083,344

example, "In one implementation, authorizations for payment transactions that are made through the point of sale device 104 are sent from the point of sale device 104 to an issuer authorization (e.g., management server 106) *through* the mobile communication device 102 (as shown in FIG. 1). In one implementation, an issuer authorization is a payment entity that either approves or disapproves a payment transaction. An issuer authorization can be, e.g., a person, computer system, bank (or other third party). One potential benefit of having payment authorizations flow through the mobile communication device 102 is that sensitive user information (e.g. account numbers, pin numbers, and/or identity information) need only be sent from the mobile communication device 102 directly to an issuer authorization. Such operation reduces the potential for identity theft and/or fraudulent purchases made through a point of sale device. For example, (in one implementation) payment authorizations cannot be sent to an issuer authorization if the mobile communication device 102 is turned off."

d. As stated in US Patent Application Publication No. 2007/0156436 (Application No. 11/467,441) which has been replaced by Application No. 12/592,581) which is incorporated by reference, **support for scalability** can be found, for example, in paragraph 42, "As such, the management server 180 can store user personal and credit and transactional information and history, including a code associated with the user, for a variety of different mobile devices, thereby allowing a system which can scale."

e. As stated in US Application Publication Number 20079/0124234 (Application No. 11/939,821) which is incorporated by reference **support for security** can be found, for example, in paragraph in 13, "In addition, data (corresponding to a payment transaction) can be stored on the remote server (e.g., remote server 106 (FIG. 1)) in a secure manner. In one implementation, the remote server is a management server that is can be maintained by Mobile Candy Dish or a trusted third party, as described in U.S. Patent Application No. 11/933,351. For example, the data can be securely stored on the remote server using conventional PCI guidelines. Hence, in the event the mobile communication device 102 is lost (or stolen), no confidential data can be recovered as no data is stored on the mobile communication device 102. In addition, an added benefit is that a user can recover seamlessly by syncing new mobile communication device (via new installation of the mobile application) with the service. Thus, in one implementation, sensitive information (e.g., banking account numbers, credit card

14/083,344

account numbers, expiry dates, and so on) are never stored on the mobile communication device. This reduces risk and exposure of the user's private information and data.

### 3. Improvements to the functioning of the computer

Applicant's invention, which claims priority to 2005, teaches a specific, novel way of paying and has been an improvement for mobile devices because it:

- Enables consumers to do more with their mobile device such as pay for products (Back in 2007 before smart phones existed and the Motorola Razor with a 2 inch screen and 4 MB of memory was one of the most popular cell phones, mobile devices were primarily used for games, ringtones, and text messaging)
- More convenient since users can:
  - Purchase products anytime and anywhere.
  - Conduct banking and money management transactions can be made anytime and anywhere.
  - Carry all of their credit cards, coupons, tickets, receipts, etc with them in their mobile device since they are digital.
  - Redeem digital tickets at the venue with their mobile device.
  - Redeem digital coupons at the retail store with their mobile device

### 4. Improvements to the functioning of the computer (i.e. mobile device) itself to enable mobile payments instead of just games, enterprise applications, and multimedia

As stated in US Patent Publication No. 2008/0052192 (Application No. 11/933,351) which is incorporated by reference **support for other capabilities** t can be found, for example, in paragraph 5, " Another problem is that conventional wireless mobile devices generally have a very limited ability to be used in transactions."

As stated in US Application Publication Number 2007/0156436 (Application No. 11/467441 which has been replaced by US Application 12/592,581) which is incorporated by reference **support for other capabilities** can be found, for example, in paragraph in 29 " Application programs running on the radio processor 123 are commonly BREW or J2ME applications and can encompass a broad array of application types. For example, current applications

14/083,344

include games, enterprise applications, and multimedia applications. While all such applications can be used with the present invention, or particular significance with the present invention are applications, as described further herein, that provide movie & event information applications that provide for ticket, content, item and service purchases and payment management (wallet) applications.

As stated in the Specification **support for purchases and payment management applications** can be found, for example, in paragraph 12, "FIG. 1 illustrates one implementation of a communication system 100. The communication system 100 includes a hand-held, wireless mobile communication device 102 a point-of-sale device 104 and a remote server 106. In one implementation, the mobile communication device 102 includes a mobile application (discussed in greater detail below) that permits a user of the mobile communication device 102 to conduct payment transactions. Payment transactions can include, for example, using contactless payment technology at a retail merchant point of sale (e.g., through point of sale device 104), using mobile/internet commerce (e.g., purchase tickets and products, etc.), storage of payment information and other digital artifacts (receipts, tickets, coupons, etc), storage of banking information (payment account numbers, security codes, PIN's, etc.), and accessing banking service (account balance, payment history, bill pay, fund transfer, etc.), and so on."

## 5. Meaningful Limitations

A claim is meaningful limited if it requires a particular machine implementing a process or a particular transformation of matter. See Bilski, 130 Supreme Court at 3227.

For "a machine to impose a meaningful limit. . . it must play a significant part in permitting the claimed method to be performed" in SiRF Tech vs Int'l Trade Communication Federal Circuit 2010 at 1333. **A claim also will be limited meaningful when in addition to the abstract idea, the claim recites added limitations which are essential to the invention.** See Diehr 450 U.S. at 187

14/083,344

This invention is tied to a particular machine/computer (i.e. mobile device) not generic hardware that includes

1) A purchase request using a non browser application

2) The non browser application receives user input via the display of a mobile device .

3) Digital artifacts are delivered and displayed on the non browser payment application generated screens, **so the user can browse through the screens of the App and the digital artifacts can be viewed or played in the case of media or content without connection to a server unlike a browser application which requires a server connection**. Dependent claim 2 & 13 describe how the digital artifacts are enabled to perform an action.

A mobile app also reduces communication resources, improves response time, and provides a better user experience.

The Supreme Court noted, in *Diamond v. Diehr*, 450 U.S. 175 (1981) on p. 12-13, a computer-implemented method for curing rubber was found patent-eligible because it involved a process "designed to solve a technological problem" and "improved an existing technological process," but not because it was implemented using a computer. Indeed, the data from the thermostat reading was read into the computer and used to make adjustments to curing the rubber as shown below.

> In *Diehr*, 450 U. S. 175, by contrast, we held that a computer-implemented process for curing rubber was patent eligible, but not because it involved a computer. The claim employed a "well-known" mathematical equation, but it used that equation in a process designed to solve a technological problem in "conventional industry practice." *Id.*, at 177, 178. The invention in *Diehr* used a "thermocouple" to record constant temperature measure-
>
> ments inside the rubber mold—something "the industry ha[d] not been able to obtain." *Id.*, at 178, and n. 3. The temperature measurements were then fed into a computer, which repeatedly recalculated the remaining cure time by using the mathematical equation. *Id.*, at 178–179. These additional steps, we recently explained, "transformed the process into an inventive application of the formula." *Mayo, supra,* at ____ (slip op., at 12). In other words, the claims in *Diehr* were patent eligible because they improved an existing technological process, not because they were implemented on a computer.

14/083,344

As stated in US Patent Application Publication No. 2008/0052192 (Application No. 11/933, 351) which is incorporated by reference, support for **mobile app processing** can be found, for example, in Paragraph 33, "In one implementation, the mobile application 806 is a rich client application (also commonly referred to as a fat client application or thick client application). **A rich client application is a client application that performs the bulk of any data processing operations itself, and does not necessarily rely on a server (e.g., remote server 804).** "

As stated in US Patent Application Publication No. 2008/0052192 (Application No. 11/933, 351) which is incorporated by reference, support for **mobile app processing** can be found, for example, in Paragraph 59-64

"[0059] Sync: **Ensures server-side objects are downloaded to client and locally cached.**
[0060] This includes payment accounts, payees, payment rules, server-side cached account info (account balance, Last-N transaction history), etc.
[0061] **This info will be cached on Client**
**[0062] Users can create transaction either in ONLINE or OFFLINE (no network connectivity) mode**
[0063] Initiating/Triggering Banking Services

[0064] Storage: Storage of Users MWLite info, User's payment account info (credentials, account balance, history, etc.); Banking Payment History (BillPay, Fund Transfer, Fund Loads, Fund Unloads, etc.)"

As stated in US Patent Application Publication No. 2008/0052192 (Application No. 11/933, 351) which is incorporated by reference, support for **mobile app processing** can be found, for example, in Paragraph 86, "In one implementation, post processing of these multiple messages results in the screen shown in FIG. 10B which displays the account balance and the last five transactions in a transaction history list. **The list can be cached on the mobile communication device 902 for later use**"

14/083,344



**FIG. 10A**



**FIG. 10B**

As stated in US Patent Application Publication No. 2008/0052192 (Application No. 11/933, 351) which is incorporated by reference, support for **mobile app processing** can be found, for example, in Paragraph 110, "In one implementation, a mobile communication device creates task/objects either while connected with a Server (online-mode) or when no connection is available (offline-mode). Tasks/objects are specific to mobile banking service and include for example: schedule (or cancel) a fund transfer transaction, schedule (or cancel) a bill pay transaction, and manage other banking transactions. **In addition, digital artifacts (coupons, tickets, etc.) that possess a state (or status) (e.g., Assigned, Saves, Redeemed, Deleted, etc.) can undergo changes on the mobile communication device.** Given these tasks/objects associated to Banking Services and Digital Artifacts has 'states' that can be changed in either an online-mode or offline-mode, the Server has to be refreshed/updated either in real-time (online-mode) or in batch (offline-mode). "

As stated in US Patent Application Publication No. 2008/0052192 (Application No. 11/933, 351) which is incorporated by reference, support for **mobile app processing** can be found, for example, in Paragraph 111, " For example, given a situation in which a user is travelling in a region in which the user's mobile communication device does not have network access and the user needs to transfer funds into a checking account, the user can use the mobile communication device (with the Mobile Wallet Client application) to schedules a

14/083,344

fund transfer in offline mode.  **Since the mobile communication device has no network connectivity, the Client (in OFFLINE mode) creates a 'task' to represent the fund transfer (or any other banking service) using banking information (Banks accounts, etc.) previously cached on mobile device.**

As stated in US Patent Application Publication No. 2008/0052192 (Application No. 11/933, 351) which is incorporated by reference, support for **mobile app processing** can be found, for example, in Paragraph 112, "**Using the client (or mobile application), a user can store digital artifacts (e.g., coupons, tickets, etc.) on a mobile communication device.  These digital artifacts are objects that are consumed by a 3rdParty, e.g., a ticket can be redeemed at a theater, and a coupon can be redeemed at the Point-Of-Sale of a retail merchant.**  Hence, this is a 3-way sync: 1) mobile communication device with server, 2. mobile communication device with 3rdParty Merchant, and 3) server with 3rdParty Merchant.  **For user's convenience, redemption of digital artifacts by a 3rdParty must be enabled in an environment with or without network access.  For example, a user with an electronic ticket on a mobile communication device may wish to redeem an eTicket at a theater. However, if there is no network access inside the theater, the user will still need access the eTicket on the client.  In ONLINE mode, the client will cache (local store) the eTicket (and any other digital artifact.)  In the theater, the client (in OFFLINE mode) will be able to redeem the eTicket and update the state of the eTicket on the mobile communication device (e.g., change state from 'valid' to 'redeemed'). "**

In addition, these claims result in a physical transformation of matter such as the payment application generated screen from a non browser application and transforms a digital artifact from storage as zeros and ones on a server to display on a specific scene, screen, or area of a non browser payment application generated screen of a mobile device to an action per dependent claim 2 & 13.

Thus, claims are patent eligible similar to Example #21 of the July, 2015 interim guidelines since they provide additional steps that amount to significantly more than

14/083,344

traditional payment processing.

### 5. Does not tie up the field of mobile payments since there are other methods including Bluetooth, NFC, browser, POS

Furthermore, claims provide a distinction over other forms of mobile payment taught in Applicant's Specification and prior art cited by the Examiner (refer to page 12 of the OA) such as NFC, Bluetooth, and SMS just to name a few and shown below:

- Using a POS terminal for processing vs a server as taught by Abell, Labrou, Bemmel, and Hammad,
- Using a plastic card that stores the credit card numbers in the card vs a server as taught by Pitroda and Forslund.
- Using SMS as taught by Ferreira.
- Using NFC as taught by Chen

For example, the prior art by Abell referenced by the Examiner teaches use of point-of-sale terminal and uses Bluetooth which requires a specific type of transceiver both at the mobile device and server instead of transmitting the transaction data to a server using a generic transceiver which is more scalable.

The fact that other variations of mobile payments exist reinforces the fact that this specific embodiment is not an abstract idea. Thus, it "tie up the abstract idea" per page 6 of the OA

In summary, the combination of elements imposes meaningful limits because its

- Not utilizing a web browser which does not provide a user friendly experience nor access digital artifacts when the mobile device does not have network access. For more details, refer to section Improvements over existing technologies, improvement to the function of the computer, and meaningful imitations in section 8-10.
- Not utilizing the keyboard , but the mobile device display to receive user input which is more user-friendly and provides meaningful limitations in sections 8-10.
- Not utilizing a specific POS terminal such as NFC or Bluetooth which limits scalability. For more details, refer to section Improvements over existing technologies, improvement to the function of the computer, and meaningful

14/083,344

imitations  in section 8-10.

- Not storing credit card information  on the mobile  device which is not secure.  For more details, refer to section Improvements over existing technologies,  improvement to the function  of the computer, and meaningful  imitations  in section 8-10.

To recap, it is respectively  submitted  that the Applicant  claims are patent eligible  since they not claiming  an abstract idea, but teaches a specific, novel way of paying and provide:  the following:

1. The transaction  server  acts in concert with the recited features of the mobile  device to process the transaction  in response to a purchase request received from a non browser mobile  application  based on input from the user via the mobile  device display  and send a transaction  verification  to a management server which sends a digital  artifact to the non browser application  after the transaction.  This inextricable  tie between the transaction server, management server and recited features of the mobile  device is similar  to the patent eligible  example #4 described in  "Patent Eligible  Subject Matter Examples  " published  by the on January 27, 2015.

2. Improvements to another technology  (e.g. Bluetooth)  or technical field  (e.g. ecommerce)

3. Improvements to the function  of the computer itself (e.g. payments)

4. Meaningful  limitations  beyond generally linking  the use of an abstract idea to a particular technological  environment (e.g. non browser application  and user input  via the mobile  device display.)

5. Does not tie up the field  of mobile  payments since there are other methods  including Bluetooth,  browser, and those referenced by the Examiner on page 12 of the OA

Applicant  believes that all pending claims are allowable  in their present form.  If the Examiner has any questions  or concerns, the Examiner  is encouraged to contact the Undersigned using the contact information  provided  below.

Respectfully  submitted,
/Michelle  Fisher/
Michelle  Fisher

Blaze Mobile

14/083,344