LAWRENCE M. HADLEY - State Bar No. 157728
lhadley@glaserweil.com
JAN P. WEIR – State Bar No. 106652
jweir@glaserweil.com
GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Defendants
Blaze Mobile, Inc., and Michelle Fisher

Glaser Weil

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

Plaintiff,

v.

BLAZE MOBILE, INC., AND MICHELLE FISHER,

Defendants.

CASE NO.: 3:21-cv-02989-EJD

HON. EDWARD J. DAVILA

**DEFENDANTS', MICHELLE FISHER AND BLAZE MOBILE, INC., ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT FOR DECLARATORY JUDGMENT; AND COUNTERCLAIMS FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Defendants, Michelle Fischer ("Fisher") and Blaze Mobile, Inc., ("Blaze Mobile") (Fisher and Blaze Mobile are collectively referred to as "Blaze" unless otherwise indicated by their individual name) hereby respond to Plaintiffs', Samsung Electronics, Co., LTD ("SEC") and Samsung Electronics America, Inc. ("SEA" and collectively "Samsung") Complaint for declaratory judgment of non-infringement as U.S. Patent Nos. 9,378,493, 9,652,771, 9,996,849, 10,339,556, 10,621,612, 10,699,259, 10,565,575, and 10,825,007 (collectively, the "Patents-in-Suit") filed on April 25, 2021 (Dkt. No. 1.) The headings and numbered paragraphs below correspond to the headings and numbered paragraphs of the Complaint. Any allegations or averments not specifically admitted herein are denied.

## NATURE OF THE ACTION

1. Blaze admits that Samsung's Complaint states that this is an action for a declaratory judgment of non-infringement under the patent laws of the United States—35 U.S.C. §§ 2201-2201, by Samsung involving the patents defined by Samsung as the "Patents-In-Suit." Blaze denies that a declaration of non-infringement is appropriate and, as set forth in the Counterclaims below a judgment of patent infringement of at least on claim of each of the Patents-In-Suit is appropriate.

## THE PARTIES

2. On information and belief, Blaze admits the allegations of Paragraph 2 of the Complaint.

3. On information and belief, Blaze admits the allegations of Paragraph 3 of the Complaint.

4. Blaze admits that it is a privately held corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2930 Domingo Avenue, Suite 123, Berkeley, CA 94705 as alleged in Paragraph 4 of the Complaint.

5. Blaze admits that Michelle Fisher is the named inventor on all Patents-in-Suit and is the Chief Executive Officer ("CEO") and Founder of Blaze. Blaze further admits that at various times in the past Ms. Fisher resided in Oakland, California and while a resident of Oakland, California she conducted business on behalf of Blaze including prosecuting patent applications before the United States Patent and Trademark Office ("USPTO"). Except as specifically admitted



Glaser Weil

here, Blaze denies each and every remaining allegation of Paragraph 5 of the Complaint.

**JURISDICTION AND VENUE**

6. Paragraph 6 states a legal conclusion as to which no response is required. To the extent a response is required, Blaze admits that the Complaint purports to bring claims for declaratory relief pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq. Blaze otherwise denies each and every other allegation of Paragraph 6 of the Complaint.

7. Paragraph 7 states a legal conclusion as to which no response is required. To the extent a response is required, Blaze admits Samsung has alleged that an actual and justiciable controversy exists between Samsung and Blaze as to the alleged infringement of the claims of the Patents-in-Suit as alleged in Paragraph 7 of the Complaint. Blaze contends that Samsung entered into two Non-Disclosure Agreements in which Samsung promised and agreed that it would not use communications between the parties in seeking declaratory relief against Blaze.

8. Paragraph 8 states a legal conclusion as to which no response is required. To the extent a response is required, Blaze admits Samsung alleges that subject matter jurisdiction in the Northern District of California over this action based upon a real and immediate controversy between Samsung and Blaze regarding whether various Samsung products, including Samsung Pay, Samsung Ads, and Samsung Galaxy Store infringe the Patents-in-Suit as alleged in Paragraph 8 of the Complaint. Blaze further admits that it has alleged in communications with Samsung (which the parties, under two separate non-disclosure agreements, agreed could not be used as a basis for declaratory judgment action) that Samsung Pay, Samsung Ads, and Samsung Galaxy Store used on Samsung mobile products including Samsung's Galaxy mobile phones and tablets, infringe certain claims of the Patents-in Suit as also alleged in Paragraph 8 of the Complaint. Blaze contends that Samsung entered into two Non-Disclosure Agreements in which Samsung promised and agreed that it would not use communications between the parties in seeking declaratory relief against Blaze.

9. For purposes of this action only, Blaze Mobile does not contest personal jurisdiction in the Northern District of California.

10. For purposes of this action only, Michelle Fisher does not contest personal





Glaser Weil

jurisdiction in the Northern District of California.

11. For purposes of this action only, Blaze does not contest that venue under 28 U.S.C. § 1391 is proper in the Northern District of California, however, as set forth in Defendants' Motion for Intradistrict Transfer (Dkt. Nos. 25,26 and 27.), considering the convenience of the witnesses and the interests of justice venue is more properly located in the Oakland Division of the Northern District of California.

## FACTUAL BACKGROUND

### Samsung's Allegations Regarding the Patents-in-Suit

12. Blaze admits that U.S. Patent No. 9,378,493 ("the '493 Patent") is entitled "Mobile Communication Device Near Field Communication (NFC) Transactions," and was issued on June 28, 2016. Blaze further admits that the application for the '493 Patent was filed on September 14, 2012, as a continuation of an earlier filed application and thus has an effective filing date of November 14, 2007. Blaze admits that Michelle Fisher and Rathin Guha are the inventors of the inventions claimed in the '493 Patent and that Michelle Fisher was the original assignee. Blaze also admits that the '493 Patent is currently assigned to Blaze Mobile and a true and correct copy of the '493 Patent is attached as Exhibit 1 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 12 of the Complaint.

13. Blaze admits that U.S. Patent No. 9,652,771 ("the '771 Patent") is entitled "Induction Based Transactions at a Mobile Device with Authentication," and was issued on May 16, 2017. Blaze further admits that the application for the '771 Patent was filed on June 7, 2016, as a continuation of earlier filed applications and thus has an effective filing date of November 14, 2007. Blaze admits that Michelle Fisher is the sole inventor of the inventions claimed in the '771 Patent and was its original assignee. Blaze also admits that the '771 Patent is currently assigned to Blaze and a true and correct copy of the '771 Patent is attached as Exhibit 2 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 13 of the Complaint.

14. Blaze admits that U.S. Patent No. 9,996,849 ("the '849 Patent") is entitled "Remote Delivery of Advertisements," and was issued on June 12, 2018. Blaze further admits that the



Glaser Weil

application for the ’849 Patent was filed on April 20, 2016, as a continuation of earlier filed applications and thus has an effective filing date of February 14, 2014. Blaze further admits that Michelle Fisher is the sole inventor of the inventions claimed in the ’849 Patent and was the original assignee. Blaze also admits that the ’849 Patent is currently assigned to Blaze and a true and correct copy of the ’849 Patent is attached as Exhibit 3 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 14 of the Complaint.

15. Blaze admits that U.S. Patent No. 10,339,556 (“the ’556 Patent”) is entitled “Selecting and Transmitting an Advertisement from a Server in Response to User Input,” and was issued on July 2, 2019. Blaze further admits that the application for the ’556 Patent was filed on May 15, 2018, as a continuation of earlier filed applications and thus has an effective filing date of December 13, 2007. Blaze further admits that Michelle Fisher as its sole inventor of the inventions claimed in the ’556 Patent and its original assignee. Blaze also admits that the ’556 Patent is currently assigned to Blaze and a true and correct copy of the ’556 Patent is attached as Exhibit 4 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 15 of the Complaint.

16. Blaze admits that U.S. Patent No. 10,621,612 (“the ’612 Patent”) is entitled “Displaying an Advertisement in Response to User Input Using a Non-Browser Based Application,” and was issued on April 14, 2020. Blaze further admits that the application for the ’612 Patent was filed on June 28, 2019, as a continuation of earlier filed applications and thus has an effective filing date of December 13, 2007. Blaze further admits that Michelle Fisher is the sole inventor of the inventions claimed in the ’612 Patent and its original assignee. Blaze also admits that the ’612 Patent is currently assigned to Blaze and a true and correct copy of the ’612 Patent is attached as Exhibit 5 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 16 of the Complaint.

17. Blaze admits that U.S. Patent No. 10,699,259 (“the ’259 Patent”) is entitled “Remote Transaction Processing Using a Mobile Device,” and was issued on June 30, 2020. Blaze further admits that the application for the ’259 Patent was filed on March 21, 2016, as a continuation of earlier filed applications and thus has an effective filing date of November 30, 2007. Blaze further



Glaser Weil

admits that the Michelle Fisher as its sole inventor of the inventions claimed in the ’259 Patent and its original assignee. Blaze also admits that the ’259 Patent is currently assigned to Blaze and a true and correct copy of the ’259 Patent is attached as Exhibit 6 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 17 of the Complaint.

18. Blaze admits that U.S. Patent No. 10,565,575 (“the ’575 Patent”) is entitled “NFC Mobile Device Transactions with a Digital Artifact,” and was issued on February 18, 2020. Blaze further admits that application for the ’575 Patent was filed on April 20, 2019, as a continuation of earlier filed applications and thus has an effective filing date of November 30, 2007. Blaze further admits that Michelle Fisher is the sole inventor of the inventions claimed in the ’575 and its original assignee. Blaze also admits that the ’575 Patent is currently assigned to Blaze and a true and correct copy of the ’259 Patent is attached as Exhibit 7 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 18 of the Complaint.

19. Blaze admits that U.S. Patent No. 10,825,007 (“the ’007 Patent”) is entitled “Remote Transaction Processing of at a Transaction Server,” and was issued on November 3, 2020. Blaze further admits that the application for the ’007 Patent was filed on April 15, 2014, as a continuation of earlier filed applications and thus has an effective filing date of November 30, 2007. Blaze further admits that Michelle Fisher is the sole inventor of the inventions claimed in the ’007 Patent lists and its original assignee. Blaze also admits that the ’007 Patent is currently assigned to Blaze and a true and correct copy of the ’007 Patent is attached as Exhibit 8 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every remaining allegation of Paragraph 19 of the Complaint.

20. Blaze admits that it is the owner by assignment of the Patents-in-Suit. Blaze further admits that is the owner of over 50 issued and pending U.S. patents. Blaze reserves all rights to object to or oppose any effort by Samsung to amend its Complaint to seek a declaratory judgment of non-infringement, invalidity, and/or unenforceability of the Patents-in-Suit or any other U.S. patent owned by Blaze or Michelle Fisher.

21. Blaze admits that the Patents-in-Suit are based upon continuation applications and



Glaser Weil

that there remain pending in the USPTO one or more related continuation applications. Except as otherwise admitted herein Blaze denies each and every other allegation in Paragraph 21 of the Complaint.

22. Blaze admits that the ’849, ’556, and ’612 Patents claim priority to the application for U.S. Patent No. 8,693,995 which was filed on December 13, 2007. Blaze further admits that the application for the ’556 Patent was a continuation of the application that issued as the ’849 Patent and that the application for the ’612 Patent was a continuation of the application that issued as the ’556 Patent. Except as otherwise admitted herein, Blaze denies each and every other allegation in Paragraph 22 of the Complaint.

23. Blaze admits that ’493 and ’771 Patents claim priority to the application for U.S. Patent. No. 8,290,433 which was filed on November 14, 2007. Blaze further admits that the application for the ’771 Patent was a continuation of the application that issued as the ’493 Patent. Except as otherwise admitted herein, Blaze denies each and every other allegation in Paragraph 23 of the Complaint.

24. Blaze admits that the ’575, ’259, and ’007 Patents claim priority to the application for U.S. Patent. No. 8,352,323 which was filed on November 30, 2007. Except as otherwise admitted Blaze herein, denies each and every other allegation in Paragraph 24 of the Complaint.

**<u>Samsung’s Allegations Relating to The Parties’ Dispute Belongs in California</u>**

25. Blaze admits that it was founded in 2005 in Alameda, California and had a business address in Berkely, California which are within the Oakland Division of the Northern District of California. Blaze further admits that it is a Delaware corporation. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 25 in the Complaint.

26. Blaze admits that it was founded by Michelle Fisher and that Michelle Fisher is the Chief Executive Officer of Blaze and a named inventor on all of the Patents-in-Suit. Blaze further admits that Michelle Fisher corresponded with the USPTO from a Berkely return address. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 26 in the Complaint.

27. Blaze admits that Michelle Fisher is an inventor of the inventions claimed in the





Glaser Weil

Patents-in-Suit and currently in a named inventor on over 50 issued U.S. Patents. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 27 in the Complaint.

28. Blaze admits that Michelle Fisher was involved in the prosecution of the Patents-in-Suit and had some telephonic discussions with USPTO examiners from her Alameda, County address. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 28 in the Complaint.

29. Blaze admits that Michelle Fisher engaged in licensing negotiations with mobile phone manufacturers regarding Blaze's patents from Alameda, County. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 29 in the Complaint.

**Samsung's Allegations Regarding Blaze's Allegations of Infringement Against Samsung**

30. Blaze admits that its representative, Synergy IP Corp. sent the letter a copy of which is attached as Exhibit 9 to the Complaint. Blaze further does not deny the content of the letter in full context as contained in Exhibit 9 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 30 of the Complaint.

31. Blaze admits that the letter attached as Exhibit 9 attached claim charts comparing certain Samsung products to certain claims of the '575, '771, '849, and '259 Patents-in-Suit. Blaze further does not deny the content of the charts attached to Exhibit 9 to the Complaint in their full content. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 31 of the Complaint.

32. Blaze admits that Michelle Fisher sent the letter a copy of which is attached as Exhibit 14 to the Complaint. Blaze further does not deny the content of the letter in full context as contained in Exhibit 14 to the Complaint. Except as otherwise admitted herein, Blaze denies each and every other allegation of Paragraph 32 of the Complaint.

33. Blaze admits that the letter attached as Exhibit 14 attached claim charts comparing certain Samsung products to certain claims of the '575, '771, '849, and '259 Patents-in-Suit. Blaze further does not deny the content of the charts attached to Exhibit 14 to the Complaint in their full content. Except as otherwise admitted herein, Blaze denies each and every other allegation of



Glaser Weil

Paragraph 33 of the Complaint.

**Samsung's Allegations Regarding the Prosecution of the Patents-In-Suit**

34. Blaze denies each and every allegation in Paragraph 34 of the Complaint.

35. Blaze admits that U.S. Patent No. 9,311,659 ("the '659Patent") is entitled "Remote Transaction Processing at a Server from a List Using a Payment Method," was issued on April 12, 2016. Blaze further admits that the application for the '659 Patent was filed on November 18, 2013, as a continuation of earlier filed application and thus has an effective filing date of November 30, 2007. Blaze further admits that the '659 Patent claims priority to U.S. Patent Application No. 11/948,903. Except as otherwise admitted here, Blaze denies each and every other allegation of Paragraph 35 of the Complaint.

36. Blaze denies the allegations of Paragraph 36 of the Complaint.

37. Blaze denies the allegations of Paragraph 37 of the Complaint.

**RESPONSE TO SAMSUNG'S COUNT I**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 8,376,493)**

38. Blaze incorporates by reference its response to the allegations in Paragraphs 1 through 37 above as though fully set forth herein.

39. Blaze admits the allegations of Paragraph 39 of the Complaint.

40. Blaze denies the allegations of Paragraph 40 of the Complaint.

41. Blaze denies the allegations of Paragraph 41 of the Complaint.

42. Blaze denies the allegations of Paragraph 42 of the Complaint.

43. Blaze denies the allegations of Paragraph 43 of the Complaint.

44. Blaze denies the allegations of Paragraph 44 of the Complaint.

**RESPONSE TO SAMSUNG'S COUNT II**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 9,652,771)**

45. Blaze incorporates by reference its response to the allegations in Paragraphs 1 through 44 above as though fully set forth herein.

46. Blaze admits the allegations of Paragraph 46 of the Complaint.

47. Blaze denies the allegations of Paragraph 47 of the Complaint.



Glaser Weil

48. Blaze denies the allegations of Paragraph 48 of the Complaint.

49. Blaze denies the allegations of Paragraph 49 of the Complaint.

50. Blaze denies the allegations of Paragraph 50 of the Complaint.

51. Blaze denies the allegations of Paragraph 51 of the Complaint.

52. Blaze denies the allegations of Paragraph 52 of the Complaint.

**RESPONSE TO SAMSUNG'S COUNT III**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 9,996,849)**

53. Blaze incorporates by reference its response to the allegations in Paragraphs 1 through 52 above as though fully set forth herein.

54. Blaze admits the allegations of Paragraph 54 of the Complaint.

55. Blaze denies the allegations of Paragraph 55 of the Complaint.

56. Blaze denies the allegations of Paragraph 56 of the Complaint.

57. Blaze denies the allegations of Paragraph 57 of the Complaint.

58. Blaze denies the allegations of Paragraph 58 of the Complaint.

59. Blaze denies the allegations of Paragraph 59 of the Complaint.

**RESPONSE TO SAMSUNG'S COUNT IV**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 10,339,556)**

60. Blaze incorporates by reference its response to the allegations in Paragraphs 1 through 59 above as though fully set forth herein.

61. Blaze admits the allegations of Paragraph 61 of the Complaint.

62. Blaze denies the allegations of Paragraph 62 of the Complaint.

63. Blaze denies the allegations of Paragraph 63 of the Complaint.

64. Blaze denies the allegations of Paragraph 64 of the Complaint.

65. Blaze denies the allegations of Paragraph 65 of the Complaint.

66. Blaze denies the allegations of Paragraph 66 of the Complaint.

**RESPOLNSE TO SAMSUNG'S COUNT V**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 10,621,612)**

67. Blaze incorporates by reference its response to the allegations in Paragraphs 1



Glaser Weil

through 66 above as though fully set forth herein.

68. Blaze admits the allegations of Paragraph 68 of the Complaint.

69. Blaze denies the allegations of Paragraph 69 of the Complaint.

70. Blaze denies the allegations of Paragraph 70 of the Complaint.

71. Blaze denies the allegations of Paragraph 71 of the Complaint.

72. Blaze denies the allegations of Paragraph 72 of the Complaint.

73. Blaze denies the allegations of Paragraph 73 of the Complaint.

**RESPONSE TO SUMSUNG'S COUNT VI**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 10,699,259)**

74. Blaze incorporates by reference its response to the allegations in Paragraphs 1 through 73 above as though fully set forth herein.

75. Blaze admits the allegations of Paragraph 75 of the Complaint.

76. Blaze denies the allegations of Paragraph 76 of the Complaint.

77. Blaze denies the allegations of Paragraph 77 of the Complaint.

78. Blaze denies the allegations of Paragraph 78 of the Complaint.

79. Blaze denies the allegations of Paragraph 79 of the Complaint.

80. Blaze denies the allegations of Paragraph 80 of the Complaint.

**RESPONSE TO SAMSUNG'S COUNT VII**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 10,565,575)**

81. Blaze incorporates by reference its response to the allegations in Paragraphs 1 through 80 above as though fully set forth herein.

82. Blaze admits the allegations of Paragraph 82 of the Complaint.

83. Blaze denies the allegations of Paragraph 83 of the Complaint.

84. Blaze denies the allegations of Paragraph 84 of the Complaint.

85. Blaze denies the allegations of Paragraph 85 of the Complaint.

86. Blaze denies the allegations of Paragraph 86 of the Complaint.

87. Blaze denies the allegations of Paragraph 87 of the Complaint.

88. Blaze denies the allegations of Paragraph 88 of the Complaint.



Glaser Weil

**RESPONSE TO SAMSUNG'S COUNT VIII**

**(Declaratory Judgment on Non-Infringement of U.S. Patent No. 10,825,007)**

89. Blaze incorporates by reference its response to the allegations in Paragraphs 1 through 88 above as though fully set forth herein.

90. Blaze admits the allegations of Paragraph 90 of the Complaint.

91. Blaze denies the allegations of Paragraph 01 of the Complaint.

92. Blaze denies the allegations of Paragraph 92 of the Complaint.

93. Blaze denies the allegations of Paragraph 93 of the Complaint.

94. Blaze denies the allegations of Paragraph 94 of the Complaint.

95. Blaze denies the allegations of Paragraph 95 of the Complaint.

**AFFIRMATIVE DEFENSES**

Blaze alleges and asserts the following defenses in response to the allegation in Samsung's Complaint

**First Affirmative Defense**

96. The Complaint fails to allege sufficient fact supporting subject matter jurisdiction over this declaratory judgment action.

**Second Affirmative Defense**

97. The Complaint fails to plead sufficient facts to state a claim for relief.

**Third Affirmative Defense**

98. Samsung is barred from obtaining the relief requested under the doctrines of waiver and equitable estoppel.

**Fourth Affirmative Defense**

99. Samsung should be precluded from obtaining the relief requested under the equitable doctrine of unclean hands.

**COUNTERCLAIM FOR A JUDGMENT OF PATENT INFRINGEMENT**

1. This Counterclaim is for a judgment of patent infringement against Plaintiffs and Counter Defendants, Samsung Electronics, Co., LTD ("SEC") and Samsung Electronics America, Inc. ("SEA" and collectively "Samsung") of U.S. Patent Nos. 9,378,493, 9,652,771, 9,996,849,



Glaser Weil

10,339,556, 10,621,612, 10,699,259, 10,565,575, and 10,825,007 (collectively, the "Patents-in-Suit") under the patent law of the United States, Title 35 of the United States Code.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over Blaze's Counterclaims for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. This Court has personal jurisdiction over Counter Defendants SEC and SEA by virtue of their having voluntarily submitted to the jurisdiction of this Court in the filing of their Declaratory Judgment Action for non-infringement of the Patents-in -Suit and on information and belied the Counterclaim Defendants have regularly and systematically conducted business and have committed, or made meaningful preparations to commit, acts of infringement in this District including Alameda, County located in the Oakland Division of the Northern District of California.

4. Subject to Defendants' Motion for Intradistrict Transfer (Dkt. Nos. 25,26 and 27), venue is proper in the Northern District of California, Oakland Division pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) considering the convenience of the witnesses and the interests of justice, and because (a) this Court has personal jurisdiction over Counter Defendants SEC and SEA and (b) on information and belief, SEC and SEA have committed, or made meaningful preparations to commit, acts of infringement in this District including Alameda, County.

**FACTS COMMON TO ALL COUNTERCLAIM COUNTS**

***The Parties***

5. Michelle Fisher is a graduate of UC Berkely and Stanford University's Graduate School, is an industry innovator and inventor. After earning a master's degree in operations research from Stanford, Ms. Fisher developed a broadband virtual studio for Pacific Bell (now AT&T), which provided creative professionals with online access to storage, libraries of images, sound effects, and other creative tools—ten years before the development of Dropbox—and when most consumers were using dialup, not broadband, for internet access. Ms. Fisher later worked for Microsoft where she pitched ideas directly to Bill Gates direct reports, including an idea for a system using Windows-based servers to provide interoperability across multiple carrier networks allowing, for example an AT&T customer to send and receive messages from a Sprint or T-Mobile



Glaser Weil

Glaser Weil

customer, which was not possible at the time.

6. In 2005, Ms. Fisher founded Blaze Mobile in Alameda, California to develop technologies for use in mobile commerce utilizing handheld devices. Blaze is a privately held Delaware corporation with its principal place of business in Berkely, California. By 2006, Blaze had developed its first version of the Blaze Mobile Wallet—an integrated, consumer centric, and user-friendly mobile application. While cell phones at the time could be used to pay bills, transfer funds, check account balances, purchase tickets, receive coupons, and more (often through text messaging and web browsers), these applications were slow, unreliable, and difficult to use and consumers had to use separate applications to take advantage of these capabilities, which limited their adoption. There were also no applications that enabled real-time in store purchases using Near Field Communications ("NFC"). NFC is a short-ranged radio frequency protocol that enables communication between devices in close proximity. The Blaze Mobile application integrated all of these functionalities into a single non-browser based application to provide improved functionality and a more robust user experience. In 2010 Blaze Mobile's Wallet product was listed in CNN Money" as one of the top "9 smart new ways to manage your $$."

7. Blaze Mobile also integrated its Wallet product with NFC and a secure element in mobile devices. With NFC and a secure element, the Blaze Wallet application enabled in store real-time secure contactless purchases and enabled consumers to electronically download coupons, movie trailers, and promotions via "smart" enabled posters. Ms. Fisher began patenting her inventions in 2005, and by 2015, Blaze Mobile held eight issued patents on used in mobile transactions— more than Microsoft, Samsung, BlackBerry, American Express and Qualcomm.

8. Ms. Fisher and Blaze Mobile currently have been awarded over 60 United States Patent in this field since the founding of Blaze Mobile with other patents pending in the United States Patent and Trademark Office ("USPTO").

9. As alleged in Paragraph 2 of the Complaint, Samsung Electronics Corporation, Ltd. is based in South Korea. SEC designs and manufactures a wide variety of products, including Samsung Pay, Samsung Ads, and Samsung Galaxy Store which are programed into SEC mobile products for consumer use including SEC's Galaxy mobile phones and tablets ("the Accused

Products"). On information and belief, SEC imports or causes to be imported into the United States and sells or offers for sale, the Accused Products for purchase and use by consumers in the United States.

10. As alleged in Paragraph 3 of the Complaint, Samsung Electronics America, Inc. ("SEA") is a New York corporation with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA imports or causes to be imported into the United States and sells or offers for sale, the Accused Products for purchase and use by consumers in the United States.

***The Patents-In-Suit***

11. U.S. Patent No. 9,378,493 ("the '493 Patent") entitled "Mobile Communication Device Near Field Communication (NFC) Transactions," was duly and legally issued by the United States Patent Office on June 28, 2016.

12. U.S. Patent No. 9,652,771 ("the '771 Patent") entitled "Induction Based Transactions at a Mobile Device with Authentication," was duly and legally issued by the United States Patent Office on May 16, 2017.

13. U.S. Patent No. 9,996,849 ("the '849 Patent") entitled "Remote Delivery of Advertisements," was duly and legally issued by the United States Patent Office issued on June 12, 2018.

14. U.S. Patent No. 10,339,556 ("the '556 Patent") entitled "Selecting and Transmitting an Advertisement from a Server in Response to User Input," was duly and legally issued by the United States Patent Office issued on July 2, 2019.

15. U.S. Patent No. 10,621,612 ("the '612 Patent") entitled "Displaying an Advertisement in Response to User Input Using a Non-Browser Based Application," was duly and legally issued by the United States Patent Office issued on April 14, 2020.

16. U.S. Patent No. 10,699,259 ("the '259 Patent") entitled "Remote Transaction Processing Using a Mobile Device," was duly and legally issued by the United States Patent Office issued on June 30, 2020.

17. U.S. Patent No. 10,565,575 ("the '575 Patent") entitled "NFC Mobile Device



Glaser Weil

Transactions with a Digital Artifact," was duly and legally issued by the United States Patent Office issued on February 18, 2020.

18. U.S. Patent No. 10,825,007 ("the '007 Patent") entitled "Remote Transaction Processing of at a Transaction Server," was duly and legally issued by the United States Patent Office issued on November 3, 2020.

19. Blaze Mobile is the owner by assignment of all rights and interest in the Patents-in-Suit.

20. The '493, '771, and '575 patents relate to security improvements in NFC enabled mobile devices, NFC point-of-sale terminals, and servers for processing an NFC payment using an identification code transmitted from a secure element embedded in the NFC enabled mobile device to the server and processing the payment at the server using the identification code.

21. The '295 and '007 patents relate to security improvements in non-browser mobile applications running on a mobile device, management server, and transaction server using an identification code transmitted from a non-browser-based application running on the mobile device.

22. The '849, '556, and '612 patents relate to improvements in the reliability and performance of non-browser mobile application running on a mobile device for delivering advertisements, for example, a coupon (*i.e.*, advertisement) which can be displayed in the non-browser based application if the mobile device is offline and loses connection with a wireless network.

***The Accused Devices***

23. Samsung Pay is a non-browser based graphical user interface application on Samsung produced devices including smartphones. Samsung Pay is a mobile payment and digital wallet service that lets users make payments using compatible smartphones and other Samsung-produced devices. The service includes a secure element application that supports contactless payments using NFC. On information and belief, Samsung Pay is used in the following devices: Galaxy Note9, Galaxy S9 Plus, Galaxy S9, Galaxy Note 8, Galaxy S8 Plus, Galaxy S8, Galaxy S7 edge, Galaxy S7, Galaxy S6 edge Plus, Note 5, Galaxy AB Plus, Galaxy A7, Galaxy A5, Galaxy A9 Pro and Galaxy J7 Pro (referred to jointly as "Accused Samsung Pay Products).



Glaser Weil

24. Samsung Galaxy Store is a non-browser-based apps graphical user interface application. On information and belief, the Galaxy Store is pre-installed on Samsung Galaxy smartphones, Samsung Gear, and feature phones such as Samsung REX and Duos manufactured by Samsung (referred to jointly as "Accused Samsung Galaxy Store Products").

25. Samsung Ads is a non-browser-based graphical user interface application that collects data on consumer viewership preferences using communications from Samsung mobile devices and Samsung Smart TVs. On information and belief, Samsung has preloaded Samsung Ads into its entire line of Samsung smart phone and Samsung's Smart TVs (referred to jointly as "Accused Samsung Ads Products").

***Samsung's Knowledge of the Blaze Mobile Patents***

26. Samsung has knowledge of the Patents-in-Suit and or their related published applications through direct communications between Blaze and Samsung as early as 2016.

27. Over a five-year period, Blaze and Samsung engaged in extensive and prolonged discussions regarding Blaze's patent portfolio as part of investment and/or licensing discussions between the two companies. These negotiations included numerous communications, telephone conferences, and in-person meetings between Ms. Fisher and Samsung representatives based in South Korea, including Mr. Hojin Chang, Yoos Kim, Wonsuk Park, Daniel KO, Sookyung Kim, Dr. Seung-Ho Ahm, and Hosik Jang. Under two separate NDAs, the parties agreed that such discussion could not be used as a basis for filing a lawsuit for declaratory relief of non-infringement.

28. As part of those discussions, Blaze provided Samsung with detailed claim charts explaining how Samsung mobile devices incorporating Samsung Pay, Samsung Ads, and Samsung Galaxy Store literally met each and every limitation of at least one claim of Blaze's '575, '771, '849, and '259. See Dkt. Nos. 1-10 through 113.

**<u>COUNTERCLAIM COUNT I</u>**

**(<u>Direct Infringement of U.S. Patent No. 10,565,575</u>)**

29. Blaze incorporates by reference the allegations in Paragraphs 1 through 29 of its Counterclaims above as if fully set forth herein.

30. Attachment 1 hereto provides an element-by-element analysis showing how the



Glaser Weil

Accused Samsung Pay Products literally infringe at least one claim of the ’575 Patent. Samsung has directly infringed the ’575 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Pay Products devices that literally infringe at least one claim of the ’575 Patent. See https://www.samsung.com/us/suppor/owners/app/samsung-pay.[1]

31. The non-browser-based Samsung Pay app is pre-loaded into the Accused Samsung Pay Products’ memory which have a graphical user interface including a graphical icon. See https://www.samsung.com/us/support/answer/ANS00045081: “Samsung Pay comes preloaded on available phones . . . “

32. The Accused Samsung Pay Products contain a wireless transceiver that supports voice and data interactions through a wireless communication channel. https://www.samsung .com/us/mobile/galaxy-s20-5g/specs/.

33. The Accused Samsung Pay Products contain a 7 nm 64-bit Octa-Core Processor that receives a digital artifact for display on a graphical user interface. See, https://www.samsung.com/us/mobile/galaxy-s20-5g/specs/: “If you want to keep track of your spending, Samsung Pay has you covered. You can view transactions made through the app until one month after purchase. You’ll also receive a push notification with details of your transaction after each purchase. You’ll definitely be able to stay on budget this month.”

34. The Accused Samsung Pay Products contain preinstalled Samsung’s Secu-NFC Chip that enables secure mobile payments by combining an NFC controller and a secure element application configured to use NFC protocol used to store personal information. https://www.samsung.com/us/news/newsRead.do?news_seq19957&gltype-globalnews. See Attachment 1, Claim 14.

35. Samsung’s Secu-NFC Chip contains a 760 Kilobyte (KB) high-density flash memory that maintains an identification code associated with a user and a secure element application that

[1] Websites and webpages cited herein are subject to change from time to time by the website owner which may add or delete information relevant to corresponding alleged facts. The website and webpage citations used herein should be understood as alleging that at one time the cited website or webpage contained information evidencing, establishing or supporting the corresponding factual allegation.



Glaser Weil

uses NFC protocol executed in response to a detection of a near field communication inductive signal. See https://www.samsung.com/us/support/answer/ANS00043932/: "The embedded secure element has a 760 Kilobyte (KB) high-density flash memory . . ." and "When you add your payment cased to Samsung Pay, the information is encrypted and sent to Samsung servers and, ultimately, to the card issuer's payment network . . . "

36. The Accused Samsung Pay Products contain an NFC transceiver that uses NFC protocol to transmits, using the secure element application, transaction information including the associated identification code. See, https://www.samsung.com/us/support/answer/ANS00043932/: "The merchant will only receive a token, and your payment information will be kept secure. The token will be sent to the payment network, where it will be decrypted and verified against the information stored in a secure vault on internal networks."

37. The Accused Samsung Pay Products use a "token" or identification code which is transmitted to a remote management server which transmits a second transaction information including a payment method that corresponds to the identification code associated with the user for processing the NFC transaction. See https://security.samsungmobile.com/doc/Press_Guidance_Samsung_Pay.pdf and https://www.samsung.com/us/support/answer/ANS00080583/.

38. The Accused Samsung Pay Products maintain the payment method (i.e., a credit card number) on the remote management server. "The actual card number is stored in a secure vault (with the payment processor or bank) and does not reside on the merchant's or Samsung's systems." https://www.samsung.com/us/support/answer/ANS00043932/.

39. As alleged in Paragraph 30 of the Complaint, on November 25, 2020, Blaze's representative, Synergy IP Corp., sent a letter to Samsung which is attached to the Complaint as Exhibit 9.

40. As further alleged in Paragraph 31 of the Complaint, the November 25, 2020, letter was accompanied by four claim charts including a claim chart containing an element-by-element comparison of Samsung Pay app as used in the Samsung Galaxy S20 mobile phone to Claim 14 of the '575 Patent. A copy of the claim chart is attached to Exhibit 10 to the Complaint. Samsung's



Glaser Weil

non-infringement position is meritless. The Accused Samsung Pay Products come with a secure element application configured to use NFC protocol preinstalled. See Attachment 1, Claim 14.

41. Though the ’575 Patent claim chart contained an element-by-element comparison, the only basis for Samsung’s infringement denial is Samsung’s contention that its products do not contain a “secure element application configured to use the NFC protocol” because browser based elements were identified during prosecution of the ’007 Patent and they do not execute an application “in response to a detection of a near field communication inductive signal from an NFC terminal configured to use the NFC protocol.” See, Complaint Paragraphs 85 and 86.

42. Samsung’s non-infringement position is meritless. Samsung contends that during the prosecution of the ’007 Patent the phrase “non-browser based applications” was limited by disclaimer to applications that do not have navigation buttons. See Paragraph 86 of the Complaint. There was no disavowal of “apps” from the plain and ordinary meaning of “non-browser based application.” The portion of the file history Samsung relies on merely distinguished “apps” from web-based “browsers” (e.g., Internet Explorer, Google Chrome, and Safari) because a prior art reference disclosed the use of Browsers but not apps.

43. Samsung’s non-infringement position is also not supported by the ’575 Patent’s specification. Samsung alleges at ¶ 37 of the Complaint: “Each of the Patents-in-Suit, as well as the ’659 Patent, rely on and incorporate by reference the disclosures of U.S. Patent Application No. 11/933,351 (“the ’351 Application”).” The ’351 Application provides the following support for non-browser based applications with navigation buttons

- paragraph 35, “Thus, in one implementation, the mobile application 910 is ***not browser HTTP*** based, and delivers banking and money management services “

- Figure 10A and 10B shown below include a “Refresh”, “Done”, “Options”, and “Next” navigation buttons.





Glaser Weil




FIG. 10A




FIG. 10B

44. Samsung's contention that "non-browser based applications must be able to operate 'without connection to a server, unlike a browser application which requires a server connection" is without merit. Ms. Fisher stated during the prosecution that a "digital artifact can be displayed on the non-browser based application . . . without connection to a server." See Attachment 9 for support in Specification.

45. The '575 Patent's specification further discloses that the non-browser based application is open receives the digital artifact from the remote management server which selects the digital artifact (e.g. an advertisement, coupon, ticket, media, or content), displays the digital artifact and continues to display the digital artifact even if the mobile device loses connection with a wireless network. See Attachment 9 for citations to the Specification.

46. Samsung's non-infringement position is also contrary to the '575 Patent's claims. For example, Dependent Claim 16 of the '575 patent which recites in part, "The mobile device of claim 16, wherein-the digital artifact comprises an advertisement, receipt, ticket, coupon, media, metadata, and/or content." Dependent Claim 21 of the '575 patent which recites in part, "The mobile device of claim 16, further wherein [[,]] the non-browser based application is operative when the mobile device is not connected to a wireless network." Dependent Claim 23 of the '575 patent which recites in part, "The mobile device of claim 16, further wherein [[,]] the non-browser based application can display the digital artifact when the mobile device is not connected to a wireless network." See Attachment 1.

47. Consistent with the Specification, the prosecution history suggests that the non-browser based application is open and continues to display a digital artifact even if the mobile device loses connection with a wireless network. See e.g., Response to the Office Action dated

Glaser Weil

October 20, 2015, for the '659 patent on page 22-23.

48. Therefore, the Specification and the prosecution history supports interpreting the claims that the non-browser based application is open and continues to display a digital artifact (e.g. an advertisement, coupon, ticket, media, or content) even if the mobile device loses connection with a wireless network.

49. The Specification and prosecution history do not support the contention that starting or launching the non-browser based application must occur when the mobile device is not connected to the wireless network.

50. By not denying Blazes' contention in its claim chart that every other element of Claim 14 is meet by the Accused Samsung Pay Products Samsung, admits that each and every other such limitation is literally meet.

51. Accordingly, the Accused Samsung Pay Products literally infringe at least Claim 14 of the '575 Patent.

**COUNTERCLAIM COUNT II**

**(Inducement Infringement of U.S. Patent No. 10,565,575)**

52. Blaze incorporates by reference the allegations in Paragraphs 1 through 51 of its Counterclaims above as if fully set forth herein.

53. Samsung actively induced infringement of others in the United States by selling the Accused Samsung Pay Products to one or more customers in the U.S., along with documentation and instructions demonstrating how to use the Accused Samsung Pay Products as a mobile payment and digital wallet that let users make contactless payments using a mobile device in communication with NFC devices in direct infringement of at least one claim of the '575 Patent. See, Attachment 1.

54. The documentation which Samsung provides includes, at least: (i) the product information for the Accused Samsung Pay Products set forth on Samsung's websites which includes manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Pay Products; (ii) the specific product documentation which are attached as Exhibits to this Complaint, or which are otherwise referenced in this Complaint; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form



Glaser Weil

to its customers for the Accused Samsung Pay Products (referred to herein as Samsung Pay Documentation").

55. The Samsung Pay Documentation establishes that Samsung provided extensive documentation to its customers, showing how to use the Accused Samsung Pay Products in an infringing manner. For instance, the Samsung Pay Documentation advises users that the non-browser-based Samsung Pay app is pre-loaded into the Accused Samsung Pay Products' memory which have a graphical user interface including a graphical icon. See https://www.samsung.com/us/support/answer/ANS00045081: "Samsung Pay comes preloaded on compatible phones . . ."

56. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain a wireless transceiver that supports voice and data interactions through a wireless communication channel. https://www.samsung .com/us/mobile/galaxy-s20-5g/specs/.

57. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain a 7 nm 64-bit Octa-Core Processor that receives a digital artifact for display on a graphical user interface. See, https://www.samsung.com/us/mobile/galaxy-s20-5g/specs/: "If you want to keep track of your spending, Samsung Pay has you covered. You can view transactions made through the app until one month after purchase. You'll also receive a push notification with details of your transaction after each purchase. You'll definitely be able to stay on budget this month."

58. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain Samsung's Secu-NFC Chip that enables secure mobile payments by combining an NFC controller and a secure element storing personal information. See Attachment 1.

59. The Samsung Pay Documentation further instructs users that the 34.

Samsung's Secu-NFC Chip contains a 760 Kilobyte (KB) high-density flash memory that maintains an identification code associated with a user and a secure element application that uses NFC protocol executed in response to a detection of a near field communication inductive signal. See https.//www.samsung.com/us/support/answer/ANS00043932/: "The embedded secure element has a 760 Kilobyte (KB) high-density flash memory . . ." and "When you add your payment cased to



Glaser Weil

Samsung Pay, the information is encrypted and sent to Samsung servers and, ultimately, to the card issuer's payment network . . . "

60. The Samsung Pay Documentation further instructs users that the Samsung Pay Products contain an NFC transceiver that uses NFC protocol to transmits, using the secure element application, transaction information including the associated identification code. See, https://www.samsung.com/us/support/answer/ANS00043932/: "The merchant will only receive a token, and your payment information will be kept secure. The token will be sent to the payment network, where it will be decrypted and verified against the information stored in a secure vault on internal networks."

61. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products use a "token" or identification code which is transmitted to a remote management server which transmits a second transaction information including a payment method that corresponds to the identification code associated with the user for processing the NFC transaction. See Attachment 1.

62. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products maintain the payment method (i.e., a credit card number) on the remote management server. See https://www.samsung.com/us/support/answer/ANS00043932/. The actual card number is stored in a secure vault (with the payment processor or bank) and does not reside on the merchant's or Samsung's systems.

63. The Samsung Pay Documentation is provided to end users of the Accused Samsung Pay Products in a way that assisted them to use the Accused Samsung Pay Products in an infringing manner.

64. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Pay Products in a manner that infringes at least one claim of the '575 Patent.

65. When Samsung performed the acts of inducement outlined in Paragraphs 46-57 supra (and other acts of inducement), it was aware of the '575 Patent, and knew (or was willfully blind) that its customers' normal use of the Accused Samsung Pay Products would infringe the Asserted



Glaser Weil

Claims of the ‘575 Patent.

66. On information and belief, when Samsung sold and instructed end users on the use of the Accused Samsung Pay Products in the United States, including providing technical support, or other active assistance to such end users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the ’575 Patent.

67. Therefore, Samsung has unlawfully induced infringement of the ’575 Patent, in violation of 35 U.S.C. § 271(b).

**COUNTERCLAIM COUNT III**

**(Contributory Infringement of U.S. Patent No. 10,565,575)**

68. Blaze incorporates by reference the allegations in Paragraphs 1 through 67 of its Counterclaims above as if fully set forth herein

69. Samsung has committed contributory infringement of at least one claim of the ’575 Patent in violation of 35 U.S.C. § 271(c).

70. Samsung has committed contributory infringement by selling, offering to sell and/or importing into the United States the Accused Samsung Pay Products. As shown in Attachment 1 and Paragraphs 30 through 49, above, the Accused Samsung Pay Products provide secure transactions in NFC enabled mobile devices using NFC point-of-sale terminals for the processing an NFC payment using an identification code transmitted from a secure element embedded in the NFC enabled mobile device to the server and processing the payment at the server using the identification code that literally meets all element of at least one claim of the ’575 Patent.

71. The secure transactions performed by the Accused Samsung Pay Products are a material part of the claims of the ’575 Patent, because the Accused Samsung Pay Products perform the key inventive functions of the ’575 Patent.

72. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Pay Products were especially made or adapted for use in a system that infringes the claims of the ’575 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Pay Products in the United States, knowing end users would use those devices in the United States, and knowing that such use would



Glaser Weil

result in direct infringement of the Asserted Claims.

73. The components of the Accused Samsung Pay Products are configured to practice elements of at least one claim of the ’575 Patent are not staple articles of commerce, and—as configured—are not capable of substantial non-infringing use.

74. Accordingly, Defendants have unlawfully contributed to infringement of the ’575 Patent, in violation of 35 U.S.C. § 271(c).

**COUNTERCLAIM COUNT IV**

**(Direct Infringement of U.S. Patent No. 9,378,493)**

75. Blaze incorporates by reference the allegations in Paragraphs 1 through 74 of its Counterclaims above as if fully set forth herein.

76. Attachment 2 hereto provides an element-by-element analysis showing how the Accused Samsung Pay Products literally infringe at least one claim of the ’493 Patent. Samsung has directly infringed the ’493 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Pay Products that literally infringe at least one claim of the ’493 Patent. The Accused Samsung Pay Products come pre-loaded with the non-browser-based Samsung Pay app. which literally infringes at least one claim of the ’493 Patent. https://www.samsung.com/us/suppor/owners/app/samsung-pay.

77. The non-browser-based Samsung Pay app is pre-loaded into the Accused Samsung Pay Products. See Attachment 2.

78. The Accused Samsung Pay Products contain a 7 nm 64-bit Octa-Core Processor. See, https://www.samsung.com/us/mobile/galaxy-s20-5g/specs/: “If you want to keep track of your spending, Samsung Pay has you covered. You can view transactions made through the app until one month after purchase. You’ll also receive a push notification with details of your transaction after each purchase. You’ll definitely be able to stay on budget this month.”

79. The Accused Samsung Pay Products contain a wireless transceiver. See https://www.samsung .com/us/mobile/galaxy-s20-5g/specs/.

80. The Accused Samsung Pay Products contain Samsung’s Secu-NFC Chip which is the secure element. https://www.samsung.com/us/news/newsRead.do?news_seq19957&gltype-



Glaser Weil

globalnews.

81. Samsung's Secu-NFC Chip contains a 760 Kilobyte (KB) high-density flash memory which is the secure element memory and processor. See https.//www.samsung.com/us/support/answer/ANS00043932/: "The embedded secure element has a 760 Kilobyte (KB) high-density flash memory . . ." and "When you add your payment cased to Samsung Pay, the information is encrypted and sent to Samsung servers and, ultimately, to the card issuer's payment network . . . "

82. The Accused Samsung Pay Products contain an NFC transceiver that uses NFC protocol to transmit transaction information. See, https://www.samsung.com/us/support/answer/ANS00043932/.

83. The Accused Samsung Pay Products' secure element uses a "token" which is the identification code. The token is transferred to the NFC terminal upon in response to detection of a near field communication inductive signal by an NFC terminal and execution on the Samsung Pay application. See https://security.samsungmobile.com/doc/Press_Guidance_Samsung_Pay.pdf and https://www.samsung.com/us/support/answer/ANS00080583/

84. The Accused Samsung Pay Products' token is then transferred to a management server which transmits the identification code to a transaction server for processing of the payment. See https://www.samsung.com/us/support/answer/ANS00043932/: "The actual card number is stored in a secure vault (with the payment processor or bank), and does not reside on the merchant's or Samsung's systems."

85. Samsung alleged in Paragraph 42 of the Complaint that its products to not contain a "secure element application configured to use the NFC protocol". See, Attachment 2.

86. Samsung's non-infringement contention is meritless. The Accused Samsung Pay Products come with a secure element application configured to use NFC protocol preinstalled. See Attachment 2.

87. The Accused Samsung Pay Products literally infringe at least Claims 1 and 9 of the '493 Patent.

## COUNTERCLAIM COUNT V



Glaser Weil

**(Inducement Infringement of U.S. Patent No. 9,378,493)**

88. Blaze incorporates by reference the allegations in Paragraphs 1 through 87 of its Counterclaims above as if fully set forth herein.

89. Samsung actively induced infringement of others in the United States by selling the Accused Samsung Pay Products to one or more customers in the U.S., along with documentation and instructions demonstrating how to use the Accused Samsung Pay Products as a mobile payment and digital wallet that let users make contactless payments using a mobile device in communication with NFC devices in direct infringement of at least one claim of the '493 Patent. See, Attachment 2.

90. The documentation which Samsung provides includes, at least: (i) the product information for the Accused Samsung Pay Products set forth on Samsung's websites which includes manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Pay Products; (ii) the specific product documentation which are attached as Exhibits to this Complaint, or which are otherwise referenced in this Complaint; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form to its customers for the Accused Samsung Pay Products (referred to herein as Samsung Pay Documentation").

91. The Samsung Pay Documentation establishes that Samsung provided extensive documentation to its customers, showing how to use the Accused Samsung Pay Products in an infringing manner. For instance, the Samsung Pay Documentation advises users that the non-browser-based Samsung Pay app is pre-loaded into the Accused Samsung Pay Products' memory which have a graphical user interface including a graphical icon. See https://www.samsung.com/us/support/answer/ANS00045081: "Samsung Pay comes preloaded on available phones . . . "

92. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain a wireless transceiver that supports voice and data interactions through a wireless communication channel. https://www.samsung .com/us/mobile/galaxy-s20-5g/specs/.

93. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain a 7 nm 64-bit Octa-Core Processor that receives a digital artifact for display on





Glaser Weil

Glaser Weil

a graphical user interface. See, https://www.samsung.com/us/mobile/galaxy-s20-5g/specs/: "If you want to keep track of your spending, Samsung Pay has you covered. You can view transactions made through the app until one month after purchase. You'll also receive a push notification with details of your transaction after each purchase. You'll definitely be able to stay on budget this month."

94. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain Samsung's Secu-NFC Chip that enables secure mobile payments by combining an NFC controller and a secure element storing personal information. https://www.samsung.com/us/news/newsRead.do?news_seq19957&gltype-globalnews.

95. The Samsung Pay Documentation further instructs users that the 34. Samsung's Secu-NFC Chip contains a 760 Kilobyte (KB) high-density flash memory that maintains an identification code associated with a user and a secure element application that uses NFC protocol executed in response to a detection of a near field communication inductive signal. See https.//www.samsung.com/us/support/answer/ANS00043932/: "The embedded secure element has a 760 Kilobyte (KB) high-density flash memory . . ." and "When you add your payment cased to Samsung Pay, the information is encrypted and sent to Samsung servers and, ultimately, to the card issuer's payment network . . . "

96. The Samsung Pay Documentation further instructs users that the Samsung Pay Products contain an NFC transceiver that uses NFC protocol to transmits, using the secure element application, transaction information including the associated identification code. See, https://www.samsung.com/us/support/answer/ANS00043932/: "The merchant will only receive a token, and your payment information will be kept secure. The token will be sent to the payment network, where it will be decrypted and verified against the information stored in a secure vault on internal networks."

97. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products use a "token" or identification code which is transmitted to a remote management server which transmits a second transaction information including a payment method that corresponds to the identification code associated with the user for processing the NFC transaction.

98. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products maintain the payment method (i.e., a credit card number) on the remote management server. "The actual card number is stored in a secure vault (with the payment processor or bank) and does not reside on the merchant's or Samsung's systems." https://www.samsung.com/us/support/answer/ANS00043932/.

99. The Samsung Pay Documentation further instructs the uses that Samsung Pay comes preinstalled with a secure element application configured to use NFC protocol preinstalled. See https://www.samsung.com/global/galaxy/galaxy-s8/specs/.

100. The Samsung Pay Documentation is provided to end users of the Accused Samsung Pay Products in a way that assisted them to use the Accused Samsung Pay Products in an infringing manner.

101. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Pay Products in a manner that infringes at least one claim of the '493 Patent.

102. When Samsung performed the acts of inducement outlined in Paragraphs 46-57 supra (and other acts of inducement), it was aware of the '493 Patent, and knew (or was willfully blind) that its customers' normal use of the Accused Samsung Pay Products would infringe the Asserted Claims of the '493 Patent.

103. On information and belief, when Samsung sold and instructed end users on the use of the Accused Samsung Pay Products in the United States, including providing technical support, or other active assistance to such end users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the '493 Patent.

104. Therefore, Samsung has unlawfully induced infringement of the '493 Patent, in violation of 35 U.S.C. § 271(b).

///

**COUNTERCLAIM COUNT VI**

**(Contributory Infringement of U.S. Patent No. 9,378,493)**

105. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 104 of its



Glaser Weil

Counterclaims above as if fully set forth herein

106. Samsung has committed contributory infringement of at least one claim of the ’493 Patent in violation of 35 U.S.C. § 271(c).

107. Samsung has committed contributory infringement by selling, offering to sell and/or importing into the United States the Accused Samsung Pay Products. As shown in Attachment 2 and Paragraphs 76 through 86 above, the Accused Samsung Pay Products provide secure transactions in NFC enabled mobile devices using NFC point-of-sale terminals for the processing an NFC payment using an identification code transmitted from a secure element embedded in the NFC enabled mobile device to the server and processing the payment at the server using the identification code that literally meets all element of at least one claim of the ’493 Patent.

108. The secure transactions performed by the Accused Samsung Pay Products are a material part of the claims of the ’493 Patent, because the Accused Samsung Pay Products perform the key inventive functions of the ’493 Patent.

109. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Pay Products were especially made or adapted for use in a system that infringes the claims of the ’493 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Pay Products in the United States, knowing end users would use those devices in the United States, and knowing that such use would result in direct infringement of the Asserted Claims.

110. The components of the Accused Samsung Pay Products are configured to practice elements of at least one claim of the ’493 Patent are not staple articles of commerce, and—as configured—are not capable of substantial non-infringing use.

111. Accordingly, Defendants have unlawfully contributed to infringement of the ’493 Patent, in violation of 35 U.S.C. § 271(c).

///

**COUNTERCLAIM COUNT VII**

**(Direct Infringement of U.S. Patent No. 9,652,771)**

112. Blaze incorporates by reference the allegations in Paragraphs 1 through 111 of its



Glaser Weil

Counterclaims above as if fully set forth herein.

113. Attachment 3 hereto provides an element-by-element analysis showing how the Accused Samsung Pay Products literally infringe at least one claim of the ’771 Patent. Samsung has directly infringed the ’771 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Pay Products that literally infringe at least one claim of the ’771 Patent. The Accused Samsung Pay Products contain a memory pre-loaded with the non-browser-based Samsung Pay app. which literally infringes at leach on claim of the ’771 Patent. https://www.samsung.com/us/suppor/owners/app/samsung-pay. The non-browser-based Samsung Pay app is pre-loaded into the Accused Samsung Pay Products’ memory is a non-browser based mobile application operating on the Accused Samsung Pay Products’ mobile based operating system platform. See https://www.samsung.com/us/support/answer/ANS00045081: “Samsung Pay comes preloaded on available phones . . . “

114. The Accused Samsung Pay Products contain a wireless transceiver that supports voice and data interactions through a wireless communication channel. See https://www.samsung .com/us/mobile/galaxy-s20-5g/specs/.

115. The Accused Samsung Pay Products contain a 7 nm 64-bit Octa-Core Processor that receives user authentication information through the non-browser-based Samsung Pay application. The Accused Samsung Pay Products further contain a display which sends user authentication information to Samsung Pay which includes biometric data wand upon receipt of the user authentication information authenticates the NFC transaction as provided in third element of Claim 10 of the ’711 Patent. See, https://www.samsung.com/us/news/newsRead.do?news_seq19957&gltype-globalnews.

116. The Accused Samsung Pay Products contain Samsung’s Secu-NFC Chip which contains a processor that enables secure mobile payments in response to an inductive signal by an NFC terminal. https://www.samsung.com/us/news/newsRead.do?news_seq19957&gltype-globalnews. See, https://www.samsung.com/us/support/dlwnloads/: “Use an NFC payment app to make payments by toughing your device to a compatible credit card reader.”

117. Samsung’s Secu-NFC Chip contains a 760 Kilobyte (KB) high-density flash memory





Glaser Weil

that maintains an identification code and is configured to use NFC protocol which enables Samsung Pay to transmit the identification code though a second communication channel to an NFC terminal in response to the near field communication signal by the NFC terminal. See https.//www.samsung.com/us/support/answer/ANS00043932/: "The embedded secure element has a 760 Kilobyte (KB) high-density flash memory . . ." and "When you add your payment cased to Samsung Pay, the information is encrypted and sent to Samsung servers and, ultimately, to the card issuer's payment network . . ." See also, https://www.samsung.com/us/support/answer/ANS00043932/: "The merchant will only receive a token, and your payment information will be kept secure. The token will be sent to the payment network, where it will be decrypted and verified against the information stored in a secure vault on internal networks. See https://security.samsungmobile.com/doc/Press_Guidance_Samsung_Pay.pdf and https://www.samsung.com/us/support/answer/ANS00080583/The Samsung Galaxy S20 uses a "token" or identification code which is transmitted to a remote management server which transmits a second transaction information including a payment method that corresponds to the identification code associated with the user for processing the NFC transaction.

118. As alleged in Paragraph 30 of the Complaint, on November 25, 2020, Blaze's representative, Synergy IP Corp., sent a letter to Samsung which is attached to the Complaint as Exhibit 9.

119. As further alleged in Paragraph 31 of the Complaint, the November 25, 2020, letter was accompanied by four claim charts including a claim chart containing an element-by-element comparison of Samsung Pay app as used in the Samsung Galaxy S20 mobile phone to Claim 1 of the '771 Patent. A copy of the claim chart is attached to Exhibit 11 to the Complaint.

120. Though the '771 Patent claim chart contained an element-by-element comparison, the only basis for Samsung's infringement denial is Samsung's contention that its products to not contain a "non-browser-based application" because browser based element were identified during the prosecution of the ''007 Patent and they do not contain a secure element application configured to use the NFC protocol" and they do not execute an application "in response to a detection of a near field communication inductive signal from an NFC terminal configured to use the NFC protocol."







Glaser Weil

See, Complaint Paragraphs 49 and 50.

121. Samsung's non-infringement contentions are meritless. The Accused Samsung Pay Products comes preinstalled with a secure element application configured to use NFC protocol preinstalled. See Attachment 3.

122. Though the '771 Patent claim chart contained an element-by-element comparison, the only basis for Samsung's infringement denial is Samsung's contention that its products to not contain a "non-browser-based application" at least because they have browser based elements identified during the prosecution of the '007 Patent. See Paragraph 50 of the Complaint.. Blaze incorporates Paragraph 42 through 48 above which demonstrate that Samsung's non-infringement contentions lack merit. The allegations herein as to why Samsung's non-infringement contentions lack merit set forth above in Paragraphs 42 through 48 are equally applicable to Samsung's non-infringement positions relating to the '771 Patent

123. By not denying Blazes' contention in its claim chart that every other element of Claim 1 is meet by the Accused Samsung Pay Products, Samsung admits that each and every other such limitation is literally meet.

124. The Accused Samsung Pay Products literally infringe at least Claims 1 and 10 of the '771 Patent.

**<u>COUNTERCLAIM COUNT VIII</u>**

**<u>(Induced Infringement of U.S. Patent No. 9,652,771)</u>**

125. Blaze incorporates by reference the allegations in Paragraphs 1 through 124 of its Counterclaims above as if fully set forth herein

126. Samsung actively induced infringement of others in the United States by selling the Accused Samsung Pay Products to one or more customers in the U.S., along with documentation and instructions demonstrating how to use the Accused Samsung Pay Products as a mobile payment and digital wallet that let users make contactless payments using a mobile device in communication with NFC devices in direct infringement of at least one claim of the '771 Patent. See Attachment 3.

127. The documentation which Samsung provides includes, at least: (i) the product information for the Accused Samsung Pay Products set forth on Samsung's websites which includes





Glaser Weil

manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Pay Products; (ii) the specific product documentation which are attached as Exhibits to this Complaint, or which are otherwise referenced in this Complaint; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form to its customers for the Accused Samsung Pay Products (referred to herein as Samsung Pay Documentation").

128. The Samsung Pay Documentation establishes that Samsung provided extensive documentation to its customers, showing how to use the Accused Samsung Pay Products in an infringing manner. For instance, the Samsung Pay Documentation advises users that the non-browser-based Samsung Pay app is pre-loaded into the Accused Samsung Pay Products' memory which have a graphical user interface including a graphical icon. See https://www.samsung.com/us/support/answer/ANS00045081: "Samsung Pay comes preloaded on available phones . . . "

129. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain a wireless transceiver that supports voice and data interactions through a wireless communication channel. https://www.samsung .com/us/mobile/galaxy-s20-5g/specs/.

130. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain a 7 nm 64-bit Octa-Core Processor that receives a digital artifact for display on a graphical user interface. See, https://www.samsung.com/us/mobile/galaxy-s20-5g/specs/: "If you want to keep track of your spending, Samsung Pay has you covered. You can view transactions made through the app until one month after purchase. You'll also receive a push notification with details of your transaction after each purchase. You'll definitely be able to stay on budget this month."

131. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products contain Samsung's Secu-NFC Chip that enables secure mobile payments by combining an NFC controller and a secure element storing personal information. https://www.samsung.com/us/news/newsRead.do?news_seq19957&gltype-globalnews.

132. The Samsung Pay Documentation further instructs users that the Samsung's Secu-



Glaser Weil

NFC Chip contains a 760 Kilobyte (KB) high-density flash memory that maintains an identification code associated with a user and a secure element application that uses NFC protocol executed in response to a detection of a near field communication inductive signal. See https.//www.samsung.com/us/support/answer/ANS00043932/: "The embedded secure element has a 760 Kilobyte (KB) high-density flash memory . . ." and "When you add your payment cased to Samsung Pay, the information is encrypted and sent to Samsung servers and, ultimately, to the card issuer's payment network . . . "

133. The Samsung Pay Documentation further instructs users that the Samsung Pay Products contain an NFC transceiver that uses NFC protocol to transmits, using the secure element application, transaction information including the associated identification code. See, https://www.samsung.com/us/support/answer/ANS00043932/: "The merchant will only receive a token, and your payment information will be kept secure. The token will be sent to the payment network, where it will be decrypted and verified against the information stored in a secure vault on internal networks."

134. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products use a "token" or identification code which is transmitted to a remote management server which transmits a second transaction information including a payment method that corresponds to the identification code associated with the user for processing the NFC transaction.

135. The Samsung Pay Documentation further instructs users that the Accused Samsung Pay Products maintain the payment method (i.e., a credit card number) on the remote management server. "The actual card number is stored in a secure vault (with the payment processor or bank) and does not reside on the merchant's or Samsung's systems." https://www.samsung.com/us/support/answer/ANS00043932/.

136. The Samsung Pay Documentation further instructs the uses that Samsung Pay comes preinstalled with a secure element application configured to use NFC protocol preinstalled. See https://www.samsung.com/global/galaxy/galaxy-s8/specs/. See Attachment 3.

137. The Samsung Pay Documentation is provided to end users of the Accused Samsung Pay Products in a way that assisted them to use the Accused Samsung Pay Products in an infringing



Glaser Weil

manner. See Attachment 3.

138. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Pay Products in a manner that infringes at least one claim of the ’771 Patent. See Attachment 3.

139. When Samsung performed the acts of inducement outlined in Paragraphs 46-57 supra (and other acts of inducement), it was aware of the ‘771 Patent, and knew (or was willfully blind) that its customers’ normal use of the Accused Samsung Pay Products would infringe the Asserted Claims of the ‘771 Patent.

140. On information and belief, when Samsung sold and instructed end users on the use of the Accused Samsung Pay Products in the United States, including providing technical support, or other active assistance to such end users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the ’771 Patent.

141. Therefore, Samsung has unlawfully induced infringement of the ’771 Patent, in violation of 35 U.S.C. § 271(b).

**COUNTERCLAIM COUNT IX**

**(Contributory Infringement of U.S. Patent No. 9,652,771)**

142. Blaze incorporates by reference the allegations in Paragraphs 1 through 141 of its Counterclaims above as if fully set forth herein

143. Samsung has committed contributory infringement of at least one claim of the ’771 Patent in violation of 35 U.S.C. § 271(c).

144. Samsung has committed contributory infringement by selling, offering to sell and/or importing into the United States the Accused Samsung Pay Products. As shown in Attachment 3 and Paragraphs 113 through 123 above, the Accused Samsung Pay Products provide secure transactions in NFC enabled mobile devices using NFC point-of-sale terminals for the processing an NFC payment using an identification code transmitted from a secure element embedded in the NFC enabled mobile device to the server and processing the payment at the server using the identification code that literally meets all element of at least one claim of the ’771 Patent.

145. The secure transactions performed by the Accused Samsung Pay Products are a



Glaser Weil

Glaser Weil

material part of the claims of the ’771 Patent, because the Accused Samsung Pay Products perform the key inventive functions of the ’771 Patent.

146. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Pay Products were especially made or adapted for use in a system that infringes the claims of the ’771 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Pay Products in the United States, knowing end users would use those devices in the United States, and knowing that such use would result in direct infringement of the Asserted Claims.

147. The components of the Accused Samsung Pay Products are configured to practice elements of at least one claim of the ’771 Patent are not staple articles of commerce, and—as configured—are not capable of substantial non-infringing use.

148. Accordingly, Defendants have unlawfully contributed to infringement of the ’771 Patent, in violation of 35 U.S.C. § 271(c).

## COUNTERCLAIM COUNT X

**(Direct Infringement of U.S. Patent No. 10,699,259)**

149. Blaze incorporates by reference the allegations in Paragraphs 1 through 139 of its Counterclaims above as if fully set forth herein.

150. Attachment 4 hereto provides an element-by-element analysis showing how the Accused Samsung Galaxy Store Products literally infringe at least one claim of the ’259 Patent. Samsung has directly infringed the ’259 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Galaxy Store Products that literally infringe at least one claim of the ’259 Patent.

151. The Accused Samsung Galaxy Store Products contain a memory pre-loaded with the non-browser-based Samsung Galaxy Store and contain a memory, a mobile device display, a mobile device processor, and a mobile device wireless radio interface, capable of wireless (Wi-Fi) voice and data interactions through a first wireless communication channel using either GSM or CDMA. https://www.samsung.com/us/support/answer/ANS00076970/.

152. The memory in the Accused Samsung Galaxy Store Products is configured to store

the non-browser base Samsung Galaxy Store application which is pre-loaded into the Accused Samsung Galaxy Store Products to sale to a consumer. The non-browser-based Samsung Galaxy Store is a mobile operations system platform based mobile application with that includes a graphical icon and generates a non-browser-based application generated screen that corresponds to a specific screen or area of the application. See https://www.samsung.com/us/support/owners/product/galaxy-s20-5g-verizon. In operation, the Samsung Galaxy Store generates a list of products from a remote management server which are displayed on the Accused Samsung Galaxy Store Products' user interface.

153. The Accused Samsung Galaxy Store application is used to identify one or more products to the remote management server along with a transaction purchase request and a user input login. See, Attachment 4.

154. The Accused Samsung Galaxy Store also provides authentication of the user associated with the user input login information. See Attachment 4 and https://www.samsung.com/us/account/privacy-policy/.

155. The Accused Samsung Store Products utilize a remote management server that receives a transaction verification for a transaction server which process a payment method that corresponds to the identification code. The payment method is stored at the remote management server. See Attachment 4.

156. The Accused Samsung Galaxy Store Products are further configured to receive an identification of one or more selected products from the product list through the Samsung Galaxy Store app via the display. See Attachment 4.

157. The Accused Samsung Galaxy Store Products are further configured to receive a transaction purchase request from the Samsung Galaxy Store generated screen which includes information relating to the identification of one or more products. See Attachment 4.

158. The Accused Samsung Galaxy Store Products are further configured to receive the user login information including an identification code from the Samsung Galaxy Store generated screen through the users input via the mobile device display. See Attachment 4.

159. As alleged in Paragraph 30 of the Complaint, on November 25, 2020, Blaze's



Glaser Weil

representative, Synergy IP Corp., sent a letter to Samsung which is attached to the Complaint as Exhibit 9.

160. As further alleged in Paragraph 31 of the Complaint, the November 25, 2020, letter was accompanied by four claim charts including a claim chart containing an element-by-element comparison of Samsung Galaxy Store app as used in the Samsung Galaxy S20 mobile phone to Claim 1 of the ’259 Patent. A copy of the claim chart is attached to Exhibit 13 to the Complaint.

161. Though the ’259 Patent claim chart contained an element-by-element comparison, the only basis for Samsung’s infringement denial is Samsung’s contention that its products to not contain a “non-browser-based application.” Samsung contends that during the prosecution of the ’007 Patent the phrase “non-browser based applications” was limited by disclaimer to applications that “must be able to operate without connection to a server unlike a browser application which requires a server connection.” See Paragraph 78 of the Complaint.

162. Samsung’s non-infringement position is meritless. There was no disavowal of “apps” from the plain and ordinary meaning of “non-browser based application.” The portion of the file history Samsung relies on merely distinguished “apps” from web-based “browsers” (e.g., Internet Explorer, Google Chrome, and Safari) because a prior art reference disclosed the use of Browsers but not apps. Also, the specification states that in offline mode the non-browser-based application is open and while open continues to display the digital artifact even if the mobile device loses connection with the wireless network.

163. Blaze incorporates Paragraph 42 through 48 above which demonstrate that Samsung’s non-infringement contentions lack merit. The allegations herein as to why Samsung’s non-infringement contentions lack merit set forth above in Paragraphs 42-48 are equally applicable to Samsung’s non-infringement positions relating to the ’259 Patent. Samsung’s non-infringement position is also contrary to the ’259 Patent’s claims. Claim 6 and 12 recite in part, “wherein the digital artifact comprises a receipt, advertisement, coupon, content, media, or a ticket.” Claims 15 and 17 of the ‘295 patent recite in part, “wherein the non-browser based application enables the user to access the digital artifact when there is no network connection.” Claim 18 and 27 of the ‘295 patent recite in part, “wherein the non-browser based application enables the user to access the



Glaser Weil

digital artifact when there is no network connection." See Attachment 4.

164. By not denying Blazes' contention in its claim chart that every other element of Claim 1 is meet by the Accused Samsung Galaxy Store Products, Samsung admits that each and every other such element is literally meet.

165. The Accused Samsung Galaxy Store Products meet each and every element, and therefore, literally infringe at least Claims 1 and 7 of the '259 Patent.

**COUNTERCLAIM COUNT XI**

**(Induced Infringement of U.S. Patent No. 10,699,259)**

166. Blaze repeats incorporates by reference the allegations in Paragraphs 1 through 165 of its Counterclaims above as if fully set forth herein

167. Samsun Samsung actively induced infringement of others in the United States by selling the Accused Samsung Galaxy Store Products to one or more end users in the United States, along with documentation and instructions demonstrating how to use the Accused Samsung Galaxy Store Products to conduct secure transactions using non-browser mobile applications running on a mobile device, management server, and transaction server by using an identification code transmitted from a non-browser-based application running on the mobile device in direct infringement of at least one claim of the '259 Patent. See Attachment 4.

168. The documentation which Samsung provides includes, at least (i) the product information for the Accused Samsung Galaxy Store Products set forth on Samsung's websites which includes manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Galaxy Store Products; (ii) the specific product documentation which are attached as Exhibits to this Answer and Counterclaim, or which are otherwise referenced in this Answer and Counterclaim; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form to its customers for the Accused Samsung Galax Store Products (referred to as "Samsung Galaxy Store Documentation")

169. The Samsung Galaxy Store Documentation establishes that Samsung provided extensive documentation to end users showing how to use the Accused Samsung Galaxy Store Products in an infringing manner. For instance, the Samsung Pay Documentation instructs end



Glaser Weil

users that the Accused Samsung Galaxy Store Products contain a memory pre-loaded with the non-browser-based Samsung Galaxy Store, a mobile device display, a mobile device processor, and a mobile device wireless radio interface, capable of wireless (Wi-Fi) voice and data interactions through a first wireless communication channel using either GSM or CDMA. https://www.samsung.com/us/support/answer/ANS00076970/.

170. The Samsung Galaxy Store Documentation further instructs end users that the Accused Samsung Galaxy Store Products are a mobile operations system platform based mobile application with that includes a graphical icon and generates a non-browser-based application generated screen that corresponds to a specific screen or area of the application. See https://www.samsung.com/us/support/owners/product/galaxy-s20-5g-verizon. In operation, the Samsung Galaxy Store generates a list of products from a remote management server which are displayed on the Accused Samsung Galaxy Store Products' user interface.

171. The Samsung Galaxy Store Documentation further instructs end users that the Accused Samsung Galaxy Store application is used to identify one or more products to the remote management server along with a transaction purchase request and a user input login.

172. The Samsung Galaxy Store Documentation further instructs end users that the Accused Samsung Galaxy Store provides authentication of the user associated with the user input login information. See https://www.samsung.com/us/account/privacy-policy/.

173. The Samsung Galaxy Store Documentation further instructs end users The to utilize a remote management server that receives a transaction verification for a transaction server which process a payment method that corresponds to the identification code. The payment method is stored at the remote management server.

174. The Samsung Galaxy Store Documentation further instructs end users to use the Accused Samsung Galaxy Store Products to receive an identification of one or more selected products from the product list through the Samsung Galaxy Store app via the display.

175. The Samsung Galaxy Store Documentation further instruct end users to use the Accused Samsung Galaxy Store Products to receive a transaction purchase request from the Samsung Galaxy Store generated screen which includes information relating to the identification of



Glaser Weil

Glaser Weil

one or more products.

176. The Samsung Galaxy Store Documentation further instructs end users to use the Accused Samsung Galaxy Store Products to receive the user login information including an identification code from the Samsung Galaxy Store generated screen through the users input via the mobile device display.

177. The Samsung Galaxy Store Documentation is provided to end users of the Accused Samsung Galaxy Store Products in a way that assisted them to use the Accused Samsung Galaxy Store Products in an infringing manner.

178. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Galaxy Store Products in a manner that infringes at least one claim of the ’259 Patent.

179. When Samsung performed the acts of inducement outlined in the preceding paragraphs it was aware of the ‘259 Patent and knew (or was willfully blind) that its customers’ normal use of the Accused Samsung Pay Products would infringe at least one claim of the ‘259 Patent.

180. On information and belief, when Samsung sold and instructed end users on the use of the Accused Samsung Galax Store Products in the United States, including providing technical support, or other active assistance to such end users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the ’259 Patent.

181. Therefore, Samsung has unlawfully induced infringement of the ’259 Patent, in violation of 35 U.S.C. § 271(b).

**COUNTERCLAIM COUNT XII**

**(Contributory Infringement of U.S. Patent No. 10,699,259)**

182. Blaze repeats incorporates by reference the allegations in Paragraphs 1 through 181 of its Counterclaims above as if fully set forth herein

183. Samsung has committed contributory infringement of at least one claim of the ’259 Patent in violation of 35 U.S.C. § 271(c).

184. Samsung has committed contributory infringement by selling, offering to sell and/or

importing into the United States the Accused Samsung Galaxy Store Products. As shown in Attachment 4 and Paragraphs 150 through 164 above, the Accused Samsung Galaxy Store Products provide a secure transaction using non-browser mobile applications running on a mobile device, management server, and transaction server by using an identification code transmitted from a non-browser-based application running literally meets all element of at least one claim of the ’259 Patent.

185. The secure transactions performed by the Accused Samsung Galaxy Store Products are a material part of the claims of the ’259 Patent because the Accused Samsung Pay Products perform the key inventive functions of the ’259 Patent.

186. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Galaxy Store Products were especially made or adapted for use in a system that infringes the claims of the ’259 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Galaxy Store in the United States, knowing end users would use those devices in the United States, and knowing that such use would result in direct infringement of at least one claim of the ’259 Patent.

187. The components of the Accused Samsung Pay Galaxy Store Products are configured to practice elements of at least one claim of the ’259 Patent, are not staple articles of commerce, and—as configured—are not capable of substantial non-infringing use.

188. Accordingly, Defendants have unlawfully contributed to infringement of the ’259 Patent, in violation of 35 U.S.C. § 271(c).

## COUNTERCLAIM COUNT XIII

## (Direct Infringement of U.S. Patent No. 10,825,007)

189. Blaze incorporates by reference the allegations in Paragraphs 1 through 1878 of its Counterclaims above as if fully set forth herein.

190. Attachment 5 hereto provides an element-by-element analysis showing how the Accused Samsung Pay Products literally infringe at least one claim of the ’007 Patent. Samsung has directly infringed the ’007 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Galaxy Store Products that literally infringe at least one claim of the



Glaser Weil

’007 Patent.

191. The Accused Samsung Galaxy Store Products contain a memory pre-loaded with the non-browser-based Samsung Galaxy Store application literally infringes at leach on claim of the ’007 Patent. See https://www.samsung.com/us/suppor/owners/app/samsung-pay and Attachment 5.

192. The Samsung Galaxy Store application is pre-loaded into the memory of the Accused Samsung Galaxy Store Products. The Samsung Galaxy Store application is a non-browser-based application that processes transactions including receiving a payment that corresponds to an identification code associated with a user from a remote management server. See https://www.samsung.com/us/support/owners/product/galaxy-s20-5g-verizon and Attachment 5.

193. In operation, the Samsung Galaxy Store generates a list of products from a remote management server which are displayed on the Accused Samsung Galaxy Store Products’ user interface using a mobile device processor, a mobile device wireless radio transceiver configured to support voice and data interaction through a first wireless communications channel and a mobile device wireless fidelity (Wi-Fi) transceiver. See Attachment 5.

194. The Samsung Galaxy Store application identifies one or more products to the remote management server along with a transaction purchase request and a user input login. See Attachment 5.

195. The Samsung Galaxy Store also provides authentication of the user associated with the user input login information. See https://www.samsung.com/us/account/privacy-policy/.

196. The Accused Samsung Galaxy Store Products utilize a remote management server that receives a transaction verification for a transaction server which process a payment method that corresponds to the identification code. The payment method is stored at the remote management server. See Attachment 5.

197. The Accused Samsung Galaxy Store Products are further configured to receive an identification of one or more selected products from the product list through the Samsung Galaxy Store app via the display. See Attachment 5.

198. The Accused Samsung Galaxy Store Products are further configured to receive a transaction purchase request from the Samsung Galaxy Store generated screen which includes



Glaser Weil

information relating to the identification of one or more products. See Attachment 5.

199. The Accused Samsung Galaxy Store Products are further configured to receive the user login information including an identification code from the Samsung Galaxy Store generated screen through the users input via the mobile device display. See Attachment 5.

200. Samsung contends in Paragraph 93 the Complaint that its Samsung Galaxy Store products do not infringe the claims of the '007 Patent because they do not have a "non-browser-based application.

201. Samsung's non-infringement position is meritless. There was no disavowal of "apps" from the plain and ordinary meaning of "non-browser based application." The portion of the file history Samsung relies on merely distinguished "apps" from web-based "browsers" (e.g., Internet Explorer, Google Chrome, and Safari) because a prior art reference disclosed the use of Browsers but not apps. Also, the specification states in offline mode the non-browser-based application is open and while open continues to display the digital artifact even if the mobile device loses connection with a wireless network.

202. Blaze incorporates Paragraph 42 through 48 above which demonstrate that Samsung's non-infringement contentions lack merit. The allegations herein as to why Samsung's non-infringement contentions lack merit set forth above in Paragraphs 42-48 are equally applicable to Samsung's non-infringement positions relating to the '007 Patent. Samsung's non-infringement position is also contrary to the '007 Patent's claims. Claim 18 and 27 of the '007 patent recite in part, "wherein the digital artifact is media, content, ticket, a receipt, advertisement or coupon". Claims 19 and 26 of the '007 patent recite in part, "further wherein the digital artifact is cached on the mobile device and accessible by the non-browser based application when there is no network connection." Claim 10 and 14 of the '007 patent recite in part, "further wherein the non-browser based application can be used when the mobile device is not connected to a wireless network". See Attachment 5.

203. Thus, Samsung's reading of the '007 Patent's file history is incorrect.

204. The Accused Samsung Galaxy Store Products literally infringe at least Claim 1 of the '007 Patent.



Glaser Weil

**COUNTERCLAIM COUNT XIV**

**(Induced Infringement of U.S. Patent No. 10,825,007)**

205. Blaze incorporates by reference the allegations in Paragraphs 1 through 204 of its Counterclaims above as if fully set forth herein

206. Samsun Samsung actively induced infringement of others in the United States by selling the Accused Samsung Galaxy Store Products to one or more end users in the United States, along with documentation and instructions demonstrating how to use the Accused Samsung Galaxy Store Products to conduct secure transactions using non-browser mobile applications running on a mobile device, management server, and transaction server by using an identification code transmitted from a non-browser-based application running on the mobile device in direct infringement of at least one claim of the ’007 Patent. See Attachment 5.

207. The documentation which Samsung provides includes, at least (i) the product information for the Accused Samsung Galaxy Store Products set forth on Samsung’s websites which includes manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Galaxy Store Products; (ii) the specific product documentation which are attached as Exhibits to this Answer and Counterclaim, or which are otherwise referenced in this Answer and Counterclaim; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form to its customers for the Accused Samsung Galax Store Products (referred to as “Samsung Galaxy Store Documentation”)

208. The Samsung Galaxy Store Documentation establishes that Samsung provided extensive documentation to end users showing how to use the Accused Samsung Galaxy Store Products in an infringing manner. For instance, the Samsung Pay Documentation instructs end users that the Accused Samsung Galaxy Store Products contain a memory pre-loaded with the non-browser-based Samsung Galaxy Store, a mobile device display, a mobile device processor, and a mobile device wireless radio interface, capable of wireless (Wi-Fi) voice and data interactions through a first wireless communication channel using either GSM or CDMA. https://www.samsung.com/us/support/answer/ANS00076970/.

209. The Samsung Galaxy Store Documentation further instructs end users that the



Glaser Weil

Accused Samsung Galaxy Store Products are a mobile operations system platform based mobile application with that includes a graphical icon and generates a non-browser-based application generated screen that corresponds to a specific screen or area of the application. See https://www.samsung.com/us/support/owners/product/galaxy-s20-5g-verizon. In operation, the Samsung Galaxy Store generates a list of products from a remote management server which are displayed on the Accused Samsung Galaxy Store Products' user interface.

210. The Samsung Galaxy Store Documentation further instructs end users that the Accused Samsung Galaxy Store application is used to identify one or more products to the remote management server along with a transaction purchase request and a user input login.

211. The Samsung Galaxy Store Documentation further instructs end users that the Accused Samsung Galaxy Store provides authentication of the user associated with the user input login information. See https://www.samsung.com/us/account/privacy-policy/.

212. The Samsung Galaxy Store Documentation further instructs end users The to utilize a remote management server that receives a transaction verification for a transaction server which process a payment method that corresponds to the identification code. The payment method is stored at the remote management server.

213. The Samsung Galaxy Store Documentation further instructs end users to use the Accused Samsung Galaxy Store Products to receive an identification of one or more selected products from the product list through the Samsung Galaxy Store app via the display.

214. The Samsung Galaxy Store Documentation further instruct end users to use the Accused Samsung Galaxy Store Products to receive a transaction purchase request from the Samsung Galaxy Store generated screen which includes information relating to the identification of one or more products.

215. The Samsung Galaxy Store Documentation further instructs end users to use the Accused Samsung Galaxy Store Products to receive the user login information including an identification code from the Samsung Galaxy Store generated screen through the users input via the mobile device display.

216. The Samsung Galaxy Store Documentation is provided to end users of the Accused



Glaser Weil

Glaser Weil

Samsung Galaxy Store Products in a way that assisted them to use the Accused Samsung Galaxy Store Products in an infringing manner.

217. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Galaxy Store Products in a manner that infringes at least one claim of the ’007 Patent.

218. When Samsung performed the acts of inducement outlined in the preceding paragraphs it was aware of the ‘007 Patent and knew (or was willfully blind) that its customers’ normal use of the Accused Samsung Pay Products would infringe at least one claim of the ‘007 Patent.

219. On information and belief, when Samsung sold and instructed end users on the use of the Accused Samsung Galax Store Products in the United States, including providing technical support, or other active assistance to such end users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the ’007 Patent.

220. Therefore, Samsung has unlawfully induced infringement of the ’007 Patent, in violation of 35 U.S.C. § 271(b).

## COUNTERCLAIM COUNT XV

## (Contributory Infringement of U.S. Patent No. 10,825,007)

221. Blaze incorporates by reference the allegations in Paragraphs 1 through 220 of its Counterclaims above as if fully set forth herein

222. Samsung has committed contributory infringement of at least one claim of the ’007 Patent in violation of 35 U.S.C. § 271(c).

223. Samsung has committed contributory infringement by selling, offering to sell and/or importing into the United States the Accused Samsung Galaxy Store Products. As shown in Attachment 5 and paragraphs 190 through 203 above, the Accused Samsung Galaxy Store Products provide a secure transaction using non-browser mobile applications running on a mobile device, management server, and transaction server by using an identification code transmitted from a non-browser-based application running to the server and payment is processed at the server using the identification code that literally meets all element of at least one claim of the ’007 Patent.

224. The secure transactions performed by the Accused Samsung Galaxy Store Products are a material part of the claims of the '007 Patent because the Accused Samsung Pay Products perform the key inventive functions of the '007 Patent.

225. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Galaxy Store Products were especially made or adapted for use in a system that infringes the claims of the '007 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Galaxy Store in the United States, knowing end users would use those devices in the United States, and knowing that such use would result in direct infringement of at least one claim of the '007 Patent.

226. The components of the Accused Samsung Pay Galaxy Store Products are configured to practice elements of at least one claim of the '007 Patent, are not staple articles of commerce, and—as configured—are not capable of substantial non-infringing use.

227. Accordingly, Defendants have unlawfully contributed to infringement of the '007 Patent, in violation of 35 U.S.C. § 271(c).

**COUNTERCLAIM COUNT XVI**

**(Direct Infringement of U.S. Patent No. 10,621,612)**

228. Blaze incorporates by reference the allegations in Paragraphs 1 through 227 of its Counterclaims above as if fully set forth herein.

229. Attachment 6 hereto provides an element-by-element analysis showing how the Accused Samsung Ads Products literally infringe at least one claim of the '612 Patent. Samsung has directly infringed the '612 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Ads Products. The Accused Samsung Products collect data on consumer viewership preferences and connected device usage through Samsung Ads product literally infringe at least one claim of the '612 Patent.

230. The Accused Samsung Ads Products display advertisements using a non-browser bases application stored on the mobile device. See, Attachment 6 and https://www.samsung.com/us/account/privacy-policy/: "Our Samsung Ads service is designed to serve advertisements that are customized to users' interests on Samsung and third-party devices,



Glaser Weil

websites and apps. Samsung Ads may deliver customized ads based on your demographic characteristics, preferences, choices, and interests by collecting certain information about your online activities as specified in this Privacy Policy. Samsung Ads application utilizes a graphical user interface including a graphical icon that is preinstalled or downloaded on to a mobile device having a display, processor, and wireless radio interface. See Attachment 6.

231. The Accused Samsung Ads Products receive an advertisement from a remote management server which selects the advertisement in response to user input from the Samsung Ads app. See, Attachment 6 and https://www.samsung.com/us/account/privacy-policy/.

232. The advertisement received by the Accused Samsung Ads Products are maintained at the remote management server. See, Attachment 6 and https://www.samsung.com/us/account/privacy-policy/.

233. The advertisement is displayed on the Accused Samsung Ads Products' display screen which corresponds to a specific screen or area of the application. See, Attachment 6 and Samsung Shop Mobile app.

234. Samsung contends in Paragraph 71 the Complaint that its Samsung Galaxy Store products do not infringe the claims of the '007 Patent because they do not have a "non-browser-based application.

235. Samsung's non-infringement position is meritless. There was no disavowal of "apps" from the plain and ordinary meaning of "non-browser based application." The portion of the file history Samsung relies on merely distinguished "apps" from web-based "browsers" (e.g., Internet Explorer, Google Chrome, and Safari) because a prior art reference disclosed the use of Browsers but not apps. Also, the specification states in offline mode the non-browser-based application is open and while open continues to display the digital artifact even if the mobile device loses connection with the wireless network.

236. Blaze incorporates Paragraph 42 through 48 above which demonstrate that Samsung's non-infringement contentions lack merit. In addition, the '612 Specification includes additional examples of non-browser based applications with navigation buttons. See Attachment 10. The allegations herein as to why Samsung's non-infringement contentions lack merit set forth



Glaser Weil

above in Paragraphs 42-48 are equally applicable to Samsung's non-infringement positions relating to the '612 Patent. Samsung's non-infringement position is also contrary to the '612 Patent's claims. Claims 11 and 30 of the '612 patent recite in part, "further wherein the advertisement is cached on the mobile device and is accessible by the non-browser based application when there is not a wireless network connection." Claims 12 and 31 of the '612 patent recite in part, "wherein the non-browser based application is operable when it is not connected to a wireless network". See Attachment 6.

237. Thus, Samsung's reading of the '007 Patent's file history is incorrect.

238. The Accused Samsung Ads Products literally infringe at least Claim 1 of the '612 Patent.

**COUNTERCLAIM COUNT XVII**

**(Induced Infringement of U.S. Patent No. 10,621,612)**

239. Blaze repeats incorporates by reference the allegations in Paragraphs 1 through 238 of its Counterclaims above as if fully set forth herein.

240. Samsung actively induced infringement of others in the United States by selling the Accused Samsung Ads Products to one or more customers in the U.S., along with documentation and instructions, instructing how to use the Accused Samsung Ads Products to collect data on consumer viewership preferences and connected device usage through using the Accused Samsung Ads Products in direct infringement of at least one claim of the '612 Patent. See Attachment 6.

241. The documentation which Samsung provides includes, at least: (i) the product information for the Accused Samsung Pay Products set forth on Samsung's websites which includes manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Pay Products; (ii) the specific product documentation which are attached as Exhibits to this Complaint, or which are otherwise referenced in this Complaint; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form to its customers for the Accused Samsung Pay Products (referred to herein as "Samsung Ads Documentation").

242. The Samsung Ads Documentation instruct users how to use the Accused Samsung







Glaser Weil

Ads Products to display advertisements using a non-browser bases application stored on the mobile device. See, https://www.samsung.com/us/account/privacy-policy/: "Our Samsung Ads service is designed to serve advertisements that are customized to users' interests on Samsung and third-party devices, websites and apps. Samsung Ads may deliver customized ads based on your demographic characteristics, preferences, choices, and interests by collecting certain information about your online activities as specified in this Privacy Policy. Samsung Ads application utilizes a graphical user interface including a graphical icon that is preinstalled or downloaded on to a mobile device having a display, processor, and wireless radio interface.

243. The Samsung Ads Documentation further instructs users how to use the Accused Samsung Ads Products cause an end user to receive an advertisement from a remote management server which selects the advertisement in response to user input from the Samsung Ads app. See, https://www.samsung.com/us/account/privacy-policy/.

244. The Samsung Ads Documentation instructs users how the inform can store information received by the Accused Samsung Ads Products at the remote management server. See, https://www.samsung.com/us/account/privacy-policy/.

245. The Samsung Ads Documentation further instructs users how to display an advertisement screen or area of the application. See, Samsung Shop Mobile app.

246. The Samsung Ads Documentation is provided to users of the Accused Samsung Ads Products to assist them in using the Accused Samsung Ads Products in a manner that directly infringes at least one claim of the '612 Patent.

247. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Ads Products in a manner that infringes at least one claim of the '612 Patent.

248. When Samsung performed the acts of inducement outlined in the proceeding paragraphs, Samsung was aware of the '612 Patent, and knew (or was willfully blind) that its customers' normal use of the Accused Samsung Ads Products would infringe at least one claim of the '612 Patent.

249. On information and belief, when Samsung sold and instructed end users on the use of





Glaser Weil

the Accused Samsung Ads Products in the United States, including providing technical support, or other active assistance to users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the '612 Patent.

250. Therefore, Samsung has unlawfully induced infringement of the '612 Patent, in violation of 35 U.S.C. § 271(b).

**COUNTERCLAIM COUNT XVIII**

**(Contributory Infringement of U.S. Patent No. 10,621,612)**

251. Blaze repeats incorporates by reference the allegations in Paragraphs 1 through 250 of its Counterclaims above as if fully set forth herein

252. Samsung has committed contributory infringement of at least one claim of the '612 Patent in violation of 35 U.S.C. § 271(c).

253. Samsung has committed contributory infringement by selling, offering to sell and/or importing into the United States the Accused Samsung Ads Products. As shown in Attachment 6 and Paragraphs 229 through 239 above, the Accused Samsung Ads Products are used to display ads on, and serving ads to, non-browser based apps based upon collected data relating to consumer viewership preferences and connected device usage that literally meets all element of at least one claim of the '612 Patent.

254. The delivery of advertisements based upon certain targeting parameters in response to user input from a non-browser base application stored on a mobile device as done by the Accused Samsung Ads Products are a material part of the claims of the '612 Patent and thus the Accused Samsung Ads Products perform the key inventive functions of the '612 Patent.

255. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Ads Products were especially made or adapted for use in a system that infringes the claims of the '612 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Ads Products in the United States, knowing users would use those products in the United States, and knowing that such use would result in direct infringement of at least one claim of the '612 Patent.

256. The components of the Accused Samsung Pay Ads Products are configured to



Glaser Weil

practice elements of at least one claim of the '612 Patent, are not staple articles of commerce, and—as configured—are not capable of substantial non-infringing use.

257. Accordingly, Defendants have unlawfully contributed to infringement of the '612 Patent, in violation of 35 U.S.C. § 271(c).

**COUNTERCLAIM COUNT XIX**

**(Direct Infringement of U.S. Patent No. 10,339,556)**

258. Blaze incorporates by reference the allegations in Paragraphs 1 through 243 of its Counterclaims above as if fully set forth herein.

259. Attachment 7 hereto provides an element-by-element analysis showing how the Accused Samsung Ads Products literally infringe at least one claim of the '556 Patent. Samsung has directly infringed the '556 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Ads Products.

260. The Accused Samsung Ads Products are mobile devices that collect data on consumer viewership preferences and connected device usage through Samsung Ads product literally infringe at least one claim of the '556 Patent.

261. Samsung Ads is a non-browser bases application that delivers advertisements to a mobile device. See, Attachment 7 and https://www.samsung.com/us/account/privacy-policy/: "Our Samsung Ads service is designed to serve advertisements that are customized to users' interests on Samsung and third-party devices, websites and apps. Samsung Ads may deliver customized ads based on your demographic characteristics, preferences, choices and interests by collecting certain information about your online activities as specified in this Privacy Policy."

262. The Accused Samsung Ads Products receive an advertisement from a remote management server which maintains the advertisement. See, Attachment 7 and https://www.samsung.com/us/account/privacy-policy/.

263. The remote management server utilized by the Accused Samsung Ads Products receives user input information when a user opens or logs into the mobile application. The user input is received from a non-browser-based application (Samsung Shop App) stored on a mobile device. The mobile device receives the user input via the mobile device display when the user



Glaser Weil

touches the "sign in" icon shown on the display after typing in his/her login information. See Attachment 7.

264. Once the Samsung server receives the user selecting "For You", it displays the screen shown to the right with the user's first name and last name Below this screen are more screens with advertisements. See Attachment 7.

265. Once the Samsung server receives the user selecting "My Inbox", it displays the screen shown to the right with the customized ads. Below this screen are more screens with advertisements. See Attachment 7.

266. Samsung contends in Paragraph 64 of the Complaint that its Samsung Galaxy Store products do not infringe the claims of the '007 Patent because they do not have a "non-browser-based application.

267. Samsung's non-infringement position is meritless. There was no disavowal of "apps" from the plain and ordinary meaning of "non-browser based application." The portion of the file history Samsung relies on merely distinguished "apps" from web-based "browsers" (e.g., Internet Explorer, Google Chrome, and Safari) because a prior art reference disclosed the use of Browsers but not apps. Also, the specification states in offline mode the non-browser-based application is open and while open continues to display the digital artifact even if the mobile device loses connection with the wireless network.

268. Blaze incorporates Paragraph 42 through 48 above which demonstrate that Samsung's non-infringement contentions lack merit. In addition, the '556 Specification includes additional examples of non-browser based applications with navigation buttons. See Attachment 10 The allegations herein as to why Samsung's non-infringement contentions lack merit set forth above in Paragraphs 42 through 48 are equally applicable to Samsung's non-infringement positions relating to the '556 Patent. Samsung's non-infringement position is also contrary to the '556 Patent's claims. Claims 11 and 29 of the '556 patent recite in part, "further wherein the advertisement is cached on the mobile device and is accessible by the non-browser based application when there is not a network connection." Claim 12 and 30 of the '556 patent recite in part, "wherein the non-browser based application is operable when it is not connected to a wireless



Glaser Weil

network." See Attachment 7.

269. Thus, Samsung's reading of the '007 Patent's file history is incorrect.

270. The Accused Samsung Ads Products literally infringe at least Claim 1 of the '556 Patent.

**COUNTERCLAIM COUNT XX**

**(Induced Infringement of U.S. Patent No. 10,339,556)**

271. Blaze incorporates by reference the allegations in Paragraphs 1 through 270 of its Counterclaims above as if fully set forth herein

272. Samsung actively induced infringement of others in the United States by selling the Accused Samsung Ads Products to one or more customers in the U.S., along with documentation and instructions, instructing how to use the Accused Samsung Ads Products to collect data on consumer viewership preferences and connected device usage through using the Accused Samsung Ads Products in direct infringement of at least one claim of the '556 Patent. See Attachment 7.

273. The documentation which Samsung provides includes, at least: (i) the product information for the Accused Samsung Pay Products set forth on Samsung's websites which includes manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Pay Products; (ii) the specific product documentation which are attached as Exhibits to this Complaint, or which are otherwise referenced in this Complaint; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form to its customers for the Accused Samsung Pay Products (referred to herein as "Samsung Ads Documentation").

274. The Samsung Ads Documentation instruct users how to use the Accused Samsung Ads Products to display advertisements using a non-browser bases application stored on the mobile device. See, https://www.samsung.com/us/account/privacy-policy/: "Our Samsung Ads service is designed to serve advertisements that are customized to users' interests on Samsung and third-party devices, websites and apps. Samsung Ads may deliver customized ads based on your demographic characteristics, preferences, choices, and interests by collecting certain information about your online activities as specified in this Privacy Policy. Samsung Ads application utilizes a graphical



Glaser Weil

user interface including a graphical icon that is preinstalled or downloaded on to a mobile device having a display, processor, and wireless radio interface.

275. The Samsung Ads Documentation further instructs users how to use the Accused Samsung Ads Products cause an end user to receive an advertisement from a remote management server which selects the advertisement in response to user input from the Samsung Ads app. See, https://www.samsung.com/us/account/privacy-policy/.

276. The Samsung Ads Documentation instructs users how the inform can store information received by the Accused Samsung Ads Products at the remote management server. See, https://www.samsung.com/us/account/privacy-policy/.

277. The Samsung Ads Documentation further instructs users how to display an advertisement screen or area of the application. See, Samsung Shop Mobile app.

278. The Samsung Ads Documentation is provided to users of the Accused Samsung Ads Products to assist them in using the Accused Samsung Ads Products in a manner that directly infringes at least one claim of the ’556 Patent.

279. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Ads Products in a manner that infringes at least one claim of the ’556 Patent.

280. When Samsung performed the acts of inducement outlined in the proceeding paragraphs, Samsung was aware of the ‘556 Patent, and knew (or was willfully blind) that its customers’ normal use of the Accused Samsung Ads Products would infringe at least one claim of the ‘556 Patent.

281. On information and belief, when Samsung sold and instructed end users on the use of the Accused Samsung Ads Products in the United States, including providing technical support, or other active assistance to users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the ’556 Patent.

282. Therefore, Samsung has unlawfully induced infringement of the ’556 Patent, in violation of 35 U.S.C. § 271(b).

///

**COUNTERCLAIM COUNT XXI**

**(Contributory Infringement of U.S. Patent No. 10,339,556)**

283. Blaze repeats incorporates by reference the allegations in Paragraphs 1 through 267 of its Counterclaims above as if fully set forth herein

284. Samsung has committed contributory infringement of at least one claim of the ’556 Patent in violation of 35 U.S.C. § 271(c).

285. Samsung has committed contributory infringement by selling, offering to sell and/or importing into the United States the Accused Samsung Ads Products. As shown in Attachment 7 and Paragraphs 259 through 269 above, Paragraphs 245-254, supra, the Accused Samsung Ads Products are used to display ads on, and serving ads to, non-browser based apps based upon collected data relating to consumer viewership preferences and connected device usage that literally meets all element of at least one claim of the ’556 Patent.

286. The delivery of advertisements based upon certain targeting parameters in response to user input from a non-browser base application stored on a mobile device as done by the Accused Samsung Ads Products are a material part of the claims of the ’556 Patent and thus the Accused Samsung Ads Products perform the key inventive functions of the ’556 Patent.

287. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Ads Products were especially made or adapted for use in a system that infringes the claims of the ’556 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Ads Products in the United States, knowing users would use those products in the United States, and knowing that such use would result in direct infringement of at least one claim of the ’556 Patent.

288. The components of the Accused Samsung Pay Ads Products are configured to practice elements of at least one claim of the ’556 Patent, are not staple articles of commerce, and—as configured—are not capable of substantial non-infringing use.

289. Accordingly, Defendants have unlawfully contributed to infringement of the ’556 Patent, in violation of 35 U.S.C. § 271(c).

///



Glaser Weil

**COUNTERCLAIM COUNT XXII**

**(Direct Infringement of U.S. Patent No. 9,996,849)**

290. Blaze incorporates by reference the allegations in Paragraphs 1 through 289 of its Counterclaims above as if fully set forth herein.

291. Attachment 8 hereto provides an element-by-element analysis showing how the Accused Samsung Ads Products literally infringe at least one claim of the ’849 Patent. Samsung has directly infringed the ’849 Patent by importing into the United States, offering for sale, selling, and using the Accused Samsung Ads Products.

292. The Accused Samsung Ads Products collect data on consumer viewership preferences and connected device usage and literally infringe at least one claim of the ’849 Patent.

293. The Accused Samsung Ads Products are non-browser bases application that delivers advertisements to a mobile device. See, https://www.samsung.com/us/account/privacy-policy/: “Our Samsung Ads service is designed to serve advertisements that are customized to users’ interests on Samsung and third-party devices, websites and apps. Samsung Ads may deliver customized ads based on your demographic characteristics, preferences, choices and interests by collecting certain information about your online activities as specified in this Privacy Policy.” See also https://www.samsung.com/us/account/privacy-policy/samsungads/.

294. The Accused Samsung Ads Products receive an advertisement from a remote management server which maintains the advertisement. See, https://www.samsung.com/us/account/privacy-policy/.

295. The remote server selects an advertisement based on one or more targeting parameters in response to user input using the Samsung Ads app. See, https://www.samsung.com/us/account/privacy-policy/: “We may use the categories of personal information listed above for certain business or commercial purposes, as described in this list: performing services, including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services, providing analytics services, or providing similar services . . .”



Glaser Weil

296. The advertisement is sent from the remote management server to the Samsung Ads app. which displays the advertisement within a specific non-browser-based application generated screen which corresponds to the specific screen or area of the non-browser-based app.

297. As alleged in Paragraph 30 of the Complaint, on November 25, 2020, Blaze's representative, Synergy IP Corp., sent a letter to Samsung which is attached to the Complaint as Exhibit 9.

298. As further alleged in Paragraph 31 of the Complaint, the November 25, 2020, letter was accompanied by four claim charts including a claim chart containing an element-by-element comparison of Samsung Pay app as used in the Samsung Galaxy S20 mobile phone to Claim 14 of the '849 Patent. A copy of the claim chart is attached to Exhibit 12 of the Complaint.

299. Though the '849 Patent claim chart contained an element-by-element comparison, the only basis for Samsung's infringement denial is Samsung's contention that its products to not contain a "non-browser-based application. Complaint at ¶ 57.

300. Samsung's non-infringement position is meritless. There was no disavowal of "apps" from the plain and ordinary meaning of "non-browser based application." The portion of the file history Samsung relies on merely distinguished "apps" from web-based "browsers" (e.g., Internet Explorer, Google Chrome, and Safari) because a prior art reference disclosed the use of Browsers but not apps. Also, the specification states in offline mode the non-browser-based application is open and while open continues to display the digital artifact even if the mobile device loses connection with a wireless network.

301. Blaze incorporates Paragraph 42 through 48 above which demonstrate that Samsung's non-infringement contentions lack merit. In addition, the '849 Specification includes additional examples of non-browser based applications with navigation buttons. See Attachment 10. The allegations herein as to why Samsung's non-infringement contentions lack merit set forth above in Paragraphs 42 through 48 are equally applicable to Samsung's non-infringement positions relating to the '771 Patent. Samsung's non-infringement position is also contrary to the '849 Patent's claims. Claims 3 and 15 of the '894 patent recite in part, "further wherein the advertisement is cached on the mobile device and is accessible by the non-browser based application





Glaser Weil

when there is not a wireless network connection." Claim 9 and 13 of the '894 patent recite in part, "wherein the non-browser based application is operable when it is not connected to a wireless network." See Attachment 8.

302. Thus, Samsung's reading of the '007 Patent's file history is incorrect.

303. By not denying Blazes' contention in its claim chart that every other element of Claim 1 is meet by the Accused Samsung Ads Products, Samsung admits that each and every other such limitation is literally meet.

304. The Accused Samsung Ads Products literally infringe at least Claim 1 of the '849 Patent.

## COUNTERCLAIM COUNT XXIII

## (Induced Infringement of U.S. Patent No. 9,996,849)

305. Blaze incorporates by reference the allegations in Paragraphs 1 through 304 of its Counterclaims above as if fully set forth herein

306. Samsung actively induced infringement of others in the United States by selling the Accused Samsung Ads Products to one or more customers in the U.S., along with documentation and instructions, instructing how to use the Accused Samsung Ads Products to collect data on consumer viewership preferences and connected device usage through using the Accused Samsung Ads Products in direct infringement of at least one claim of the '849 Patent. See Attachment 8.

307. The documentation which Samsung provides includes, at least: (i) the product information for the Accused Samsung Pay Products set forth on Samsung's websites which includes manuals, photographs, charts, illustrations, and other technical documentation for the Accused Samsung Pay Products; (ii) the specific product documentation which are attached as Exhibits to this Complaint, or which are otherwise referenced in this Complaint; and (iii) the other product documentation which, on information and belief, Samsung provides in electronic and/or paper form to its customers for the Accused Samsung Pay Products (referred to herein as "Samsung Ads Documentation").

308. The Samsung Ads Documentation instruct users how to use the Accused Samsung Ads Products to display advertisements using a non-browser bases application stored on the mobile



Glaser Weil

device. See, https://www.samsung.com/us/account/privacy-policy/: "Our Samsung Ads service is designed to serve advertisements that are customized to users' interests on Samsung and third-party devices, websites and apps. Samsung Ads may deliver customized ads based on your demographic characteristics, preferences, choices, and interests by collecting certain information about your online activities as specified in this Privacy Policy. Samsung Ads application utilizes a graphical user interface including a graphical icon that is preinstalled or downloaded on to a mobile device having a display, processor, and wireless radio interface.

309. The Samsung Ads Documentation further instructs users how to use the Accused Samsung Ads Products cause an end user to receive an advertisement from a remote management server which selects the advertisement in response to user input from the Samsung Ads app. See, https://www.samsung.com/us/account/privacy-policy/.

310. The Samsung Ads Documentation instructs users how the inform can store information received by the Accused Samsung Ads Products at the remote management server. See, https://www.samsung.com/us/account/privacy-policy/.

311. The Samsung Ads Documentation further instructs users how to display an advertisement screen or area of the application. See, Samsung Shop Mobile app.

312. The Samsung Ads Documentation is provided to users of the Accused Samsung Ads Products to assist them in using the Accused Samsung Ads Products in a manner that directly infringes at least one claim of the '849 Patent.

313. On information and belief, Samsung provides direct support to its customers in setting up, installing, and using the Accused Samsung Ads Products in a manner that infringes at least one claim of the '849 Patent.

314. When Samsung performed the acts of inducement outlined in the proceeding paragraphs, Samsung was aware of the '849 Patent, and knew (or was willfully blind) that its customers' normal use of the Accused Samsung Ads Products would infringe at least one claim of the '849 Patent.

315. On information and belief, when Samsung sold and instructed end users on the use of the Accused Samsung Ads Products in the United States, including providing technical support, or





Glaser Weil

other active assistance to users, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the ’849 Patent.

316. Therefore, Samsung has unlawfully induced infringement of the ’849 Patent, in violation of 35 U.S.C. § 271(b).

**COUNTERCLAIM COUNT XXIV**

**(Contributory Infringement of U.S. Patent No. 9,996,849)**

317. Blaze incorporates by reference the allegations in Paragraphs 1 through 316 of its Counterclaims above as if fully set forth herein

318. Samsung has committed contributory infringement of at least one claim of the ’849 Patent in violation of 35 U.S.C. § 271(c).

319. Samsung has committed contributory infringement by selling, offering to sell and/or importing into the United States the Accused Samsung Ads Products. As shown in Attachment 8 and Paragraphs 291 through 303 above, the Accused Samsung Ads Products are used to display ads on, and serving ads to, non-browser based apps based upon collected data relating to consumer viewership preferences and connected device usage that literally meets all element of at least one claim of the ’849 Patent.

320. The delivery of advertisements based upon certain targeting parameters in response to user input from a non-browser base application stored on a mobile device as done by the Accused Samsung Ads Products are a material part of the claims of the ’849 Patent and thus the Accused Samsung Ads Products perform the key inventive functions of the ’849 Patent.

321. During the Relevant Time Period, Samsung had actual knowledge that the components and function of the components of the Accused Samsung Ads Products were especially made or adapted for use in a system that infringes the claims of the ’849 Patent. Despite that knowledge, Samsung actively sold the Accused Samsung Ads Products in the United States, knowing users would use those products in the United States, and knowing that such use would result in direct infringement of at least one claim of the ’849 Patent.

322. The components of the Accused Samsung Pay Ads Products are configured to practice elements of at least one claim of the ’849 Patent, are not staple articles of commerce, and—







Glaser Weil

as configured—are not capable of substantial non-infringing use.

323. Accordingly, Defendants have unlawfully contributed to infringement of the ’849 Patent, in violation of 35 U.S.C. § 271(c).

**REMEDIES, ENHANCED DAMAGES, EXCEPTIONAL CASE**

324. Blaze incorporates by reference the allegations in Paragraphs 1 through 323 of its Counterclaims above as if fully set forth herein

325. Samsung’s direct infringement, induced infringement and contributory infringement of the Patents-n-Suit has caused, and will continue to cause, significant damage to Blaze. As a result, Blaze is entitled to an award of damages adequate to compensate it for Samsung’s infringement, but in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284. Blaze is also entitled to recover prejudgment interest, post-judgment interest, and costs.

326. For at least the reasons set forth in Paragraphs 39-48 supra, Samsung knew (or was willfully blind) that the Accused Samsung Pay Products, Accused Samsung Galaxy Store Products and Accused Samsung Ads Products are configured and used in their normal and intended use in a manner that infringes at least on claim of each of the Patents-in-Suit. Despite this known, objectively high likelihood that its actions constituted direct and indirect infringement, Samsung continued to directly and indirectly infringe the Patents-in-Suit up to the present time. Accordingly, Samsung’s infringement has been (and is) willful.

327. In addition to being willful, Samsung’s conduct has been egregious. As set forth herein, despite knowing of (or being willfully blind to) its infringement, Samsung continued to infringe, on a large scale, up to the present. Samsung is a large company, with over hundreds of millions of dollars in annual revenue. Meanwhile, Blaze is a small company, owned by an individual inventor. On information and belief, Samsung persisted in its willful infringement, at least in part, because it believed it could use its superior resources to overwhelm Blaze in litigation. If proven, this would constitute “egregious” conduct, warranting enhanced damages.

328. For at least the foregoing reasons, Samsung’s conduct has been willful and egregious. Accordingly, under 35 U.S.C. § 284, the Court should enhance Blaze’s damages in this case by up to three times the amount found or assessed.



Glaser Weil

329. For at least the foregoing reasons, this case is an "exceptional" case within the meaning of 35 U.S.C. § 285. Accordingly, Blaze is entitled to an award of attorneys' fees and costs, and the Court should award such fees and costs.

**BLAZE'S PRAYER FOR RELIEF**

WHEREFORE, Blaze requests the Court enter a judgment in Blazes favor and grant the following relief:

A. That all relief requested by Samsung in its Complaint be denied;

B. That this Court enter judgment finding that the Accused Samsung Pay Products, Accused Samsung Galaxy Store Products, and the Accused Samsung Ads Products infringe the asserted claims of the Patents-in-Suit;

C. That Blaze be awarded damages pursuant to 35 U.S.C. § 284;

D. That Samsung's infringement was willful and egregious and that this case is therefore "exceptional" under 35 U.S.C. § 285 and award Blaze its attorneys' fees and costs;

E. That the Court increase Blaze's damages up to three time the amount assessed under 35 U.S.C. §284;

F. The entry of temporary and permanent injunctions prohibiting further acts of direct or indirect infringement of the Patents-in-Suit by Samsung and those acting in concert with Samsung; and.

G. That Blaze be awarded all other relief, both legal and equitable, to which if may be justly entitled.

///

///

///

///

///

///

///

///



Glaser Weil

**JURY TRIAL DEMAND**

Pursuant to Federal Rules of Civil Procedure 38, Blaze hereby demands a trial by jury on all issues and claims so triable.

DATED: September 13, 2021

Respectfully submitted,

GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP

By: */s/Lawrence Hadley*
LAWRENCE M. HADLEY
Attorneys for Defendants
Blaze Mobile, Inc., and Michelle Fisher