1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAWRENCE M. HADLEY - State Bar No. 157728
lhadley@glaserweil.com
JAN WEIR - State Bar No. 106652
jweir@glaserweil.com
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Defendants
Blaze Mobile, Inc., and Michelle Fisher

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

SAMSUNG ELECTRONICS CO., LTD. and
SAMSUNG ELECTRONICS AMERICA, INC.,

               Plaintiff,

v.

BLAZE MOBILE, INC., AND MICHELLE
FISHER,

               Defendants.

CASE NO.: 21-cv-02989-EJD

HON. EDWARD J. DAVILA

**BRIEF OF BLAZE MOBILE, INC.
AND MICHELLE FISHER IN OPPOSITION
TO SAMSUNG'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

Hearing Date:  January 13, 2022
Time: 9:00 a.m.
Place  280 South First Street, San Jose
Judge: Hon. Edward J. Davila
Courtroom: 4

*Glaser Weil*

1

2

## **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   ISSUES TO BE DECIDED ................................................................................... 2

III.  BACKGROUND ................................................................................................... 3

    A.    The Parties' Pleadings ................................................................................ 3

    B.    Samsung's IPRs ......................................................................................... 5

IV.   LEGAL STANDARDS ......................................................................................... 6

    A.    Presumption of Patent Eligibility .............................................................. 6

    B.    Judgment on the Pleadings Under Rule 12(c) ........................................... 6

    C.    Patent Eligibility Under 35 U.S.C. § 101 .................................................. 7

V.    ARGUMENT ........................................................................................................ 8

    A.    Samsung's Motion Should Be Denied Because Claim Construction and
          Factual Disputes Preclude Dismissal as a Matter of Law ......................... 9

    B.    The Blaze's '493, '771 and '575 Patents Claim Patent-Eligible Subject Matter .. 10

          1.    The '771, '493, and '575 Patents Are Directed to a Technical Solution
               to a Technical Problem, Not an Abstract Idea............................................ 10

          2.    The '771, '493, and '575 Patents Recite an Inventive Concept ............... 14

    C.    Blaze's '259 and '007 Patents Claim Patent-Eligible Subject Matter ................. 16

          1.    The '259 and '007 Patents Are Directed to a Technical Solution to a
               Technical Problem, Not an Abstract Idea ................................................. 16

          2.    The '259 and '007 Patents Recite an Inventive Concept ......................... 18

    D.    The '849, '556 and '612 Patents Claim Patent Eligible Subject Matter .............. 20

          1.    The '849, '556, '612 Patents Are Directed to a Technical Solution to a
               Technical Problem, Not an Abstract Idea ................................................. 21

          2.    The'849, '556, '612 Patents Recite an Inventive Concept....................... 23

V.    CONCLUSION .................................................................................................. 25

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ........................................................................... 22

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ......................................................................................... 8

*Ancora Technologies, Inc. v. HTC America, Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018) ........................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 6, 7

*Association for L.A. Deputy Sheriffs v. County of L.A.*,
    648 F.3d 986 (9th Cir.2011) ................................................................................. 7

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ........................................................................... 9

*Barnett S. Corp. v. Nat'l Tr. Ins. Co.*,
    No. CV 110-74, 2011 WL 611843 (S.D. Ga. Feb. 15, 2011) ........................... 10

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC.*,
    827 F.3d 1236 (Fed. Cir. 2018) ........................................................................... 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 6

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ....................................................................... 6, 10

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ..................................................................... 22

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019) ........................................................................... 6

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ........................................................................... 22

*DDR Holdings, LLC v. Hotels.com,. L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................... 13, 24

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ........................................................................................ 7, 22

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................................ 2, 9, 10, 16, 20

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
    132 F.3d 526 (9th Cir. 1997) ............................................................................... 6

ii

Glaser Weil

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  2016 WL 7732542, at *1 (N.D. Cal. July 25, 2016) ........................................ 5

*Free Stream Media Corp. v. Alphonso Inc.*,
  996 F.3d 1355 (Fed. Cir. 2021) .......................................................................... 22

*Harris v. County of Orange*,
  682 F.3d 1126 (9th Cir. 2012) ............................................................................ 6

*In re Morsa*,
  809 F. App'x 913 (Fed. Cir. 2020) ..................................................................... 22

*Innovation Scis., LLC v. Amazon.com, Inc.*,
  778 F. App'x 859 (Fed. Cir. 2019) ..................................................................... 13

*Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*
  132 S. Ct. 1289 (2012) ......................................................................................... 8

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011) ............................................................................................... 6

*Open Text Corporation v. Hyland Software, Inc.*,
  2021 WL 3558788 *3 (C.D. Cal. 2021) ............................................................... 9

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
  2020 WL 3966973 *6 (Fed. Cir. July 14, 2020) ........................................... 8, 12

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013) ............................................................................ 7

*SRI International, Inc. v. Cisco Systems, Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1108 (2020) ............ 12

*StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*,
  2015 WL 518852 * 4 (M.D. Fl. 2015) .................................................................. 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ......................................................................... 13

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
  957 F.3d 1303 (Fed. Cir. 2020) ........................................................................... 8

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ..................................................................... 13, 14

**FEDERAL STATUTES**

35 U.S. C. § 100(b) ................................................................................................. 12
35 U.S. C., § 100(b) ................................................................................................ 17
35 U.S.C. § 100(b) .............................................................................................. 7, 21
35 U.S.C. § 103 .................................................................................................... 5, 6

**FEDERAL RULES**

Fed. R. Evid. 201 .................................................................................................... 5

Glaser Weil

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.    INTRODUCTION**

Michelle Fisher is an innovator and the CEO and Founder of Blaze Mobile (originally called Mobile Candy Dish), a minority-owned company that Ms. Fisher founded in 2005 in Berkeley, California, to develop and commercialize her inventions for improving mobile commerce in health care, banking, and advertising. Unlike prior innovations in mobile commerce, Ms. Fisher's inventions use a non-web browser application rather than a conventional pre-installed web browser. Ms. Fisher also developed a near-field communication ("NFC") application that could operate within an NFC device's secure element, complete with its own separate memory, processor and NFC transceiver, to communicate codes—as opposed to conventional credit and loyalty card data —to a remote terminal. By 2007, Blaze had developed the Blaze Mobile Wallet—the world's first integrated, consumer-centric mobile application that could be used to make NFC contactless purchases, pay bills, manage money, buy tickets, and check account balances—effectively transforming handheld devices into a mobile commerce wallet to be used wherever and whenever a customer desired, with or without internet access, and all in a secure environment. Ms. Fisher's nonconventional approach was listed in "CNN Money" as one of the top "9 smart new ways to manage your $$," with CNN reporting that 100,000 customers were using Blaze's "weird" new idea an average of nine times a day.[1]

Believing her developments greatly improved mobile device usefulness and technology, Ms. Fisher applied for patent protection. Without funds to pay for lawyers, Ms. Fisher, educated at U.C. Berkeley and Stanford as an engineer, not a lawyer, learned Patent Office procedures and began drafting and prosecuting patent applications herself *pro se*. Her work paid off: Ms. Fisher has been awarded over 60 U.S. Patents on her ideas, some as recently as 2021. All patents have been assigned to Blaze Mobile. The Blaze portfolio has been recognized for innovation, being named among the top 10 NFC patent portfolios in 2016.[2]

Many mobile device makers realized that Ms. Fisher's approach of using non-browser based and NFC applications would enhance the sale of their devices and expressed an interest in licensing

---

[1] https://money.cnn.com/galleries/2010/pf/1010/gallery.personal_finance_startups/8.html.

[2] https://www.linkedin.com/pulse/nfc-patents-smartphone-mobile-payment-data-2q-2016-alex-g-/

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Ms. Fisher's portfolio, including Samsung. Despite years of discussions, an NDA in which Ms. Fisher and Samsung promised not to sue, and absolutely no actual or threatened litigation, Samsung decided to seek judicial elimination of Ms. Fisher, Blaze Mobile, and her portfolio from the business. Samsung sued Ms. Fisher and Blaze for declaratory relief on a Sunday, filed eight IPRs, and now seeks to invalidate the same eight patents as ineligible under 35 U.S.C. § 101.

Samsung's multi-prong attack, however, comes with irreconcilable inconsistencies. Samsung's DJ Complaint acknowledges the inventions' innovative features recited in the claims as the basis of Samsung's non-infringement defense. Its IPRs, which must address each limitation of the claimed inventions as part of Samsung's invalidity case, similarly acknowledge these same important claimed features. But now, in arguing that Ms. Fisher's patents should be declared ineligible on the pleadings, Samsung ignores these very same features while it overly abstracts the claimed inventions. For example, Samsung's DJ Complaint argues that it does not infringe the NFC transaction patents because its products lack both a "non-browser based application" and a "secure element application configured to use the NFC protocol" which is executed "in response to a detection of a near field communication inductive signal from an NFC terminal configured to use the NFC protocol." (Dkt. No. 1, ¶¶ 56-57, 63-64, 70-71, 77-78, 84-86, and 92-93). Yet its § 101 motion describes the same patents in the broadest, most "abstract" terms possible: as merely "using a code to provide security for processing economic transactions over near-field communications ('NFC')." (Dkt. No. 47 at 11:45.) Having characterized the patent claims one way in its DJ Complaint for purposes of non-infringement (and in its IPRs) Samsung cannot contradict its pleading on a Rule 12(c) motion by "describing the claims at such a high level of abstraction and untethered from the language of the claims[,which] all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

Ms. Fisher's patents claim a specific ordered combination that provides technical advances in the art, thus satisfying § 101. Samsung's motion for judgment on the pleadings should be denied.

## II.     ISSUES TO BE DECIDED

Whether Samsung has met its burden on its motion for judgment on the pleadings of establishing patent ineligibility pursuant to 35 U.S.C. § 101 by clear and convincing evidence?

BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS

III.     **BACKGROUND**

A.     **The Parties' Pleadings**

Over a five-year period beginning in 2016, Blaze and Samsung engaged in extensive investment and licensing discussions regarding Blaze's patent portfolio. Under two separate NDAs, the parties agreed that those discussions could not be used as a basis to file a lawsuit for declaratory judgment of non-infringement. During the discussions, Blaze provided Samsung with detailed claim charts explaining how Samsung's mobile devices incorporating Samsung Pay, Samsung Ads, and Samsung Galaxy Store literally met each and every limitation of at least one claim of each Blaze patent. *See* Dkt. Nos. 1-10 through 1-13. Despite years of negotiations without a threat of litigation, on April 25, 2021, Samsung terminated the negotiations and filed this action for declaratory judgment (Dkt. No. 1, the "DJ Complaint").

Samsung's DJ Complaint is based on specific allegations that its products do not meet the detailed technical limitations of Ms. Fisher's claims. In so doing, Samsung admits—particularly for purposes of this motion for judgment on the pleadings--that the claims are not directed to broad "abstract ideas"—rather, they are directed to specific technical solutions to specific technical problems. For instance:

- ***The "Samsung Ads" products***:  Samsung alleges that it does not infringe U.S. Pat. Nos. 9,996,849, 10,339,556, and 10,621,612,  because:

> 56. Claims 1 and 12 are the only independent claims of the '849 Patent. These claims each require a "non-browser based application."

> 57. Samsung Ads products do not have a "non-browser based application" at least because they have browser-based elements as identified by Michelle Fisher during prosecution of the '007 Patent. Further, client-side applications that display advertisements served by Samsung Ads must be connected to a server, which Michelle Fisher argued during prosecution of the '659 Patent is inconsistent with the requirements of a "non-browser based application."

(Dkt. No. 1, ¶¶ 56, 57, 63, 64, 70 and 71.)

- ***The "Samsung Galaxy Store" and "Samsung Pay" products***:  Samsung alleges it does not infringe U.S. Pat. Nos. 10,699,259, 10,825,007, 9,378,493, 9,652,771, and 10,565,575, because:

3

77. Claims 1, 7 and 13 are the only independent claims of the '259 Patent. These claims each require a "non-browser based application."

78. Samsung Galaxy Store products do not have a "non-browser based application" at least because they have browser-based elements as identified by Michelle Fisher during prosecution of the '007 Patent. Further, client-side applications that display advertisements served by Samsung Ads must be connected to a server, which Michelle Fisher argued during prosecution of the '659 Patent is inconsistent with the requirements of a "non-browser based application."

84. Claims 1 and 14 are the only independent claims of the '575 Patent. These claims each require a "secure element application configured to use the NFC protocol." The claims further require executing a secure element application "in response to a detection of a near field communication inductive signal from an NFC terminal configured to use the NFC protocol."

85. Samsung Pay products do not have a "secure element application configured to use the NFC protocol" at least because they do not use the NFC protocol. Nor do Samsung Pay products execute an application "in response to a detection of a near field communication inductive signal from an NFC terminal configured to use the NFC protocol." Instead, Samsung Pay products execute an application in response to user authentication.

86. Claims 1 and 14 further require a "non-browser based application." Samsung Pay products do not have a "non-browser based application" at least because they have browser-based elements as identified by Michelle Fisher during prosecution of the '007 Patent.

(Dkt. No. 1, ¶¶ 77-78, 84-86; ¶¶ 48-50, 92-93 (making the same allegations).)

Blaze Mobile and Ms. Fisher filed an Answer, Affirmative Defenses, and Counterclaims for Patent Infringement on September 13, 2021. (Dkt. No. 30, "Blaze's Answer.") While Blaze's Answer disputed that Samsung's products lacked the features addressed in Samsung's DJ Complaint, Blaze did not dispute that the inventions recited those features as necessary limitations in the claims:

20.    The '493, '771, and '575 patents relate to security improvements in NFC enabled mobile devices, NFC point-of-sale terminals, and servers for processing an NFC payment using an identification code transmitted from a secure element embedded in the NFC enabled mobile device to the server and processing the payment at the server using the identification code.

21.    The '259 and '007 patents relate to security improvements in non-browser mobile applications running on a mobile device, management server, and transaction server using an identification code transmitted from a non-browser-based application running on the mobile device.

22.    The '849, '556, and '612 patents relate to improvements in the reliability and performance of non-browser mobile application running on a mobile device for delivering advertisements, for example, a coupon (i.e., advertisement) if the mobile device is offline and loses connection with a wireless network.

4

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1    (Dkt. No. 30, at 15.) Samsung's Answer to the Counterclaims denied these allegations, placing the

2    claims' limitations and scope in dispute. (Dkt. No. 38.)

3    **B.    Samsung's IPRs**

4    On September 24, 2021, Samsung filed a Petition for Inter Partes Review ("IPR") of the '493

5    patent in the United States Patent Office. (Dkt. No. 38, Ex. 1.) Samsung's Petition makes the following

6    allegation:[3]

7    And the Patent Owner's purported novelty based on the use of "secure components"—
       i.e., a secure element on a mobile device that has a secure memory and processor, a
8       secure element application—and NFC . . .

9    (*Id*. at 1.) Samsung's '493 IPR Petition contends patent invalidity under 35 U.S.C. § 103 based upon

10   a combination of two sets of two patents. (*Id.* at 5.) Samsung does not contend that any one reference

11   anticipates the claims by disclosing all of the limitations of the claims that are the subject of the IPR.

12   (*Id.*) Samsung made the similar arguments in its petitions challenging the '771 and '575 patents. (Dkt.

13   No. 38, Ex. 5 at 1, 6 and Ex. 7, 1 5.)

14   On September 10, 2021, Samsung filed an IPR Petition for the '259 patent and made the

15   following allegation:

16   [T[he Patentee nevertheless claims to have invented a transaction scheme that includes
       a mobile device used by a purchaser, a point of sale device (such as a merchant
17      terminal), a remote management server that manages the transaction, and a transaction
        server that provides a transaction verification from a financial entity (e.g., a bank). . .
18      .[T]he Patentee contends that the purported novelty of the claims is that the mobile
        devices use a 'non-browser based application' to conduct the only payment
19      transactions . . ."

20   (Dkt. No. 38, Ex. 6 at 1.) Samsung's '259 IPR Petition contends patent invalidity under 35 U.S.C. §

21   103 based upon a combination of two sets of two patents. (*Id.* at 5.) Samsung does not contend that

22   any one reference anticipates the claims by disclosing all of the limitations of the claims that are the

23   subject of the IPR.  (*Id.*) Samsung made similar arguments in its petitions challenging the '007 patent

24   (Dkt. No. 38, Ex. 8 at 1, 6.)

25

26

27   [3] Blaze requests that the Court take judicial notice of Samsung's IPR petitions. *Finjan, Inc. v. Blue*

28   *Coat Sys., Inc.*, 2016 WL 7732542, at *1 (N.D. Cal. July 25, 2016); Fed. R. Evid. 201.

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1    On September 3, 2021, Samsung filed an IPR Petition for the '849 Patent and made the

2  following allegation:

3       According to Patentee, the purported novelty of the claims is that (1) the ad is selected
        based on the user's purchase-related history; and (2) the ad is displayed in a "non-
4       browser based application" on the mobile device.

5  (Dkt. No. 38, Ex. 2 at 1.) Samsung's '849 IPR Petition contends patent invalidity under 35 U.S.C. §

6  103 based upon a combination of multiple patents. (*Id.* at 5.) Samsung does not contend that any one

7  reference anticipates the claims by disclosing all of the limitations of the claims that are the subject

8  of the IPR. (*Id.*)  Samsung made the same argument in its petitions challenging the '556 and '612

9  patents. (Dkt. No. 38, Ex. 3 at 1, 6, Ex. 4 at 1, 5.)

10  **IV.    LEGAL STANDARDS**

11      **A.    Presumption of Patent Eligibility**

12      "[P]atents granted by the Patent and Trademark Office are presumptively valid." *Cellspin Soft,*

13  *Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319-20 (Fed. Cir. 2019) (*citing Microsoft Corp. v. i4i Ltd. P'ship*,

14  564 U.S. 91, 100 (2011)). As a corollary, issued patents are presumed to be patent-eligible under 35

15  U.S.C. § 101. *Cellspin*, 927 F.3d at 1319. To overcome this presumption of eligibility, a patent

16  challenger must establish that the challenged claims are not patent-eligible "as a matter of law," and

17  most prove "[a]ny fact . . . pertinent to the in[eligibility] conclusion  . . .  by clear and convincing

18  evidence." *Id.* (*quoting Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)).

19      **B.    Judgment on the Pleadings Under Rule 12(c)**

20      A Rule 12(c) motion for judgment on the pleadings is "functionally equivalent" to a motion

21  to dismiss under Rule 12(b)(6), and the same legal standard applies to both motions. *Harris v. County*

22  *of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). Judgment on the pleadings is appropriate only "when

23  the moving party clearly establishes on the face of the pleadings that no material issue of fact remains

24  to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp.*

25  *Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (internal quotation marks and citation

26  omitted). Judgment on the pleadings is not proper where a plaintiff has alleged "sufficient factual

27  matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

28  U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

6

Glaser Weil

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In ruling on the motion, the Court must accept as true all well-pleaded factual allegations in the non-movant's pleadings and must draw all reasonable inferences in the non- movant's favor. *See Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013); *Association for L.A. Deputy Sheriffs v. County of L.A*., 648 F.3d 986, 991 (9th Cir. 2011).

### C.      Patent Eligibility Under 35 U.S.C. § 101

35 U.S.C. § 101 defines patent-eligible subject matter to include "any new and useful process, machine ... or any new and useful improvement thereof." 35 U.S.C. § 100(b) further defines "process" as including "a new use of a known process, machine, manufacture, composition of matter, or material." Under these provisions, the Supreme Court has made clear that "a new combination of steps in a process may be patentable ***even though all the constituents of the combination were well known and in common use*** before the combination was made." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981) (emphasis added). Thus, at the threshold, it is not enough to argue, as Samsung does, that the claimed invention consists of a new use of known machines, or a new combination of known steps. *Id*. at 193, n. 15 ("that one or more of the steps in respondents' process may not, in isolation, be novel or independently eligible for patent protection is irrelevant to the question of whether the claims as a whole recite [patent-eligible] subject matter."). Instead, each claim must be considered for eligibility as an ordered combination:

> In determining the eligibility of respondents' claimed process for patent protection under § 101, their claims must be considered as a whole. It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made.

*Id.* at 188-89. By failing to address the ordered combinations claimed in Blaze's patents as a whole, Samsung's motion for judgment on the pleadings fails at inception.

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

The Supreme Court's two-step test is applied to determine patent eligibility under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014); *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc*. 132 S. Ct. 1289 (2012). At step one, the court determines "whether the claims at issue are directed to [a] patent-ineligible concept:"  i.e., a "law of nature, natural phenomenon, or abstract idea." *Alice*, 134 S. Ct. at 2355. If not, the analysis ends, and the claims are patent-eligible. *Id*. At this step, it is important to exercise caution because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id*. at 2354. "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id*. Rather, "applications" of abstract concepts "to a new and useful end . . . remain eligible for patent protection." *Id*.  Rather than seeing if an invention can be reduced to "abstract concept," this step looks to whether the claims recite "building blocks of human ingenuity," such as "fundamental economic practice[s]," in a way that potentially places the "building block" at risk of preemption. *Id*. at 2350, 2354. Technological improvements, by definition, do not recite patent-ineligible building blocks. *Id*. at 2359; *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306-07 (Fed. Cir. 2020) ("In cases involving software innovations, [the § 101] inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool.") (internal citation omitted).

If the claims are "directed to" an abstract idea, then the inquiry proceeds to the second step of the *Alice* framework. In step two, courts consider whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application" of the abstract idea. *Alice*, 134 S. Ct. at 2355 (quotation omitted). To do so, courts look to both the claim as a whole, and to the individual claim elements, to determine whether the claims contain "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. (*quoting Mayo*, 132 S. Ct. at 1294) (alteration in original); *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1308 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021). However, because virtually all claims can be reduced to an abstract idea, courts must avoid summarizing claims at a "high level of abstraction and untethered from the language

8

1    of the claims." *Enfish*, 822 F.3d at 1337.

2    **V.    ARGUMENT**

3        **A.    Samsung's Motion Should Be Denied Because Claim Construction and Factual**

4            **Disputes Preclude Dismissal as a Matter of Law**

5        Samsung brings its motion before the Court has even considered, let alone decided, claim

6    construction. Although "claim construction is not an inviolable prerequisite to a validity determination

7    under § 101 …  it will ordinarily be desirable—and often necessary—to resolve claim construction

8    disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full

9    understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life*

10   *Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). *See, e.g., StoneEagle Services,*

11   *Inc. v. Pay-Plus Solutions, Inc.*, 2015 WL 518852, at * 4 (M.D. Fla. 2015) (denying defendant's

12   motion to dismiss under § 101 as "premature" because, *inter alia*, it was brought before claim

13   construction, and "proper construction of the term 'stored-value card' is necessary prior to an

14   assessment of whether the claims … comprise a sufficiently inventive process"); *Open Text*

15   *Corporation v. Hyland Software, Inc.*, 2021 WL 3558788, at *3 (C.D. Cal. 2021) (denying Rule 12(c)

16   motion for judgment of ineligibility under § 101 as "premature" because "claim construction …for

17   the terms 'cache manager' and 'user space'" was necessary to analyze the eligibility issues).

18       In the present case, as is evident from the pleadings and from Samsung's motion, the parties

19   dispute the meaning of essential claim terms such as "non-browser based application," "secure

20   element," and "secure element application." The proper interpretation of those terms is necessary both

21   to develop a "full understanding of the basic character of the claimed invention," and to determine

22   "whether the claims . . . comprise a sufficiently inventive process" under step two. *StoneEagle*, 2015

23   WL 518852, at *4. Moreover, given Samsung's overly abstract characterization of the claimed

24   inventions, there is considerable dispute over how the claim limitations relate to each other to create

25   a specific "ordered combination." Resolving these disputes is essential to understanding the character

26   of the claimed inventions and determining patent eligibility. Thus, Samsung's motion is premature

27   and should be denied pending claim construction.

28       Further, Samsung's Motion raises genuine disputes of material fact, which are not suitable for

9

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Glaser Weil

1  resolution on the pleadings. *Barnett S. Corp. v. Nat'l Tr. Ins. Co.*, 2011 WL 611843 (S.D. Ga. Feb.

2  15, 2011). It is now black-letter law that "[t]he patent eligibility inquiry may contain underlying issues

3  of fact." *Berkheimer*, 881 F.3d at 1365. Specifically, "[t]he question of whether a claim element or

4  combination of elements is well-understood, routine and conventional to a skilled artisan in the

5  relevant field is a question of fact." *Id.* at 1368. Thus, when the parties dispute whether what is claimed

6  was "well-understood, routine and conventional" (part of the § 101 analysis), there are genuine

7  disputes of fact which preclude judgment on the pleadings. Here, Samsung's motion repeatedly argues

8  that the claims are patent ineligible because they merely recite what was "well-understood, routine

9  and conventional." (Dkt. No. 47 at 7:20-23, 13:20-21, and 15:7-10.) Blaze disputes Samsung's factual

10  contentions below and in its Answer and Counterclaims. Thus, there are issues of fact that preclude

11  judgment on the pleadings.

12  **B.      The Blaze's '493, '771 and '575 Patents Claim Patent-Eligible Subject Matter**

13  Blaze's '493, '771, and '575 patents relate to security improvements in NFC-enabled mobile

14  devices, NFC point-of-sale terminals, and servers for processing NFC payments using an

15  identification code transmitted from a secure element in the NFC-enabled mobile device to the server.

16  (Dkt. No. 30, ¶ 20). Samsung truncates the '771, '493, and '575 patents into "using a code to provide

17  security for processing economic transactions over Near Field Communications ('NFC')." (Dkt. No.

18  47 at 11:4-5.) Samsung's characterization of the claimed invention is an impermissible, overly broad

19  abstraction. *Enfish*, 822 F.3d at 1337. Because Samsung has not addressed the claimed ordered

20  combination, it has not presented a *prima facie* case of patent ineligibility, and therefore has not met

21  its burden on its motion for judgment on the pleadings.

22          **1.      The '771, '493, and '575 Patents Are Directed to a Technical Solution to**

23                  **a Technical Problem, Not an Abstract Idea**

24  The differences between Samsung's impermissible, overly abstract characterization of the

25  inventions claimed in the '771, '493, and '575 patents, and what is actually claimed demonstrates that

26  Samsung's motion lacks merit. (See, Appendix A, Representative Claim 9.) As is clear from Claim 9,

27  the inventions claimed in the '771, '493, and '575 patents are far more specific than what Samsung

28  alleges. The claims as written include the use of a "secure element" which utilizes a "secure element

10

application" activated by a near field communication (NFC). Only upon execution of the secure element application is the transfer of an identification code to the NFC terminal possible. Then, only after receiving the identification code from the secure element, does the NFC terminal transfer the code to a management server, which in turn transmits the code to a transaction server to process the transaction using a payment method corresponding to the identification code. The use of the secure element and secure element application solves the problem of storing sensitive personal information (such as credit card information) on a mobile device that can be lost or stolen. (*See, e.g.*, Dkt. No. 1, Ex. 1, '493 Patent at 2:54-59: "The mobile application can [be] implemented [on] the mobile communication device 102 through a management server…."; 3:17-20:"In addition, data (corresponding to a payment transaction) can be stored on the remote server (e.g., remote server 106 (FIG. 1)) in a secure manner."; and 3:25-28: "Hence, in the event the mobile communication device 102 is lost (or stolen), no confidential data can be recovered as no data is stored on the mobile communication device 102.")

The significance of the claimed "secure element" and "secure element application" and their use in the claimed ordered combination to patent eligibility is evident from the allegations in Samsung's DJ Complaint. (See, Dkt. No. 1, ¶ 84.) Samsung contends: "Samsung Pay products do not have a 'secure element application configured to use the NFC protocol' at least because they do not use the NFC protocol. Nor do Samsung Pay products execute an application 'in response to a detection of a near field communication inductive signal from an NFC terminal.'" (*Id*., ¶¶ 84-85.) Thus, Samsung's DJ Complaint not only acknowledges the significance of the "secure element" and "secure element application" limitations, but also emphasizes the ordered combination in which they are used in the claims (i.e., activation of an application in response to an inductive NFC signal.) (*Id*.; *see also Id.*, ¶¶ 42, 49 (for the '493 and '771 patents)) Samsung's motion does not address these limitations at all, let alone how their ordered implementation, as set forth in the claims, constitutes an "abstract idea."

The significance of the "secure element" and "secure element application" limitations and how they are activated in the claimed ordered combination is also evident from Samsung's IPR petitions. Samsung argues to the PTO: "the Patent Owner's purported novelty [is] based on the use

1   of 'secure components'—*i.e.*, a secure element on a mobile device that has a secure memory and

2   processor, a secure element application—and NFC…." (Dkt. No. 38, Ex. 1 at 1.) Tellingly,

3   Samsung's description of the invention to the PTO is strikingly different than the characterization in

4   its motion. While Samsung will ultimately contend the claimed inventions were obvious based upon

5   combining references, the fact that Samsung does not contend the claims are anticipated by one

6   reference establishes, for purposes of this motion, that the claimed ordered combination was not

7   known at the time of invention and thus not "conventional." (*See* Dkt. No. 38, Ex. 1 at 5, Ex. 5 at 6,

8   Ex. 7, at 5.) Blaze's claims are presumed valid for purposes of this motion. Samsung has not met its

9   burden of establishing ineligibility based on the contention that the claimed inventions disclose

10  nothing more than the conventional use of existing computer technology.

11      Nor has Samsung correctly addressed the claimed ordered combination. This alone fails to

12  establish a *prima facie* case of patent ineligibility. It also precludes Samsung from meeting its burden

13  of establishing patent invalidity by clear and convincing evidence. Samsung's attorney argument that

14  the claims recite generic computer components, such as a "management server," a "transaction

15  server," a "mobile device," and a "secure element"—as well as the use of "conventional" computer

16  functionalities such as "transmitting," "transferring," "receiving," "storing," etc.—even if correct

17  (which the pleadings dispute) is unavailing. Patent-eligible subject matter can include a combination

18  of known features. 35 U.S. C. § 100(b); *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295

19  (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1108 (2020); *Packet Intelligence*, 965 F.3d at 1308.

20      Likewise, Samsung's arguments regarding Ms. Fisher's statements about certain claim

21  elements during prosecution of the patents fail to demonstrate ineligibility. (Dkt. No. 47 at 14:16-20.)

22  First, Ms. Fisher's statements do not establish ineligibility because the claims are presumptively valid

23  and allowed after examination as novel and nonobvious over the prior art. Thus, the claimed ordered

24  combination was presumptively not known or conventional at the time of invention. Second,

25  Samsung takes Ms. Fisher's statements out of context.  Mr. Fisher did not say the invention recited

26  in the claims were known or conventional. Rather, Ms. Fisher, in responding to examiner questions

27  regarding the disclosure of certain features in the specification, merely noted that certain features in

28  the claim's combination were understood. (Dkt. No. 47, Exs. 1 at 11, and Ex/ 2 at 9.)]. Ms. Fisher

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1    never admitted that the recited non-browser-based application performing the recited operations on

2    very specific technology in a mobile device was known or conventional—because it was not.

3        Rather than prove that the claims recite patent ineligible "building blocks," Samsung's motion

4    seeks a short cut by declaring the claimed NFC-based "secure element application" operating in a

5    novel way within "secure element" hardware of a mobile platform is itself a new category of patent-

6    ineligible subject matter. But Samsung's cases do not support extending the reach of ineligible subject

7    matter that far. The Federal Circuit's non-precedential decision in *Innovation Scis., LLC v.*

8    *Amazon.com, Inc*., 778 F. App'x 859, 863 (Fed. Cir. 2019), illustrates the differences between

9    ineligible subject matter and the eligible claim in the '771, '493, and '575 patents. The claims in

10    *Innovation Sciences* required switching from a website based on one server to a website based on

11    another server with better security. The Court held that the invention "does not purport to improve

12    the payment server or the server on which the item for purchase is listed." *Id*. The claims of the '771,

13    '493, and '575 patents, in contrast, improve security and scalability by providing a secure element

14    and secure element application. This is exactly the type of narrowly tailored "ordered combination"

15    that satisfies patent eligibility. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59

16    (Fed. Cir. 2014) (finding claims patent eligible where they, as a whole, recite uses that are "not merely

17    the routine or conventional" and "do not attempt to preempt every application of [an] idea….").

18        Similarly, the claims in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d

19    1329, 1337 (Fed. Cir. 2017), differ from Blaze's claims. In *Two-Way*, the invention allegedly centered

20    on a "communication protocol" and "selection signals."  But the claim did not actually recite these

21    allegedly inventive features. In contrast, the claims of the '771, '493, and '575 patents *do* recite the

22    inventive "secure element" and "secure element application" limitations, as well as the specific

23    ordered combination of those limitations which, with other limitations, solves the problem of

24    providing secure payment and financial transactions over a mobile device while minimizing risk of

25    loss of sensitive information.

26        Finally, *Universal Secure Registry LLC v. Apple Inc*., 10 F.4th 1342, 1353 (Fed. Cir. 2021),

27    does not support Samsung's ineligibility argument. There, the Federal Circuit found that the "patent

28    itself acknowledges that the claimed step of generating time-varying codes for authentication of a

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Glaser Weil

1   user is conventional and long-standing." *Id*. at 1350. Conversely, the '771, '493, and '575 patents

2   contain no such acknowledgment regarding the use of a "secure element" and "secure element

3   application," as used in combination with the other claim limitations, because the combination, at the

4   time of the invention, was neither conventional nor long-standing.

5       Samsung's file history arguments are also without merit, and misstate the record. The '493

6   Affidavit Ex. 1 at 11 recites excerpts from the patent's written description to demonstrate that the

7   invention pre-dated one of the prior art references; it did ***not*** acknowledge the claimed invention was

8   "known" in the art. Nor do the remarks in the '575 File History Ex. 2 support patent ineligibility. The

9   remarks at page 9 were a comparison of the NFC and RFID protocols. Ms. Fisher did not admit that

10  the claimed use of a "secure element" and a "secure element application" in the claimed ordered

11  combination was known prior to Blaze's invention. Samsung's argument that Ms. Fisher "admitted"

12  that the claimed "secure element application" covers previously existing software applications, such

13  as MasterCard's PayPass, is false. The file history and specification excerpts cited by Samsung

14  merely acknowledge that Blaze's claimed invention can be "***interfaced***" with certain known and

15  implemented payment protocols, such as Paypass. (*See* Ex. 1, '493 File History, 3/20/15 Fisher Aff.

16  at 4 ("support for the secure element application can be found, for example, in paragraph 45. The

17  present invention can ***also be interfaced*** with certain known and imple[mented] payment protocols,

18  such as Paypass." )) The fact that the claims of the '771, '493, and '575 patents were allowed

19  presumptively establishes that the inventions claimed in those patents were not known or obvious

20  over MasterCard PayPass.  Ms. Fisher admitted nothing to the contrary.

**2.    The '771, '493, and '575 Patents Recite an Inventive Concept**

22      Samsung also relies on an overly abstract characterization of the inventions claimed in the

23  '771, '493, and '575 patents to argue that the claims lack an "inventive concept" in *Alice* step two.

24  Samsung argues: "The NFC Security Patents' claims lack an inventive concept because they

25  implement the abstract idea of providing security for an economic transaction using only conventional

26  computer components to carry out well-understood routine steps of transmitting and processing

27  information." (Dkt. 47, at 15:7-10.) This contains ***no mention*** of the claimed "secure element," the

28  claimed "secure element application," or how they operate together with the other claimed features.

Glaser Weil

The use of a "secure element" and "secure element application," in the ordered combination claimed in the '771, '493, and '575 patents, constitutes an inventive concept because it improves the security, performance, and scalability of an NFC-enabled mobile device. *See* Dkt. No. 1, Ex. 1, '493 Patent at 2:54-59, Col. 3:17-20, and 3:25-28; *see Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018) (claimed use of a key that uniquely identifies the computer that the software is installed upon, stored in read-only memory (ROM) of the computer's basic input / output system (BIOS) that cannot be modified, removed, or hacked, was an "inventive concept."). Similarly, here, the use of a secure element and secure element application that stores an identification code separately from the main mobile device memory, as well as storing the credit card information (i.e., "payment method") at the remote management server, is both a departure from conventional approaches, and constitutes patent eligible subject matter. *See also* Weir Decl., Ex. 1, '821 App. at ¶ 13 (incorporated by reference) ("Payment credentials, coupons, tickets, and so on may have to be stored on the secure element of an NFC phone"); Ex. 2, '441 App. at ¶ 13 (same reference) ("the transaction request signal including an identifier stored in the secure memory and that is associated with the user of the hand-held mobile device."); *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC.*, 827 F.3d 1341, 1350 (Fed. Cir. 2018) (finding that a particular combination of claim elements that moved "individualized filtering" from a user's computer to an individualized filter at the ISP server, to make the computer more efficient, constituted patent eligible subject matter). In the same way as in *Bascom,* the inventions claimed in the '771, '493, and '575 patents constitute an unconventional application that shifts the storage of the payment method from the mobile device to the server, which processes the transaction using the payment method, an inventive concept. (*See* Dkt. No. 1, Ex. 1, '493 Patent at 2:54-59, 3:17-20, and 3:25-28.)

Indeed, earlier Blaze patents that are incorporated by reference expressly state that the use of a remote server to store sensitive security information such as the credit card number, rather than storing such information on the mobile device, reduces the risk of exposure of the user's private information and data: "For example, the data can be securely stored on the remote server using conventional PCI guidelines.  Hence, in the event the mobile communication device 102 is lost (or stolen), no confidential data can be recovered as no data is stored on the mobile communication

1   device 102 . . .  Thus, in one implementation, sensitive information (e.g., banking account numbers,

2   credit card account numbers, expiry dates, and so on) are never stored on the mobile communication

3   device.  This reduces risk and exposure of the user's private information and data." (Weir Decl., Ex.

4   1, '821 App. at ¶ 13. It also enables the computer to scale: "As such, the management server 180 can

5   store user personal and credit and transactional information and history, including a code associated

6   with the user, for a variety of different mobile devices, thereby allowing a system which can scale"

7   (*Id*. Ex. 3 '351 App. ¶ 116.) Accordingly, Samsung cannot meet its burden of establishing patent

8   ineligibility by clear and convincing evidence. Further, Blaze changed inventorship on the '441 App.

9   so Samsung's "known knowledge" argument is moot. (*See* Weir Decl., Exs. 10-12.)

10          **C.      Blaze's '259 and '007 Patents Claim Patent-Eligible Subject Matter**

11          The '259 and '007 patents relate to security and usability improvements in non-browser based

12   mobile applications running on a mobile device, a management server, and a transaction server,

13   which use an identification code transmitted from a non-browser-based application running on the

14   mobile device. (Dkt. No. 30, ¶ 21.) Samsung contends: "Blaze's '259 and '007 patents are directed

15   to 'conducting an online payment transaction through a point of sale device'" using a mobile device.

16   (Dkt. No. 47 at 17:18-20.) The claims of the '259 and '007 patents show that Samsung's

17   characterization of the claimed invention is an impermissible, overly broad abstraction. *Enfish*, 822

18   F.3d at 1337. Because Samsung has not addressed the claimed inventions, it has not presented a *prima*

19   *facie* case of ineligibility, and has not met its burden on its motion for judgment on the pleadings.

20          **1.      The '259 and '007 Patents Are Directed to a Technical Solution to a**

21                  **Technical Problem, Not an Abstract Idea**

22          The differences between Samsung's overly abstract characterization of the inventions claimed

23   in the '259 and '007 patents, and what is actually claimed in Representative Claim 7 of the '259

24   patent, make clear the lack of merit to Samsung's motion. (*See* Appendix A, Representative Claim 7

25   of the '259 Patent.) The inventions claimed in the '259 and '007 patents utilize a non-browser based

26   application with a specific non-browser based application graphical user interface and a graphical

27   icon which only generates a non-browser based application generated screen. (*Id*.) The specific non-

28   browser based application receives a list of products for potential purchase from a remote

Glaser Weil

1    management server. (*Id*.) The non-browser based application screen is then used to select one or more

2    products and transmit the selected product(s) to the remote server though the non-browser based

3    application. (*Id*.) The non-browser based application then generates a purchase request which is sent

4    to the remote management server. (*Id*.) The user provides an identification code to the non-browser

5    based application, which sends the code to the remote management server. (*Id*.) The remote

6    management server receives a transaction verification from a transaction server, which uses a

7    payment method stored on the remote server associated with the user identification code. (*Id*.)

8    Samsung's overly abstract characterization of the claimed inventions omits any mention of the non-

9    browser based application and its integral use with the other components of the claimed invention.

10       The significance of the "non-browser based application" used in the claimed ordered

11    combination to the claimed inventions is apparent from Samsung's DJ Complaint. For example,

12    Samsung alleges that the Accused Samsung Galaxy Store Products do not infringe the claims of the

13    '259 patent because the "Samsung Galaxy Store products do not have a 'non-browser based

14    application'…." (Dkt. No. 1, ¶¶ 77, 78.) Further, in support of its IPR Petition, Samsung argued:

15    "[T]he Patentee contends that the purported novelty of the claims is that the mobile devices use a

16    'non-browser based application' to conduct the only payment transactions…." (Dkt. No. 38, Ex. 6 at

17    1.) Thus, it is clear that the "non-browser based application" and its use in the claimed ordered

18    combination is key to the issue of patent eligibility. By broadly abstracting the claimed invention to

19    exclude those key limitations, Samsung failed to address the patent eligibility of the claimed

20    inventions and has therefore not met its burden on its motion.

21       Samsung's attorney argument that the claims recite certain allegedly generic steps, such as

22    "sending" and "receiving" data or a "list of products," a "purchase request," an "identification code,"

23    "login information," "authenticating" information, and a "transaction verification" between a

24    "mobile device" and a "remote management server," is unavailing because patent-eligible subject

25    matter can include a combination of known features, and it is the claim *as a whole* that must be

26    considered when deciding patent eligibility. *See* 35 U.S.C. § 100(b). The fact that Samsung's IPR

27    petitions only allege obviousness by combining references also shows establishes that the claimed

28    order combination is novel and not known or "conventional." (Dkt. No. 38, Ex. 6 at 5, Ex. 8 at 1 and

17

1  6.) Further, since the claims of the '259 and '007 patents are presumed valid, the claimed

2  combinations must be presumed to be new and not "known" or "conventional."

3  Nor do Samsung's characterizations of certain excerpts from the patents' written description

4  demonstrate ineligibility. Samsung merely strings together a few crop quotes from the patents'

5  written description, out of context, in order to describe the claimed inventions in the broadest terms.

6  This is not a proper use of the written description for patent eligibility purposes. While the written

7  description is useful to understand the claimed invention, one does not look to the written description

8  ***absent what is claimed*** to decide patent eligibility. And Samsung's non-infringement allegations

9  alone show that the claimed inventions cannot preempt the full scope of any idea. *DDR Holdings*,

10 773 F.3d at 1258-59. Thus, Samsung has not met its burden of establishing, by clear and convincing

11 evidence, that the claimed inventions are patent-ineligible.

12                    **2.    The '259 and '007 Patents Recite an Inventive Concept**

13 Samsung again relies on an overly abstract characterization of the inventions claimed in the

14 '259 and '007 patents in arguing that "the Mobile Payment Patents simply describe and claim the use

15 of conventional computing components, such as a generic mobile device and common servers, to

16 perform the abstract idea of conducting mobile payment transactions." (Dkt. No. 47 at 21:26-28.)

17 Samsung makes ***no mention*** of the claimed secure "non-browser based application," or its use within

18 the context of the claimed inventions. Thus, it cannot be said that the claimed inventions recite the

19 use of known components to carry out well-understood, routine steps that evince ineligible claims.

20 The inventions claimed in the '259 and '007 patents present specific technical solutions to

21 specific technical problems and claim patent eligible subject matter. The use of a remote server to

22 store sensitive security information (e.g., credit card number), rather than storing such information

23 on the mobile device, reduces the risk of exposure of the user's private information and data. *See* Dkt.

24 No. 1, Ex. 6, '259 Patent at 3:2-9 ("One potential benefit of having payment authorizations flow

25 through the mobile communication device 102 is that sensitive user information (e.g. account

26 numbers, pin numbers, and/or identity information) need only be sent from the mobile

27 communication device 102 directly to an issuer authorization. Such operation reduces the potential

28 for identity theft and/or fraudulent purchases made through a point of sale device."); 4:60-63 ("Upon

18

Glaser Weil

authentication, the consumer's virtual wallet and payment methods (e.g., credit card, debit card, prepaid card, etc.) are securely retrieved from the management server 408 . . .").

Blaze patent applications incorporated by reference also describe these inventive concepts. *See* Weir Decl., Ex. 1, '821 App. at ¶ 13 ("For example, the data can be securely stored on the remote server using conventional PCI guidelines.  Hence, in the event the mobile communication device 102 is lost (or stolen), no confidential data can be recovered as no data is stored on the mobile communication device 102 . . .  Thus, in one implementation, sensitive information (e.g., banking account numbers, credit card account numbers, expiry dates, and so on) are never stored on the mobile communication device.  This reduces risk and exposure of the user's private information and data."); Ex. 3 '351 App.  ¶ 116 (noting that the invention enables the computer to scale); Ex. 3 '351 App.  ¶ 32, 35, 65 (noting that the claimed non-browser based application is more reliable than SMS which was unstructured and unreliable at the time of this invention); Ex. 3, '351 App. at ¶ 112 (noting that, at the time of this invention, applications such as web browser would not operate, much less access and display, a digital artifact if the mobile device lost connection to a server via a wireless network); Ex. 2, '441 App. ¶¶ 39 and 40 (transmitting identification code associated with the user to the POS terminal using the secure element application in response to an NFC inductive signal by the POS terminal improves computer function by not relying on mobile device battery or processor; Weir Ex. 1. ¶ 14. "In general, while effort is made to minimize storage of sensitive user information and data in a memory of a mobile communication device, in one implementation, some data is stored in the memory of a mobile communication device due to reasons of performance, usability and user experience. . . Tickets and/or coupons may be locally cached so that a user can redeem the tickets and/or coupons in an offline mode. For example, a mobile communication device may be offline in a situation in which network connectivity inside a building is degraded and storing a ticket and/or coupon in a local cache of the mobile communication device permits the user to access the ticket or coupon."). In fact, the PTAB has found that the non-browser claims are novel over prior art disclosing the use of a web browsers. *See* Weir Exs. 4 (Board Decision Ex. 1020) and 5 (Board Decision Ex. 1020).

The dependent claims further establish the inventive concept. For example, dependent claim

1    15 provides that the non-browser based application is operable when it is not connected to a wireless

2    network. (Dkt. No. 1, Ex. 6, 11:7-9.) Claim 17 provides that the non-browser based application

3    enables the user to access the digital artifact when there is no network connection. (*Id.*, 11:12-14.)

4    Claim 18 further provides that the non-browser based application generated screen is operative even

5    if the mobile device is not connected to a network. (*Id.*, 11:15-17.) Claim 20 provides that the non-

6    browser based application sends a request to the remote management server to retransmit the digital

7    product or artifact if it has not received the product/artifact within a certain time period. (*Id.* 11:22-

8    25; *see also* Dkt. No. 30, ¶¶ 44-47 (referencing Dkt. No. 1, Ex. 9: ("Ms. Fisher stated during the

9    prosecution of one of the non-browser based application patents that a] digital artifact can be

10   displayed on the non-browser based application . . . without connection to a server.").)

11        As Samsung has not addressed the ordered combination of the inventions claimed in the '259

12   and '007 patents, but rather chose to characterize the inventions improperly in overly abstract terms.

13   Given Samsung's inability to find the ordered combination in one prior art reference as reflected in

14   Samsung's IPR petitions (which are cited in Samsung's Answer to Counterclaims, Dkt. No. 38) and

15   the presumption of validity that establishes, for purposes this motion, the claimed order

16   combination was not known and thus not "conventional." Samsung has not established that the

17   claimed inventions lack an inventive concept and has not met its burden of establishing patent

18   ineligibility by clear and convincing evidence.

19        **D.    The '849, '556 and '612 Patents Claim Patent Eligible Subject Matter**

20        The '849, '556, and '612 patents relate to improvements in the reliability and performance of

21   non-browser mobile applications running on a mobile device for delivering advertisements, for

22   example, a coupon (i.e., advertisement) if the mobile device is offline and loses connection with a

23   wireless network. (Dkt. No. 30 ¶ 22.) Samsung contends: "Blaze's '849, '556, and '612 patents-in-

24   suit are directed to providing targeted advertising—*i.e.*, advertising that is customized based on

25   information regarding particular consumers—on mobile devices."  (Dkt. No. 47 at 3:9-10.) The

26   claims of the '849, '556, and '612 patents show that Samsung's characterization of the claimed

27   invention is an impermissible, overly broad abstraction. *Enfish*, 822 F.3d at 1337. Because Samsung

28   has not addressed the claimed inventions, it has not presented a *prima facie* case of patent ineligibility

Glaser Weil

and has not met its burden on its motion for judgment on the pleadings.

**1. The ’849, ’556, ’612 Patents Are Directed to a Technical Solution to a Technical Problem, Not an Abstract Idea**

The differences between Samsung’s impermissible, overly abstract characterization of the inventions claimed in the ’259 and ’007 patents, and what is actually claimed in Representative Claim 12 of the ’849 patent, demonstrate that Samsung’s motion lacks merit. (*See* Appendix A, Representative Claim 12 of the ’849 Patent.) The actual claim language recites a patent-eligible, non-obvious technical solution to a technical problem. Samsung’s arguments to the contrary, relying on an overly broad characterization of the claimed inventions, are unavailing, as they fail to address the claimed ordered combination.

The inventions claimed in the ‘849, ‘556, and ‘612 patents utilize a “non-browser based application.” As discussed, the use of a “non-browser based application” is not only novel, but offers technical improvements over prior web-based inventions. These improvements are also highlighted in Samsung’s own DJ Complaint, which alleges that Samsung Ads Products lack the requisite “non-browser based application.” (Dkt. No. 1, ¶¶ 56, 57.) Samsung further acknowledged the significance of the “non-browser based application in its IPR Petition: “According to Patentee, the purported novelty of the claims is that (1) the ad is selected based on the user’s purchase-related history; and (2) the ad is displayed in a ‘non-browser based application’ on the mobile device.” (Dkt. No. 38, Ex. 2 at 1.) Regardless of Samsung’s validity challenge, Blaze’s the inventions are presumed valid in this motion. And Samsung makes no argument the claimed inventions preempt any “building blocks” of human ingenuity. *DDR Holdings*, 773 F.3d at 1258-59.

Samsung’s arguments that the claimed inventions utilize generic computer components such as a “remote management server” and a “mobile device” with a “processor,” a “display,” a “wireless radio interface,” etc., even if accepted, do not dictate ineligibility, because the law allows claims that recite a new composition or arrangement of known components or steps. 35 U.S.C. § 100(b). Nor does Samsung’s argument that the method claims recite generic computer functions such as “maintaining,” “selecting,” “receiv[ing],” etc. compel ineligibility. To the contrary, nearly ***all*** method claims, by their very nature, use similar verbs to describe the claimed process, including the claims

Glaser Weil

in *Diehr*.

Samsung's argument that the specification "confirms" targeted advertising to be the "focus" of the patent lacks relevance to eligibility. Eligibility turns not on what the claim's "focus" is, but rather how that "focus" is accomplished in the claimed ordered combination. Blaze's claims recite a specific technical solution to a technical problem and are not, as Samsung incorrectly argues, addressed to the "general idea" of targeting advertisements. By failing to offer evidence that the claimed combination as a whole was well-understood, routine or conventional, Samsung has not met its burden of proof. *Diehr*, 450 U.S. at 188.

The cases Samsung cites all involved claims are easily distinguishable from Blaze's claims. The claims in *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 884, 887 (Fed. Cir. 2019) (unpublished), merely required tracking users with personal markings. The claims in *Affinity Labs of Texas, LLC v. Amazon.com Inc*., 838 F.3d 1266, 1271 (Fed. Cir. 2016), simply recited delivering selectable media content and subsequently playing the selected content. The claims in *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1365 (Fed. Cir. 2021), only required gathering information, matching the information, and sending content. The claims in *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362-65 (Fed. Cir. 2020), merely required the delivery of specifically identified advertising data. Finally, the claims in *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020), simply recited the use of targeted advertisements for a user and a bidding system to determine how the advertisements would be displayed. Conversely, Blaze's claims recite a specific device for accomplishing a specific technical need using a "non-browser based application" in an ordered and novel combination.[4]

---

[4] Samsung points to the PTAB's decision in *Ex Parte Michelle Fisher*, 2020 WL 1041299, at *7, but that decision is not instructive to the patents here. In that matter, the PTAB based its decision on the absence of language in the claims themselves setting forth the advantages of the invention, even though "[c]laims need not articulate the advantages of the claimed combinations to be eligible." *Uniloc USA, Inc.*, 957 F.3d at 1309. Contrary to Samsung's speculation, Ms. Fisher elected to abandon the application, not as an admission of ineligibility, but because of the expense of further

22

Because the inventions claimed in the '849, '556, and '612 patents claim new and useful ordered combinations of steps, which provide technical solutions to technical problems in the mobile communication and advertising arts, they claim patent-eligible subject matter.

### 2.    The '849, '556, '612 Patents Recite an Inventive Concept

Samsung once again relies on an overly broad characterization of the claimed inventions as the basis for its lack of inventive concept arguments. Samsung argues: "The advertising Patent claims lack an inventive concept because they merely implement the abstract idea of targeted advertising using particular arrangement of well-understood, routine, conventional computing components and functionalities." (Dkt. No. 47 at 7:20-23.) But the '849, '556, and '612 patents were issued over one-hundred prior art references and since they are presumed valid, it cannot be said for purposes of a motion for judgment on the pleadings that the patents lack an inventive concept. It is clear that the claimed inventions present a novel and non-obvious technical solution to a technical problem. Samsung's arguments to the contrary, that rely on an overly broad characterization of the claimed inventions, are unavailing as they fail to address the claimed inventions as a whole including the claimed steps in their claimed order.

The claimed non-browser based application further provides a technical inventive concept because it "minimizes the number of applications that need to be executed by [the] mobile device … [thus using] [l]ess memory." (Dkt. No. 1, Ex. 3, '849 Patent, 5:51-59 ("In one implementation, the mobile application can be customized to display different screens, user interfaces and/or controls. ***Less memory is, therefore, required by a mobile communication device***.") (emphasis added).) The claimed invention advantageously uses a non-browser based application, which communicates with the remote management server in response to user input and displays an advertisement in a specific non-browser based application specific generated screen. The use of the non-browser based application which, in addition to communicating with the remote management server, generates a

appeal coupled with the fact that the '849, '556, and '612 patents all recite technical improvements and the Patent Office had already found similar claims in a related patent application eligible under § 101. Weir Decl., Ex. 6 at 11-12 and Ex. 7 at 6-11.

23

non-browser based application screen for displaying the advertisement, solves the problem of the user losing access to the advertisement when the device loses connection with the internet. (*See* Dkt. No. 30, at ¶¶ 22, 44-47; Dkt. No. 1, Ex. 9, 6:62-67 (noting that the "non-browser based application" can "internally determine the appropriate content . . . to respond to the mobile application," and the "result sets can be cached on the mobile communication device 102 for future use to improve performance."); *see also* Claims 3, 9, 13, and 15.) Thus, by allowing the display of an advertisement in the non-browser based application when the mobile device has lost contact with the internet, Blaze's inventions disclose an inventive concept that improves the function and reliability of the mobile device.

Providing targeted advertisements from a remote server to a non-browser application further solved a technical problem unique to mobile device with limited memory. Blaze's inventions do this by automating the generation of a customized non-browser based application and displaying advertisements in the customized non-browser based application. (Dkt. No. 1, Ex. 3 at 1:50-59.) Under Federal Circuit authority, this novel solution suffices to establish an inventive concept beyond any "abstract idea" or at least raise an issue that cannot be resolved at the pleading stage. *Berkheimer* 881 F.3d at 1365 (finding unconventional combination of elements, including software, which moved individualized filtering from a user's computer or local server to ISP server was more efficient that conventional process and thus patent eligible.); *DDR Holdings*, 773 F.3d at 1258-59 (finding that generation of a hybrid web page and displaying content in the hybrid web page is patent eligible subject matter).

Indeed, Blaze's claims satisfy patent eligibility in the same way as claims that were found eligible in *AT&T v. Bascom*—a case involving claims found patent eligible because of the particular arrangement or unconventional combination of additional elements, which moved individualized filtering from a user's computer or local server to individualized filtering at the ISP server. *Bascom*, 827 F.3d at 1350. The *Bascom* arrangement made the computer more efficient, thereby representing an eligible "software-based invention[ ] that improve[s] the performance of the computer system itself." *Id*. at 1351 (internal citation omitted). In the same way, Blaze's claims covering the delivery of targeted advertisements from a remote server to a non-browser based application reflect a

BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS

particular unconventional arrangement that shifts the selection of individualized advertisement from a mobile device (Weir Decl., Ex. 8 at.9) or local kiosk Weir Decl., Ex. 9 at 7-9). (the methods used in the prior art) to selection of individualized advertisement at the remote server and delivery to a single non-browser based application—all of which makes Blaze's invention more efficient and "improve[s] the performance of the computer system itself." *Id.*

The dependent claims further establish the inventive concept. For example, dependent claim 12 provides that the non-browser based application is operable when it is not connected to a network. (Dkt. No. 1, Ex. 4, 10:46-48.) Claim 14 further provides that the non-browser based application sends a request to the remote management server to retransmit the advertisement if it has not received the advertisement within a certain time period. (*Id.* at 10:55-59.)  Both are novel features, and Samsung offers no evidence to the contrary—just attorney argument.

Samsung argues that the claims simply recite, in order, maintaining an advertisement, selecting it, providing it to an application." (Dkt. No. 47 at 8:24-26.) Tellingly, Samsung omits the use of the non-browser based application and the display of the advertisement on a specific non-browser based application generated screen. (*Id.*) The omission directly conflicts with Samsung's non-infringement contentions and IPR allegations, which highlight this claim requirement. The fact that Samsung's IPR petitions assert an obviousness combination, and not anticipation, further demonstrates that the claimed ordered combination was neither known nor conventional. (Dkt. No. 38, Ex. 2 at 5; Ex. 3 at 6, Ex. 4 at 5.) This fact, coupled with the presumption that the claimed ordered combination is novel and non-obvious, precludes a finding that the claimed ordered combination lacks an inventive concept. The omission also demonstrates the fundamental flaw in Samsung's motion: Any claim can be broadly characterized as "abstract," but patent eligibility turns on the claim language *as written*.

## V.    CONCLUSION

For the foregoing reasons, Blaze respectfully asks that Samsung's motion be denied.

1

2    DATED:  November 19, 2021

3

4

5    By: _/s/  Lawrence M. Hadley_

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP


By: _/s/  Lawrence M. Hadley_
      LAWRENCE M. HADLEY
      JAN P. WEIR
      Attorneys for Defendants
      Blaze Mobile, Inc., and Michelle Fisher

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Glaser Weil**

1

2                            **APPENDIX A**

3                     **REPRESENTATIVE CLAIMS**

4        Blaze respectfully submits the following representative claims for purposes of addressing

5   Samsung's pending Motion Under Fed. R. Civ. P. 12 (c) For Judgment of Unpatentability Under

6   Section 101. (Dkt. No. 47.)  The parties agree that the eight (8) Patents-In-Suit can be organized into

7   three groups. The representative claims set forth below represent one claim for each group.

8        **1.      Representative Claim 9 of the '493 Patent for the '493, '771, '575 group of**

9                 **patents:**

10

11   9. A mobile device using a near field communication protocol for an NFC
     transaction, the mobile communication device comprising:

12
     a mobile device memory;

13
     a mobile device processor,

14
     and a mobile device transceiver;

15

16   wherein the mobile device is associated with a secure element, the secure element
     including a secure element memory, a secure element-processor, a secure element

17   communication transceiver supporting a first communication channel comprising
     the near field communications (NFC) protocol, wherein the secure element memory

18   maintains a secure element application config used to use the NFC protocol and an
     identification code, wherein the secure element application is executed by the

19   secure element processor in response to detection of a near field communication
     inductive signal by an NFC terminal and execution of the secure element

20   application facilitates transfer of the identification code to the NFC terminal the
     secure element communication transceiver and further wherein the NFC terminal

21   transfers the identification code to a management server which transmits the
     identification code to a transaction server for processing of the NFC transaction

22   using a payment method corresponding to the identification code, the NFC terminal
     configured to use the NFC protocol.

23

24
     (Dkt. No. 1, Ex. 1, 6:26-52.)
25        **2.      Representative Claim 7 of the '259 Patent for the '259 and '007 group of**
              **patents:**
26            A mobile device for processing a transaction, comprising:

27
              a mobile device memory included in a mobile device, the mobile device
28   memory configured to store a non-browser based application, wherein the non-

                                          1

browser based application is a mobile operating system platform based mobile application with a graphical user interface which includes a graphical icon that is preinstalled or downloaded and installed on the mobile device wherein the non-browser based application only generates a non-browser based application generated screen, the non-browser based application generated screen corresponding to a specific screen or area of the non-browser based application, the mobile device comprising the mobile device memory, a mobile device display;

a mobile device wireless radio interface consisting of at least of a wireless fidelity (WiFi) interface and a mobile device wireless radio interface that supports voice and data interaction through a first wireless communication channel device using a lest one of GSM and CDEMA configured to;

receive, at the non-browser based application generated screen, a list of products from a remote management server for display using the non-browser based application'

send, from the non-browser based application generated screen, the identification of one or more products to the remote management server;

send, from the non-browser base application generated screen, the transaction purchase request to the remote management server;

send, from the non-browser base application generated screen, the user input login information t remote management server;

receive information authenticating the user association with the user input login information from the remote management server and further wherein the remote management server and receives transaction verification from a transaction server which processed the transaction using a payment method that corresponds to the identification code associated with the user, wherein the payment method is stored at the remote management server; wherein the transaction verification indicated that the transaction has processed; and

receive, at the mobile device, the one or more products from the remote management server.

a mobile device input interface configured to:

receive, at the non-browser based application generated screen, an identification of one or more products selected from the list of products from non-browser based application generated screen, wherein the non-browser based application receives the identification of the one or more products selected from the list of products through user input via the mobile device display;

receive a transaction purchase request from the non-browser based application generated screen, wherein the non-browser based application

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**

generated screen receives the transaction purchase request received from the user via the mobile device display and further wherein the transaction purchase request includes information relating to the identification of the one or more products; and

receive user input login information including an identification code associated with the user from the non-browser based application generated screen, wherein the non-browser based application receives the user input login information through user input via the mobile device display.

(Dkt. No. 1, Ex. 6, 8:58-9:60.)

**3.      Representative Claim 12 of the '849 Patent for the '849, '556, '612 group of patents:**

A remote management server for delivering an advertisement, comprising:

at a remote management server memory that stores the advertisement;

a remote management server processor that selects an advertisement based on one or more targeting parameters in response to user input from a non-browser based application stored on a mobile device, wherein the one or more targeting parameters compromise personal information and purchase transaction related information, wherein the non-browser based application stored on the mobile device receives the user input via a mobile device display, wherein the non-browser based application is a non-browser based application with a graphical user interface that is preinstalled or downloaded and installed on the mobile device, the mobile device comprising the mobile device display, a mobile device processor, and a mobile device wireless radio interface;

a remote management server transceiver that sends the advertisement to the non-browser based application and further wherein the non-browser based application displays the advertisement within a specific non-browser based application generated screen, the specific non-browser based application generated screen corresponding to a specific screen or area of the non-browser based application.

(Dkt. No. 1, Ex. 4, 10:56-11:16.)

**BLAZE'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS**