1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SAMSUNG ELECTRONICS CO, LTD., et al.,

Plaintiffs,

v.

BLAZE MOBILE, INC., et al.,

Defendants.

Case No.   5:21-cv-02989-EJD

**ORDER DENYING SAMSUNG'S MOTION UNDER FED. R. CIV. P. 12(C) FOR JUDGMENT OF UNPATENTABLITY UNDER SECTION 101 AS TO ADVERTISING PATENTS**

Re: Dkt. No. 47

Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") initiated this action for a declaratory judgment of non-infringement as to eight patents owned by Defendants Blaze Mobile, Inc. and Michelle Fisher (collectively "Blaze").  Blaze answered and counterclaimed for infringement.  Pursuant to Federal Rule of Civil Procedure 12(c), Samsung moves for judgment of unpatentability under 35 U.S.C. § 101.  Dkt. No. 47.  Blaze filed an opposition with an appendix identifying the representative claims for the patents-in-suit for purposes of addressing Samsung's motion (Dkt. No. 50), and Samsung filed a reply (Dkt. No. 52).  The Court conducted a hearing on May 12, 2022.  Based upon all pleadings filed to date and the comments of counsel, Samsung's motion is denied as to the Advertising Patents.  The Court will issue a separate order addressing the remaining Patents-in-Suit.

I.      **BACKGROUND**

Blaze and Fisher own the following eight patents, which are directed to performing a variety of functions on a mobile device:

United States District Court
Northern District of California

- U.S. Patent No. 9,378,493, ("the '493 Patent") is entitled "Mobile Communication Device Near Field Communication (NFC) Transactions";

- U.S. Patent No. 9,652,771, ("the '771 Patent") is entitled "Induction Based Transactions at a Mobile Device with Authentication";

- U.S. Patent No. 9,996,849, ("the '849 Patent") is entitled "Remote Delivery of Advertisements";

- U.S. Patent No. 10,339,556, ("the '556 Patent") is entitled "Selecting and Transmitting an Advertisement from a Server in Response to User Input";

- U.S. Patent No. 10,621,612, ("the '612 Patent") is entitled "Displaying an Advertisement in Response to User Input Using a Non-Browser Based Application";

- U.S. Patent No. 10,699,259, ("the '259 Patent") is entitled "Remote Transaction Processing Using a Mobile Device";

- U.S. Patent No. 10,565,575, ("the '575 Patent") is entitled "NFC Mobile Device Transactions with a Digital Artifact"; and

- U.S. Patent No. 10,825,007, ("the '007 Patent") is entitled "Remote Transaction Processing of at a Transaction Server."

The eight patents are collectively referred to as the "Patents-in-Suit."  The '849, '556, and '612 are collectively referred to as the "Advertising Patents"; the '493, '771, and '575 are referred to as the "NFC Security Patents"; and the '259 and '007 are referred to as the "Mobile Payment Patents."

Blaze alleges that the Advertising Patents relate to improvements in "the reliability and performance of non-browser mobile application running on a mobile device for delivering advertisements, for example, a coupon (*i.e.*, advertisement) which can be displayed in the non-browser based application if the mobile device is offline and loses connection with a wireless network."  Blaze's Answer and Affirmative Defenses to Complaint for Declaratory Judgment; And Counterclaims for Patent Infringement ("Blaze Counterclaims"), Dkt. No. 30, ¶ 22.  Further, Blaze alleges that "[t]he delivery of advertisements based upon certain targeting parameters in response to user input from a non-browser base application stored on a mobile device as done by the Accused Samsung Ads Products are a material part of the claims of the [Advertising] Patent[s] and thus the Accused Samsung Ads Products perform the key inventive functions of the

Case No.: 5:21-cv-02989-EJD
ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO ADVERTISING PATENTS

2

1    [Advertising] Patent[s].  *Id*., ¶¶ 254, 286, 320.

2    **II.    STANDARDS**

3        **A.    Federal Rule of Civil Procedure 12(c)**

4            A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)

5    challenges the legal sufficiency of the opposing party's pleadings and operates like a motion to

6    dismiss under Rule 12(b)(6)*.  Morgan v. Cty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal.

7    2006).  Judgment on the pleadings is appropriate if, assuming the truth of all materials facts pled

8    in the complaint, the moving party is nonetheless entitled to judgment as a matter of law.  *Hal*

9    *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  When

10   ruling on a motion for judgment on the pleadings, the court may consider materials subject to

11   judicial notice in addition to considering the allegations of the complaint.  *Heliotrope Gen., Inc. v.*

12   *Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).  A Rule 12(c) motion for judgment on

13   the pleadings may thus be granted if, after assessing both the complaint and matters subject to

14   judicial notice, it appears beyond doubt that the non-moving party cannot prove any facts that

15   would support his claim for relief.  *Enron Oil Trading & Transp. Col. v. Walbrook Ins. Co., Ltd*.,

16   132 F.3d 526, 529 (9th Cir. 1997).

17       **B.    35 U.S.C. § 101**

18           Section 101 of the Patent Act provides that a patent may be obtained for "any new and

19   useful process, machine, manufacture, or composition of matter, or any new and useful

20   improvement thereof."  35 U.S.C. § 101.  However, the Supreme Court has recognized that these

21   broad categories contain an implicit exception: "[l]aws of nature, natural phenomena, and abstract

22   ideas are not patentable."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576,

23   133 S. Ct. 2107, 2116 (2013) (internal quotation marks and citation omitted).  In applying this

24   exception, courts "must distinguish between patents that claim the building blocks of human

25   ingenuity and those that integrate the building blocks into something more."  *Alice Corp. Pty. Ltd.*

26   *v. CLS Bank Int'l,* 573 U.S. 208, 134 S. Ct. 2347, 2354 (2014).

27   Case No.: 5:21-cv-02989-EJD

28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
     ADVERTISING PATENTS

United States District Court
Northern District of California

United States District Court
Northern District of California

1      To determine whether a claim falls within the "abstract idea" exception, the Supreme Court

2  has established a two-step framework.  First, the court must "determine whether the claims at issue

3  are directed to a patent-ineligible concept." *Id.* at 2355.  The "directed to inquiry" is a

4  "meaningful one" and "cannot simply ask whether the claims involve a patent-ineligible concept,

5  because essentially every routinely patent-eligible claim involving physical products and actions

6  involves a law of nature and/or natural phenomenon." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d

7  1327, 1335 (2016).  "Rather, the 'directed to' inquiry applies a stage-one filter to claims,

8  considered in light of the specification, based on whether 'their character as a whole is directed to

9  excluded subject matter.'" *Id*.

10      Second, if the claims are directed to patent-ineligible subject matter, the Court must

11  "consider the elements of each claim both individually and 'as an ordered combination' to

12  determine whether the additional elements 'transform the nature of the claim' into a patent-eligible

13  application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132

14  S. Ct. 1289 (2012)).  The Supreme Court has described this as a "search for an 'inventive

15  concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in

16  practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.*

17      When assessing patent protection under § 101, the claims of the patent "must be

18  considered as a whole." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981).  "This is particularly true in

19  a process claim because a new combination of steps in a process may be patentable even though

20  all the constituents of the combination were well known and in common use before the

21  combination was made." *Id*.

22      Whether an asserted claim is invalid for lack of subject matter patentability under § 101 is

23  a question of law.  *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338

24  (Fed. Cir. 2017) ("Patent eligibility under § 101 is an issue of law[.]").  Although a section 101

25  analysis "may contain disputes over underlying facts," it can often be resolved on the pleadings.

26  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("As our cases demonstrate, not

27  Case No.: 5:21-cv-02989-EJD

28  ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
ADVERTISING PATENTS

1   every § 101 determination contains genuine disputes over the underlying facts material to the §

2   101 inquiry."). "Accordingly, a district court may resolve the issue of patent eligibility under §

3   101 by way of a motion for judgment on the pleadings." *MyMail, Ltd. v. OoVoo, LLC*, -- F.3d --,

4   2020 WL 2219036, at *3 (N.D. Cal. May 7, 2020) (citing *buySAFE, Inc. v. Google, Inc.*, 765 F.3d

5   1350, 1352 (Fed. Cir. 2014) (affirming determination of ineligibility made on motion for judgment

6   on the pleadings)).[1]

7   **III.   DISCUSSION**

8       Samsung contends that all of the Patents-in-Suit should be held invalid under 35 U.S.C.

9   §101—and the infringement claims asserting them should be dismissed—because they are

10   directed to abstract ideas and fail to incorporate an inventive concept. In response, Blaze asserts

11   that Samsung's motion should be denied because there are disputed claim terms that must be

12   construed, the motion raises genuine disputes of material fact, which are not suitable for resolution

13   on the pleadings, and that each of the Patents-in-Suit is directed to a technical solution to a

14   technical problem, not an abstract idea, and recites an inventive concept.

15       **A.   Claim Construction**

16       The Court rejects Blaze's assertion that a § 101 invalidity analysis is premature in this case

17   without first conducting claim construction. As in *Simio, LLC v. FlexSim Software Prods., Inc.*,

18   Blaze "has not explained how it might benefit from any particular term's construction under an

19   *Alice* § 101 analysis." 983 F.3d 1353, 1365 (Fed. Cir. 2020). Rather, Blaze identifies disputed

20   terms "non-browser based application," "secure element," and "secure element application" and

21   then relies on the Federal Circuit's general guidance that claim construction is desirable, and often

22   necessary prior to a § 101 analysis, for "a full understanding of the basic character of the claimed

23   subject matter." *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, 2015 WL 518852 * 4

24

25   _____

26   [1] The novelty and nonobviousness of claims under 35 U.S.C. §§ 102 and 103 do not bear on
     whether claims are directed to patent-eligible subject matter under § 101. *Two-Way Media Ltd. v.
     Comcast Cable Communications, LLC*, 874 F.3d 1329, 1336 (Fed. Cir. 2017).

27   Case No.: 5:21-cv-02989-EJD

28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
     ADVERTISING PATENTS

United States District Court
Northern District of California

1   (M.D. Fl. 2015) (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d

2   1266, 1273-74 (Fed. Cir. 2012)).  Merely pointing to the claim language, without explaining how

3   claim construction would change the analysis is insufficient to defer consideration of the instant

4   motion.  *See Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, 558 F. App'x. 988, 991 n.1

5   (Fed. Cir. 2014) (patentee's failure to "explain which terms require construction or how the [§

6   101] analysis would change," and instead "merely point[ing] to claim language," was insufficient

7   to show claim construction was necessary to resolve patentability challenge).

8   **B.     Factual Disputes Do Not Necessary Foreclose *Alice* Analysis**

9           The Court also rejects Blaze's blanket assertion that Samsung's motion is premature

10  because of factual disputes.  "[C]ourts can, and regularly do, decide the issue of § 101 invalidity

11  on a Rule 12(c) motion."  *Barbaro Techs., LLC v. Niantic, Inc.*, 475 F. Supp. 3d 1007, 1011 (N.D.

12  Cal. 2020); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)

13  (noting § 101 invalidity "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c)

14  motion").  When the issue of § 101 invalidity is raised at the pleading stage "it simply means all

15  allegations must be accepted as true and construed in the light most favorable to the non-moving

16  party.  *Barbaro*, 475 F. Supp. 3d at 1011; *see also Aatrix Software, Inc. v. Green Shades Software,*

17  *Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (patent eligibility can be determined at the Rule

18  12(b)(6) stage "when there are no factual allegations that, taken as true, prevent resolving the

19  eligibility question as a matter of law.").

20  **C.     The Advertising Patents**

21          The Advertising Patents are directed to providing advertising on mobile devices.  Claim 1

22  of the '849 Patent recites:

23          **1.** A method for delivering an advertisement, comprising:

24          maintaining, at a remote management server, the advertisement;

25          selecting, at the remote management server, the advertisement based on one or
        more targeting parameters in response to user input from a non-browser based
26        application stored on a mobile device, wherein the one or more targeting
        parameters comprise personal information and purchase transaction related

27      Case No.: 5:21-cv-02989-EJD
        ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
28      ADVERTISING PATENTS

United States District Court
Northern District of California

1
2
3
information wherein the non-browser based application stored on the mobile device receives the user input via a mobile device display wherein the non-browser based application is a non-browser based application with a graphical user interface that is preinstalled or downloaded and installed on the mobile device, the mobile device comprising the mobile device display, a mobile device processor, and a mobile device wireless radio interface;

4
5
6
sending, from the remote management server, the advertisement to the non-browser based application and further wherein the non-browser based application displays the advertisement within a specific non-browser based application generated screen, the specific nonbrowser based application generated screen corresponding to a specific screen or area of the non-browser based application.

7   '849 Patent at 9:48-10:6.  Claim 12 of the '849 Patent, which is the only other independent claim,

8   recites the same subject matter in an apparatus-claim format:

9   **12**. A remote management server for delivering an advertisement, comprising:

10   a remote management server memory that stores the advertisement;

11
12
13
14
15
16
a remote management server processor that selects an advertisement based on one or more targeting parameters in response to user input from a non-browser based application stored on a mobile device, wherein the one or more targeting parameters comprise personal information and purchase transaction related information, wherein the non-browser based application stored on the mobile device receives the user input via a mobile device display, wherein the non-browser based application is a non-browser based application with a graphical user interface that is preinstalled or down-loaded and installed on the mobile device, the mobile device comprising the mobile device display, a mobile device processor, and a mobile device wireless radio interface;

17
18
19
a remote management server transceiver that sends the advertisement to the non-browser based application and further wherein the non-browser based application displays the advertisement within a specific non-browser based application generated screen, the specific non-browser based application generated screen corresponding to a specific screen or area of the non-browser based application.

20   *Id*. at 10:56 -11:16.

21
22
### 1.   *Alice* Step One:  Whether The Advertising Patents' Claims are Directed to an Abstract Idea

Samsung contends that the Advertising Patents are directed to the abstract concept of

23   conducting targeted advertising on a mobile device, whereas Blaze contends that they relate to

24   improvements in the reliability and performance of non-browser mobile applications running on a

25   mobile device for delivering advertisements.

26

27
28
Case No.: 5:21-cv-02989-EJD
ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
ADVERTISING PATENTS

United States District Court
Northern District of California

1    "The concept of tailoring advertisements based on user data" is an abstract idea that "dates

2    back at least to local radio and television advertisements." *Bridge & Post, Inc. v. Verizon*

3    *Commc'ns, Inc.*, 778 F. App'x 882, 884, 887 (Fed. Cir. 2019) (quoting *Intellectual Ventures I LLC*

4    *v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369–70 (Fed. Cir. 2015)); *see also Affinity Labs of*

5    *Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) (similar); *In re Morsa*, 809

6    F. App'x 913, 917 (Fed. Cir. 2020) (similar).  Accordingly, claims directed to targeted advertising,

7    including targeted advertising delivered on mobile devices, are unpatentable.  *See, e.g.*, *Free*

8    *Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1365 (Fed. Cir. 2021) (holding claims

9    ineligible for patenting because they were directed to "the abstract idea of providing targeted

10   advertising to the mobile device user"); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d

11   1359, 1365 (Fed. Cir. 2020) (claim that recited "data delivery system for providing automatic

12   delivery of . . . specifically identified advertising data" was directed to abstract idea, even though

13   the claimed invention provided a reserved and dedicated section of storage to ensure memory was

14   available for at least some advertising data).

15        Here, claim 1 of the '849 Patent is directed to the abstract concept of providing targeted

16   advertising on a mobile device.  It recites a result-oriented method for delivering an advertisement,

17   comprising: "maintaining" the advertisement at a remote server; "selecting" the advertisement

18   based on "targeting parameters in response to user input"; and "sending" the advertisement to the

19   non-browser based application.  '849 Patent at 9:51-53.  Claim 12 of the '849 is similarly directed

20   to the abstract concept of providing an advertisement by using a "remote management server" that

21   "stores" and "selects"  the advertisement based on user input, and a remote management server

22   transceiver that sends the advertisement.  *Id*. at 10:60-64.  The targeted advertising is performed in

23   a computer environment, but that does not necessarily transform the targeted advertising "out of

24   the realm of abstraction." *PersonalWeb Tech. LLC v. Google*, 8 F.4th 1310, 1316 (Fed. Cir.

25   2021).  "An abstract idea on 'an Internet computer network' . . . is still an abstract idea." *Bascom*

26   *Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016).

27

Case No.: 5:21-cv-02989-EJD
28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
     ADVERTISING PATENTS

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    The Federal Circuit instructs that at *Alice* step one, courts "consider the 'claims in their

2    entirety to ascertain whether their character as a whole is directed to excluded subject matter.' "

3    *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (quoting *Internet*

4    *Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).   The Advertising

5    Patents' claims, as a whole, resemble claims the Federal Circuit has found abstract.  For example,

6    in *Bridge & Post*, which is a nonprecedential decision, the patents at issue described tracking a

7    user on a network and serving tailored advertisements.  One of the claims at issue in *Bridge &*

8    *Post* recited a "[a] method for providing directed media to a user on a network."  *Bridge & Post*,

9    778 Fed. Appx. at 885.  The claim required "receiving a user request to access a website,

10   retrieving a 'persistent device identifier' from the user's device, and gathering current and

11   historical information about both the user and the device."  *Id*.  The collected information and

12   identifier are analyzed to determine what advertisement should be shown to the user.  *Id*.

13   Blaze does not deny that providing targeted advertising is an abstract idea.  Instead, Blaze

14   contends that the claims in *Bridge & Post* are distinguishable because they "merely required

15   tracking users with personal markings."  Opp'n at 22.  This in inaccurate.  One of the claims in

16   *Bridge & Post* required receiving a request from the user for content, retrieving historic

17   information for the user (including patterns of usage), "analyzing" the historic information and

18   other information "to determine" content for the user, and then "placing" that content in a web site

19   for the user where the content "is customized to the user."  *Bridge & Post*, 778 Fed. Appx. at 886-

20   87.  Blaze further contends that *Bridge & Post* is distinguishable because the claims referred to a

21   "directed media component" and did not say anything about advertising.  The argument is

22   unpersuasive.  The Federal Circuit viewed the claims as a whole as "directed to the use of

23   persistent identifiers to implement targeted marketing," which the Federal Circuit viewed as

24   advertising. *Id*. at 887.

25   The Advertising Patents' claims are also similar to those in *Free Stream Media*.  In *Free*

26   *Stream Media*, the claims were directed to: "(1) gathering information about television users'

27   Case No.: 5:21-cv-02989-EJD

28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
     ADVERTISING PATENTS

1    viewing habits; (2) matching the information with other content (i.e., targeted advertisements)

2    based on relevancy to the television viewer; and (3) sending that content to a second device."

3    *Free Stream*, 996 F.3d at 1361–62.  The Federal Circuit concluded that the claims were directed to

4    the abstract idea of targeted advertising.  *Id*.  The Advertising Patents' claims in the present case

5    contain comparable steps that are directed to the abstract idea of sending a targeted advertisement

6    to a user's device.

7        The Advertising Patents' claims also resemble claims in *Affinity Labs*, where the patent

8    claimed a media system comprising a network based media managing system stores content; a

9    collection of instructions configured to initiate presentation of graphical interface, to facility a

10   user's selection of content, and to send a request for delivery of content; and a network based

11   delivery source configured to select and to send content in response to user's selection. 838 F.3d at

12   1271.  The Advertising Patents' claims also resemble the claims in *Intellectual Ventures*, where

13   the patent related to "customizing information based on (1) information known about the user and

14   (2) navigation data."  792 F.3d at 1369.  *See also Customedia*, 951 F.3d at 1362-65  (claim recited

15   a "data delivery system for providing automatic delivery of . . . specifically identified advertising

16   data); *In re Morsa*, 809 F. App'x at 917 (claim recited a "process" that "transmit[s]" a "request for

17   demographic and/or psychographic user information" to the user and then "sav[es]" the "user

18   information" on the system to match the user to a specific advertiser.).

19       Blaze asserts that the cases discussed above are distinguishable because the Advertising

20   Patents' claims "recite a specific device for accomplishing a specific technical need using a 'non-

21   browser based application' in an ordered and novel combination."  Opp'n at 22.  "The Supreme

22   Court has suggested that claims 'purport[ing] to improve the functioning of the computer itself,' or

23   'improv[ing] an existing technological process' might not succumb to the abstract idea exception."

24   *Enfish*, 822 F.3d at 1335 (quoting *Alice*, 573 U.S. at 225).  Here, Blaze assert that the claims in the

25   Advertising Patents recite two technological improvements to memory usage:  first, the use of a

26

27   Case No.: 5:21-cv-02989-EJD

28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
     ADVERTISING PATENTS
     10

United States District Court
Northern District of California

1    single non-browser application; and second, choosing the advertisement at the remote

2    management server.

3           Blaze acknowledges that the claims do not expressly state technological improvements, but

4    argues that the claims do not need to recite the actual benefit achieved by the claimed invention,

5    citing *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).  The issue,

6    however, is not whether the claims recite a benefit in the abstract.  Rather, the issue is whether the

7    claims are directed to an improvement to computer functionality or technical improvement.

8    *Enfish*, 822 F.3d at 1335.  The Advertising Patents' claims are not.  Instead, they recite

9    generalized steps to be performed on conventional computer components and steps to implement

10   the abstract concept of targeted advertising on mobile devices.  The single non-browser

11   application performs the generalized steps of receiving input, receiving and advertisement, and

12   displaying an advertisement.  The remote server similarly performs the generalized step of

13   choosing the advertisement.  *See e.g.*, *Intellectual Ventures*, 792 F.3d at 1363 (server is tasked

14   with providing web pages); *Free Stream Media*, 996 F.3d at 1359 ("relevancy-matching server

15   uses primary data from the networked device to select advertisements or other targeted data based

16   on a relevancy factor associated with the user").  Nothing more concrete is disclosed regarding the

17   single non-browser application and the remote server.  "[M]erely provid[ing] a generic

18   environment in which to carry out the abstract idea" does not transform a claim into a patent-

19   eligible application.  *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

20          At step one of the *Alice* test, courts also look to what the specification describes as the

21   invention . . . to help understand the focus of the claims."  *See ChargePoint*, 920 F.3d at 768 n.2.

22   According to the Advertising Patents' specifications, the technological improvement is due to the

23   customization of a mobile application running on a mobile communication device of a user.  *See*

24   '849 Patent at 1:50–59, 5:52–59 ("a single mobile application can be customized by a large

25   number of different special interest groups ("SIG") . . . . Less memory is, therefore, required by a

26   mobile communication device in order to support applications required by multiple special interest

27   
Case No.: 5:21-cv-02989-EJD

28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
ADVERTISING PATENTS

United States District Court
Northern District of California

1    groups (SIGs).").  However, the Patent and Trademark Appeals Board ("PTAB") recently found

2    that substantially similar claims appearing in a since abandoned Blaze patent application were

3    directed to the abstract idea of "customizing delivery of artifacts, e.g., advertisements or other

4    content, to a user on a mobile device based on targeting parameters."  *Ex Parte Michelle Fisher*,

5    2020 WL 1041299, at *7 (P.T.A.B. Feb. 28, 2020) (determining U.S. Pat. App. 14/867,328

6    claimed unpatentable abstract subject matter).  The PTAB determined that "[t]he addition of basic

7    user customization features to the interface does not alter the abstract nature of the claims and does

8    not add an inventive component that renders the claims patentable.  *Id.* at *5.  Thus, even

9    assuming the Advertising Patents' claims recited a customization feature, doing so would not alter

10   the abstract nature of the claims.  *Id.*; *see also Affinity Labs*, 838 F.3d at 1271 ("Like the basic

11   concept of tailoring content to a user . . . the basic concept of customizing a user interface is an

12   abstract idea.").

13            The Court finds that the Advertising Patents' claims are directed to the abstract idea of

14   targeted advertising.  Therefore, the Court proceeds to *Alice* step two.

15                          **2.      *Alice* Step 2: Inventive Concept**

16            Having determined that the claims of the Advertising Patents are directed to a patent-

17   ineligible concept, the Court next "consider[s] the elements of each claim both individually and

18   'as an ordered combination' to determine whether the additional elements 'transform the nature of

19   the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at

20   78–79).  The claims "must do significantly more than simply describe [the] abstract idea itself."

21   *Affinity Labs*, 838 F.3d at 1262.  Further, the inventive concept in the claims "must be more than

22   well-understood, routine, conventional activity," "and cannot simply be an instruction to

23   implement or apply the abstract idea on a computer."  *Bascom*, 827 F.3d at 1349; *In re TLI*, 823

24   F.3d at 613 ("It is well-settled that mere recitation of concrete, tangible components is insufficient

25   . . . .  Rather, the components must involve more than performance of well-understood, routine,

26   conventional activities previously known to the industry.").  For example, "the invocation of

27   Case No.: 5:21-cv-02989-EJD

28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
     ADVERTISING PATENTS

United States District Court
Northern District of California

1    'already-available computers that are not themselves plausibly asserted to be an advance . . .

2    amounts to a recitation of what is well-understood, routine, and conventional.'" *Customedia*, 951

3    F.3d at 1366 (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018)).

4        Here, the Advertising Patents' claims invoke already-available generic computing

5    components such as "remote management server," "non-browser based application," and a

6    "mobile device" comprising a "mobile device display, a mobile device processor, and a mobile

7    device wireless radio interface." '849 Patent at 2:3–7, 3:58–62, 5:31–33.  Further, the activities of

8    these generic computing components, *i.e.*, "maintaining," "selecting," "receiv[ing]," "sending,"

9    and "display[ing] information, are also conventional.  '849 Patent at claims 1, 12.  Despite the

10   Advertising Patents' generic components and conventional activities, Blaze contends that the

11   Patents recite an inventive concept because the specific ordered combination of the limitations

12   provides technical advantages.

13       The Federal Circuit has held that even if individual elements of a claim are generic or

14   conventional, the claims are patent-eligible when the ordered combination of elements provides a

15   technical improvement over the prior art.  *See, e.g., Bascom*, 827 F.3d at 1350 (claims eligible

16   even though individual elements were generic computer and network components, because there

17   was "an inventive concept … in the non-conventional and non-generic arrangement of [the]

18   known, conventional pieces"); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d

19   1288, 1303 (Fed. Cir. 2016) ("[w]hile some individual limitations arguably may be generic, others

20   are unconventional and the ordered combination of these limitations yields an inventive

21   concept.").

22       Blaze argues that the Advertising Patents' claims "reflect an unconventional arrangement

23   that shifts the selection of individualized advertisement from a mobile device . . . to selection of

24   individualized advertisement at the remote server and deliver to a single non-browser based

25   application—all of which makes Blaze's invention more efficient and improves the performance

26   of the computer system."  Opp'n at 24-25.  Blaze alleges that the Advertising Patents relate to

27

28

United States District Court
Northern District of California

Case No.: 5:21-cv-02989-EJD
ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
ADVERTISING PATENTS

1    improvements in "the reliability and performance of non-browser mobile application running on a

2    mobile device for delivering advertisements, for example, a coupon (*i.e.*, advertisement) which

3    can be displayed in the non-browser based application if the mobile device is offline and loses

4    connection with a wireless network."  Blaze Counterclaims ¶ 22.  Further, Blaze alleges that the

5    content can be displayed on the non-browser based application without connection to a server.  *Id.*

6    ¶¶ 44-48.

7          At the pleading stage, the Court finds Blaze's alleged inventive concept is at least plausible

8    based on the specification.  The specification describes one implementation that has memory

9    advantages:

> In one implementation, association between a SIG and an end user is
> validated via an out-of-band process-e.g., a banking customer may
> have to specify their SIG and provide heir SIG credentials ( e.g.,
> online banking user ID/password) that are unique to the SIG. The
> management server validates the credentials with the SIG. Once the
> end user has been authenticated by the SIG, it will be possible to
> deliver the SIG's branding and messaging specifically to the end
> user. Such a technique minimizes the number of applications that
> need to be executed by a mobile communication device. For
> example, a single mobile application can be customized by a large
> number of different special interest groups (SIGs). In one
> implementation, the mobile application can be customized to display
> different screens, user interfaces and/or controls. Less memory is,
> therefore, required by a mobile communication device in order to
> support applications required by multiple special interest groups
> (SIGs).

19    '849 Patent, 5:51-59.  The specification also describes another implementation with the remote

20   server selecting advertisements.  *Id.* at 7:24-33.  According to Blaze, "[p]roviding targeted

21   advertisements from a remote server to a non-browser application solved a technical problem

22   unique to mobile device with limited memory."  Opp'n at 24.  The specification also discusses

23   offline access.  '849 Patent at 6:62-67.  Blaze contends that by allowing the display of an

24   advertisement in the non-browser based application when the mobile device has lost contact with

25   the internet, Blaze's inventions disclose an inventive concept that improves the function and

26   reliability of the mobile device.  Blaze also asserts U.S. Patent Application Publication No.

27   Case No.: 5:21-cv-02989-EJD

28   ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
ADVERTISING PATENTS

United States District Court
Northern District of California

1    20008/0052192, which has been incorporated by reference into the Advertisement Patents,

2    discloses scalability advantages.  *See* Dkt. No. 51-3 at ¶ 116.

3            Samsung raises essentially two counterarguments.  First, Samsung reasserts that the claims

4    implement targeted advertising using nothing more than well-understood, routine, conventional

5    activities previously known in the industry.  Second, Samsung argues that the Blaze's alleged

6    inventive concept is essentially caching, *i.e.*, storing data in memory, which is yet another

7    conventional computing function.  But *Bascom* instructs that an inventive concept can be found in

8    the non-conventional and non-generic arrangement of known, conventional pieces.  *Bascom*, 827

9    F.3d at 350.  At this stage in the proceedings, Blaze's "plausible and specific factual allegations

10   that aspects of the claims are inventive" are sufficient to defeat Samsung's motion.  *Cellspin Soft,*

11   *Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

## IV.    CONCLUSION

13           For the reasons stated above, Samsung's motion for judgment on the pleadings as to the

14   Advertising Patents is DENIED.  The Court will issue a separate order addressing the remaining

15   Patents-in-Suit.

16           **IT IS SO ORDERED.**

17   Dated:  September 30, 2022

                                                                EDWARD J. DAVILA
                                                                United States District Judge

*United States District Court*
*Northern District of California*

Case No.: 5:21-cv-02989-EJD
ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
ADVERTISING PATENTS
                                                    15