United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAMSUNG ELECTRONICS CO, LTD., et al., Plaintiffs, v. BLAZE MOBILE, INC., et al., Defendants. | Case No. 5:21-cv-02989-EJD **ORDER GRANTING PARTIAL MOTION TO DISMISS** Re: ECF No. 178 |

Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., (collectively, "Samsung") initiated this action for a declaratory judgment of non-infringement as to eight patents (the "Patents-in-Suit") owned by Defendants Blaze Mobile, Inc., and Michelle Fisher (collectively, "Blaze"). First Am. Compl., ECF No. 128. Blaze answered and counterclaimed for infringement and several other non-patent claims. Answer and Counterclaims, ECF No. 130. Before the Court is Samsung's motion to partially dismiss a number of Blaze's counterclaims. Mot., ECF No. 178; Opp'n, ECF No. 185; Reply, ECF No. 188.

After careful review of the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS** Samsung's motion to dismiss. The Court dismisses Blaze's patent counterclaims regarding the NFC Security Patents without leave to amend and dismisses Blaze's non-patent counterclaims with leave to amend.

## I. BACKGROUND

Samsung initiated this action in April 2021, seeking a declaratory judgment of non-infringement as to the Patents-in-Suit. In its counterclaims, Blaze alleges that certain Samsung

United States District Court
Northern District of California

Pay, Samsung Galaxy Store, and Samsung Ads products and services infringe the Patents-in-Suit, and that Samsung misappropriated Blaze's trade secrets and other related confidential information for its own use by pretending to negotiate license and confidentiality agreements with Blaze.

The eight Patents-in-Suit are directed to performing various functions on mobile devices and can be generally classified into three groups: the '849, '556, and '612 patents are referred to as the "Advertising Patents"; the '493, '771, and '575 patents are referred to as the "NFC Security Patents"; and the '259 and '007 patents are referred to as the "Mobile Payment Patents." The only patents relevant to the present Order are the NFC Security Patents, which relate to methods that improve security in NFC payment systems (for example, tapping one's mobile device on a store's reader to make contactless payments via Apple Pay or Samsung Pay). The Court previously granted Samsung's Rule 12(c) motion for judgment on the pleadings as to the NFC Security Patents ("Prior Order"), finding this category patent-ineligible under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Prior Order, ECF No. 93. The Court found Blaze failed at step two of the *Alice* analysis because the NFC Security Patents were abstract ideas that lacked an inventive concept. *Id.* The Court granted leave to add allegations showing how the NFC Security Patents contain an inventive concept.[1] *Id.*

Blaze subsequently filed an amended answer and counterclaims, and Samsung filed another motion to dismiss. However, before adjudicating Samsung's motion to dismiss, the Court granted Samsung's motion to stay this case in August 2023 pending resolution of various EPR requests Samsung had recently filed. ECF No. 119.[2] Nearly two years later, the Court partially lifted the stay and allowed discovery to proceed as to the patents for which reexamination was complete, as well as Blaze's non-patent claims.

Samsung subsequently filed the present motion to dismiss the following claims:

(1) Blaze's amended counterclaims for infringement of the NFC Security Patents

[1] The Court otherwise denied Samsung's motion as to the remaining patents.
[2] The Court denied Samsung's previous motion to stay pending PTAB's resolution of its Inter Partes Review ("IPR") petitions, finding that the mere filing of an IPR does not by itself simplify the issues in this case. Order, ECF No. 58.

United States District Court
Northern District of California

based on patent ineligibility under § 101; and

(2) Blaze's non-patent counterclaims for fraud, breach of contract, violation of the federal Defend Trade Secrets Act ("DTSA"), violation of the California Uniform Trade Secrets Act ("CUTSA"), breach of the implied covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel based on failure to state a claim.

## II. LEGAL STANDARD

### A. Section 101

Section 101 of the Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court has recognized that these broad categories contain an implicit exception: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (internal quotation marks and citation omitted). In *Alice*, the Supreme Court established a two-step framework to determine whether a claim falls within the "abstract idea" exception. *Alice*, 573 U.S. at 217. First, courts must examine "whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. Second, if the claims are directed to a patent-ineligible concept, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012)). The Supreme Court has described this as a search for an "inventive concept"—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 566 U.S. at 72–73.

### B. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

The Court will address in turn Blaze's patent and non-patent counterclaims.

### A. § 101 Eligibility of the NFC Security Patents

In its Prior Order finding the NFC Security Patents ineligible under § 101, the Court held the claims failed at step two because they "appear[ed] to be squarely aimed at the abstract, fundamental economic practice of facilitating secure transactions," and they failed to recite an inventive concept. Prior Order 11, 17. The Court granted leave to add allegations regarding whether the NFC Security Patents contain an inventive concept, and Blaze subsequently filed its amended counterclaims. Samsung now argues Blaze's amended counterclaims still fail to adequately allege an inventive concept.

The Court will discuss in turn arguments regarding the three technical improvements Blaze alleges constitute an inventive concept: (1) use of a non-browser application providing operation without an internet connection; (2) use of an NFC inductive signal for local communication without the need for internet in an internet-enabled mobile phone; and (3) displaying a digital artifact in the absence of an internet connection.

**1. Non-Browser-Based Application Providing Operation Without Internet Connection**

Blaze's first proposed "inventive concept" is the NFC Security Patents' use of a non-browser application to provide operation without an internet connection. Blaze argues "[t]hese NFC Security Patents address a specific and pesky problem with relying on browsers to communicate on a mobile device"; the "pesky problem" being "[i]f one loses the wireless signal, the browser stops working, and even simple tasks stall." Opp'n 6. "[B]y providing a non-browser-based application, and allowing it to operate without an internet connection," Blaze contends, "better functionality is achieved." *Id.* According to Blaze, this is a "technical improvement" the Court already approved for the other patents—in Blaze's words, "this Court was on firm ground in holding that providing a non-browser-based application to provide functionality in the event an Internet connection was not available is an inventive concept." Opp'n 6 (citing Order 14–15, 20–21, ECF No. 87).

Samsung raises several issues with this "inventive concept." First, the term "internet" does not appear in the claims. The NFC Security Patents do not claim making purchases with or without the "internet"; they claim making purchases using NFC. In other words, the claims do not require the offline or internet-free functionality that Blaze identifies as the technical improvement. Some claims do recite that there is no "wireless network connection," but they still do not specify functionality in the absence of an internet connection—the '575 patent's independent claims require that the mobile device "receiv[es]" "a digital artifact" without specifying what type of connection is used, and the specification states that the device may include, e.g., an "Ethernet card" (a wired connection). To the extent these claims relate to the lack of a network connection, Samsung contends they merely recite certain desired results for the non-browser-based application—i.e., that it be "operative" or "can display the digital artifact when the mobile device is not connected to a wireless network"—without specifying how to achieve those results. Mot. 19–20. The Federal Circuit has held claims that "merely claim[] the achievement of results . . . are directed to ineligible matter." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1299 (Fed. Cir. 2020). Samsung similarly argues that the NFC Security Patents' specifications do

United States District Court
Northern District of California

not mention the term "non-browser-based application," weakening Blaze's suggestion that this term itself supplies an inventive concept. Samsung also highlights that this concept was not stated in the summary description of the NFC Security Patents; that the '493 Patent and '771 Patent have no claims, independent or dependent, that mention network connectivity; and that Blaze did not choose as representative an NFC Security Patent which recited a non-browser-based application, in contrast to its choices as to the Advertising Patents and Mobile Payment Patents.

The Court agrees with Samsung. As an initial matter, Blaze is correct that, as to the Advertising Patents, the Court found a plausible inventive concept of displaying content on an application without an internet connection. But the Court based that ruling on the fact that such offline capability *improved the functionality* of mobile devices *with limited memory*. Order 14, ECF No. 87. Here, Blaze fails to explain how the offline capability in the NFC Security Patents improves the functionality of mobile device technology. Blaze appears to argue that a non-browser-based application providing operation without internet connection improves functionality by fixing the "pesky problem" of browsers cutting out and simple tasks stalling as a result. However, the Court agrees with Samsung that this "technical improvement" is neither adequately claimed nor identified in the specifications in the manner Blaze asserts.[3] In particular, the claims do not require the internet-free functionality on which Blaze relies, and Blaze has not identified sufficient specification language establishing that this functionality improves mobile-device technology in the manner Blaze now argues.

### 2. Use of NFC Inductive Signal for Local Communication Without Need for Internet Connection in an Internet-Enabled Mobile Phone

Blaze's second proposed "inventive concept" is the NFC Security Patents' use of an NFC inductive signal for local communication without the need for internet in an internet-enabled mobile phone. Blaze contends the NFC Security Patents are directed to an inventive, new type of mobile phone that includes both a wireless communication path that can communicate with the

[3] Even assuming Blaze had adequately identified the alleged offline functionality, that functionality would not itself establish an inventive concept because the record indicates that offline operation and local storage of content were conventional capabilities.

United States District Court
Northern District of California

internet and a separate inductive communication path for close range communication. Blaze explains that the two paths back each other up and work together to create synergistic advantages, such that it constitutes a "non-conventional and non-generic arrangement of known, conventional pieces." Opp'n 12 (internal quotation marks omitted) (quoting Prior Order 15 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016) (finding a "particular, practical application of" the abstract idea patent eligible)). According to Blaze, combining these "paths" is comparable to being "the first company to make a hybrid automobile." Opp'n 9.

Samsung similarly argues that this "technical improvement" is unclaimed and unpled, *see* Reply 7–9, but more notably, Samsung contends this concept is simply not inventive. According to Samsung, "[b]y definition, NFC—or near field communication—is a magnetic-induction-based communication technology that does not use the Internet at all; rather, NFC uses a direct communication channel between two NFC-enabled devices within close proximity to each other (on the order of a few centimeters)." Mot. 13 (citing *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 4259020, at *39 (E.D. Tex. Sept. 9, 2019) (NFC "provides short-range wireless connectivity that uses magnetic field induction to enable communication between the devices")). Samsung highlights that the benefits of "inductive" communications over alternatives such as Bluetooth is a conventional property of NFC, which is itself an induction-based standard. *See Virginia Innovation*, 2019 WL 4259020, at *39; ECF No. 116-2, at 1 (defining NFC standard for "inductive coupled devices"). Samsung also cites to the patents' language acknowledging NFC is "known knowledge," and this Court's finding that NFC is "well-known." Opp'n 13 (citing Prior Order 12). To the extent that Blaze argues the *combination* of a wireless communication path that can communicate with the internet and a separate inductive communication path for close range communication is inventive, Samsung contends Blaze was not the first to combine these paths. Reply 2, 6 (citing '441 Application ¶ 6). Samsung points to various portions of the record that confirm NFC-enabled mobile phones were available well before the alleged November 2007 priority date. *Id.* at 7. Thus, even apart from the

evidence that the combination itself was known, Samsung argues that the combination merely produces the expected result of the respective communication technologies rather than a new or unconventional technological result. *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1355 (Fed. Cir. 2021) ("There is nothing in the specification suggesting, or any other factual basis for a plausible inference (as needed to avoid dismissal), that the claimed combination of these conventional authentication techniques achieves more than the expected sum of the security provided by each technique.").

The Court finds Samsung's arguments persuasive here as well. NFC uses magnetic-field induction by definition, and the record supports a finding that the particular combination Blaze characterizes as inventive was already present before the asserted priority date. *See* Reply 6–7. Accordingly, the Court finds Blaze's second "inventive concept" also fails.

**3. Displaying Digital Artifact in Absence of an Internet Connection**

Finally, Blaze contends that "[t]he technical improvement of allowing a digital artifact (like a ticket, coupon, etc.) to be displayed without an Internet connection is also an inventive concept." Opp'n 14. Blaze cites to language from '771 Patent, which states: "Tickets and/or coupons may be locally cached so that a user can redeem the tickets and/or coupons in an offline mode. For example, a mobile communication device may be offline in a situation in which network connectivity inside a building is degraded and storing a ticket and/or coupon in a local cache of the mobile communication device permits the user to access the ticket or coupon." *Id.* at 14–15 (internal quotation marks omitted) (quoting '771 Patent, at 4:55-61).

Samsung again argues here that none of the claims specify the absence of an internet connection; and to the extent the lack of a "wireless network" connection is understood as meaning the lack of an internet connection, Samsung contends that downloading tickets to a device is conventional—or more precisely, it is "well known." Reply 10 (citing '192 Publication ¶ 3; '441 Application ¶ 3; '945 Patent at 12:23–25). Further, Samsung reiterates its argument made above that the claims relating to the lack of a network connection merely recite certain desired results for the non-browser-based application—i.e., that it be "operative" or "can display the

United States District Court
Northern District of California

digital artifact when the mobile device is not connected to a wireless network"—without specifying how to achieve those results. Mot. 19–20; Reply 10.

The Court agrees. For the same reasons discussed above, the Court finds that allowing a digital artifact to be displayed without an internet connection does not constitute an inventive concept. Namely, the claims do not specify the absence of an internet connection; claims relating to the lack of a network connection merely recite certain desired results for the non-browser-based application; and the underlying practice of downloading and locally storing tickets for later offline access is not inventive.

**4. Conclusion**

Ultimately, the Court finds that Blaze has not identified a non-conventional technological feature that is both adequately recited in the claims and capable of supplying an inventive concept. The alleged offline functionality is either not claimed or is expressed only in result-oriented terms; NFC's inductive communication capability was conventional, and the record indicates that its combination with internet-enabled mobile phones was already present before the asserted date; and local storage/display of digital artifacts offline was likewise known. The remaining claim elements therefore amount to conventional components performing their expected functions. *See Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017); *Universal Secure Registry*, 10 F.4th at 1353.

Accordingly, the Court finds that the amended allegations do not plausibly establish an inventive concept under *Alice* step two. The claims are thus patent ineligible under § 101, and Blaze's patent counterclaims are **DISMISSED**. Because this is Blaze's second attempt to allege an inventive concept, the Court dismisses its patent counterclaims regarding the NFC Security Patents without leave to amend.

**B. Non-Patent Claims**

The Court now moves to Blaze's non-patent counterclaims for trade secret misappropriation, breach of contract, fraud, breach of an implied covenant, unjust enrichment, and promissory estoppel. For the reasons explained below, the Court **GRANTS** Samsung's motion to

dismiss all claims with leave to amend.

**1. Trade Secret Misappropriation**

Blaze alleges federal and California trade secret counterclaims under the DTSA and CUTSA. To state a claim for misappropriation under either statute, a plaintiff must allege it "owned a trade secret," that "the defendant misappropriated the trade secret," and that "the defendant's actions damaged the plaintiff." *Antaris Techs., Inc. v. Matthews*, No. 25-CV-04048-RS, 2025 WL 1939868, at *5 (N.D. Cal. July 15, 2025). An alleged trade secret owner "is not required to disclose the details of its trade secrets" in the operative pleading. *7EDU Impact Acad. Inc. v. You et al*, 760 F. Supp. 3d 981, 993 (N.D. Cal. 2024). However, plaintiffs are still required to describe their alleged trade secrets "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020); *accord Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (Ct. App. 1968). Generally, "allegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectable trade secrets are insufficient to state a claim." *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 907 (N.D. Cal. 2023) (quoting *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020)); *see also Ross v. Abbott Vascular, Inc.*, No. 19-CV-03794-JST, 2022 WL 20275185, at *10 (N.D. Cal. Mar. 3, 2022) (allegations that trade secrets consist of "tangible and intangible business, scientific, and technical information in the form of training methods, techniques, processes, and written materials" insufficient to state a claim).

Samsung argues that Blaze failed to allege with sufficient specificity the trade secrets underlying its claim. Specifically, Samsung contends the following descriptions of Blaze's trade secrets are impermissibly broad, vague, and categorical in nature: "Blaze technical information, software designs, and other 'know how' related to its technology," Answer and Counterclaims ¶ 436; "the software architecture, source code, and software designed files," *id.*; "[v]arious aspects of these designs," "including software, server, and application configurations embodied in design

files," *id.* ¶ 426; "software architecture files," "certain presentations and other files," and "system architecture to Blaze's application platform," *id.*; and "patent claim charts," *id.* ¶ 18. Samsung cites to several cases in this District that have found similar allegations insufficient to put the opposing party on notice of the claims against them. *See, e.g.*, *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (finding alleged trade secrets of "design review templates," "fluidics design files," and "source code files" were "too broadly stated to identify the trade secrets on which [the plaintiff's] claims [were] based"); *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys.*, No. 19-4162 SBA, 2019 WL 11499334, at *3–4 (N.D. Cal. Nov. 13, 2019) (finding alleged trade secrets of "software, source code, . . . application notes, and other information used for software development" cast the purported trade secrets in "broad, categorical terms" and thus failed "to adequately identify the trade secrets" as a matter of law); *Antaris Techs.*, 2025 WL 1939868, at *6 (finding alleged trade secrets of "software architecture, current feature set, . . . the software feature preferences, . . . [and] its contracts and related documents and information" were insufficient to state a trade secret claim and were nothing more than "mere broad categories of information that potentially or generally may be subject to trade secret protection").

Blaze responds by citing paragraphs 22, 25, and 33 of its counterclaims, where Blaze argues it alleges instances of Blaze disclosing protectable Blaze-owned trade secrets to Samsung. These allegations include a description of "detailed technical inquiries from Samsung engineering staff," and communications from Blaze to Samsung disclosing "confidential intellectual property strategies with respect to developing patent protection for Blaze's inventions." Opp'n 17. Blaze also compares its allegations to those other courts in this District have found sufficient to identify a "trade secret." *See, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (finding sufficient allegations identifying "the exact technology in question: thin-film GaAs solar technology" and spelled out particular subsets of methods within that category of information, including "high throughput thin-film deposition," "epitaxial lift-off of the thin-film," and "GaAs substrate maintenance and re-use"); *Keyssa, Inc. v. Essential Prods., Inc.*, No. 17-CV-

05908-HSG, 2019 WL 176790, at *2 (N.D. Cal. Jan. 11, 2019) (finding sufficient allegations identifying trade secrets of "[s]ystem architecture to enable wireless EHF millimeter wave transmission of image data" and "[h]eat dissipation and thermal management architecture, including distribution of thermal elements and heat sinks").

The Court agrees that the amended counterclaims fail to allege with sufficient specificity the trade secrets that it alleges Samsung misappropriated. As an initial matter, the allegations in paragraphs 22, 25, and 33 merely describe communications between the two companies; they do not identify with sufficient particularity the information disclosed in those communications or allege that the identified information constituted the trade secrets at issue. The Court will only examine the facts as presented in Blaze's claims, not as presented in opposition. *See Ramos v. Gap, Inc.*, No. 23-CV-04715-HSG, 2025 WL 2144837, at *3 (N.D. Cal. July 29, 2025) (concluding "[p]laintiff's attempt to rewrite [an] allegation in the opposition" to allege a new "theory" was "improper"). Looking only to Blaze's allegations identifying its trade secrets, the Court finds Blaze's broad, vague, categorical descriptions of "technical information," "software designs," "source code," etc. are insufficient. Like the allegations in *Becton*, *Antaris*, and *Carl Zeiss*, Blaze's allegations identify broad categories of potentially protectable information rather than allege facts with sufficient specificity to distinguish alleged trade secrets from information generally known in the relevant industry. *Compare* Answer and Counterclaims ¶ 436 ("Blaze technical information, software designs, and other 'know how' related to its technology[,] . . . the software architecture, source code, and software designed files"), ¶ 426 ("[v]arious aspects of these designs," "including software, server, and application configurations embodied in design files"), *with Becton*, 2018 WL 2298500, at *3 ("design review templates," "fluidics design files," and "source code files"); *compare* Answer and Counterclaims ¶ 426 ("software architecture files[,] . . . certain presentations and other files[,] . . . system architecture to Blaze's application platform"), *with Antaris Techs.*, 2025 WL 1939868, at *6 ("software architecture, current feature set, . . . the software feature preferences, . . . its contracts and related documents and information") and *Carl Zeiss*, 2019 WL 11499334, at *3–4 ("software, source code, . . . application notes, and

other information used for software development”).

The Court therefore **GRANTS** Samsung’s motion to dismiss Blaze’s trade secret counterclaims with leave to amend to identify its protected trade secrets with greater specificity. *Lopez*, 203 F.3d at 1127.

**2. Breach of Contract**

Next, Blaze alleges a breach of contract claim under New York state law.[4] Under New York law, breach of contract requires: “(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.” *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624–25 (S.D.N.Y. 2013).

Samsung argues that Blaze similarly describes the conduct constituting “breach” in impermissibly vague terms. Blaze alleges that Samsung breached the parties’ NDA by using “the information disclosed to Samsung by Blaze to pursue PTO proceedings,” Answer and Counterclaims ¶ 413; “disseminating Blaze confidential information to its engineering staff and senior executives … to evaluate and improve Samsung’s products,” *id.* ¶ 414; (3) disclosing “Blaze’s confidential information during PTO proceedings,” *id.* ¶ 415; (4) failing to notify Blaze of its use of Blaze’s confidential information, *id.* ¶¶ 416–17; failing to engage with Blaze in good faith, *id.* ¶ 418; and (6) failing to return Blaze’s trade secrets, *id.* ¶ 419. Samsung contends that, while Blaze alleges Samsung disclosed, used, and failed to return Blaze’s “confidential information” in violation of the parties’ NDA, Blaze does not identify “confidential information.” Samsung contends these allegations are similar to those other courts in this District have also found impermissibly vague. *See, e.g.*, *LyricFind, Inc. v. Musixmatch, S.p.A.*, 798 F. Supp. 3d 1040 (N.D. Cal. Sept. 3, 2025) (finding allegations that defendants had access to “confidential information about [plaintiff’s] business, including financials, commercial relationships, and regulatory concerns” and breached the parties’ NDA by “intentionally disclos[ing] and misrepresent[ing] this confidential information about [the plaintiff]’s perceived vulnerabilities”

---

[4] Blaze alleges breach of contract under “New York Law” pursuant to the NDA’s choice-of-law provision. *See* Answer and Counterclaims, at 103.

insufficient); *see also Magic Leap, Inc. v. Chi Xu*, No. 19-CV-03445-LHK, 2020 WL 3268659, at *4–5 (N.D. Cal. June 17, 2020) (dismissing breach of confidentiality agreement claim due to lack of specificity as to allegedly confidential information).

Apart from reciting the allegations noted in the prior paragraph, Blaze briefly argues the allegations here share more similarities to those in *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, No. 3:21-CV-00105-BEN-KSC, 2022 WL 801743, at *14 (S.D. Cal. Mar. 15, 2022), which found "Plaintiffs [] successfully ple[]d breach of the NDAs by Defendants, based on allegations that Defendants were not permitted to disclose confidential information covered by the NDA but did so despite their contractual obligations."

The Court similarly finds Samsung's alleged misuse of "confidential" information insufficient to establish breach. Blaze's allegations that Samsung used "the information disclosed to Samsung by Blaze to pursue PTO proceedings" and disseminated "confidential information" differ materially from those in *XpandOrtho*, where the plaintiffs identified the confidential materials with greater specificity. *See XpandOrtho*, 2022 WL 801743 (finding identification of confidential materials sufficient where allegations "detailed engineering drawings of the [product] including three-dimensional CAD models of the individual components, as well as assemblies of the components," "two-dimensional engineering drawings ('blueprints') used for manufacturing the parts' consisting of 'precise dimensions, manufacturing tolerances, assembly instructions, material to use for each component,'" and "the condyle plate, along with the components, instructions for assembly, detailed dimensions"). And while vague descriptions of confidential information would be problematic in any pleading, the fact that "confidential information" is a term of art in the NDAs is significant. As pled, there are no facts to allow the Court to infer that the "confidential information" Blaze references in the counterclaims is the same "confidential information" as defined by the NDAs.

The Court therefore **GRANTS** Samsung's motion to dismiss Blaze's breach of contract counterclaim with leave to amend to allege in greater detail the conduct constituting breach. *Lopez*, 203 F.3d at 1127.

United States District Court
Northern District of California

**3. Fraud**

Blaze also alleges Samsung committed fraud by making material misrepresentations while negotiating with Blaze in order to misappropriate Blaze's trade secrets.

Samsung argues Blaze's claim is preempted by the California Uniform Trade Secrets Act ("CUTSA"). The CUTSA "implicitly preempts alternative civil remedies based on trade secret misappropriation." *Movement Mortg., LLC v. Scrima*, No. 2:23-CV-02904-DJC-CSK, 2024 WL 3011202, at *2 (E.D. Cal. June 11, 2024) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009)); *see also Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). "The statute's preemptive sweep is broad—it supersedes all claims premised on the wrongful taking and use of confidential and proprietary information, even if that information does not meet the statutory definition of a trade secret." *Movement Mortgage*, 2024 WL 3011202, at *2. Any state law claim that is "based on the same nucleus of facts as trade secret misappropriation" is preempted. *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (quoting *K.C. Multimedia*, 171 Cal. App. 4th at 962); *see also, e.g., Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *6 (N.D. Cal. Apr. 13, 2015) (finding fraud claim preempted where the materials the plaintiffs alleged they were fraudulently induced to share "were trade secrets"); *Movement Mortgage*, 2024 WL 3011202, at *3 (holding that the plaintiff's intentional interference and solicitation claim was preempted by CUTSA because the plaintiff alleged the "[d]efendant's use of the misappropriated trade secrets" "result[ed] in the successful solicitation of fifty (50) . . . employees whom Defendants could not have solicited without the trade secret and data theft described herein").

Samsung contends Blaze's CUTSA and fraud counterclaims are based on the same alleged conduct and facts: Samsung's intentional misappropriation of Blaze's confidential and trade secret information through fraudulent negotiations and misrepresentations. Specifically, Blaze alleges that Samsung's misappropriation was "fraudulent" as part of its CUTSA claim; and as part of its fraud claim, Blaze alleges that Samsung made "false representations and . . . assurances to Blaze

to induce Blaze to disclose confidential and trade secret information to Samsung." Answer and Counterclaims ¶¶ 401, 439; *see also, e.g., id.* ¶ 402 (alleging Samsung's representations were false when "Blaze shared its confidential information, trade secrets, and patent prosecution and assertion strategies with Samsung" and therefore constituted fraud); ¶ 397 (Samsung's false statements were "intended to lure Blaze into disclosing its technology"); ¶ 398 (Samsung used "Blaze's information"); ¶ 399 (alleging Samsung improperly "utilize[ed] Blaze's technical details"); and ¶ 404 (alleging Samsung did not disclose "its true plans to use Blaze's IP and technology").

Blaze contends that its fraud allegations extend beyond the misappropriation of confidential information and encompass broader misconduct directed toward inducing Blaze's reliance for Samsung's own benefit. Blaze highlights that its claims also reference "fraudulent inducement regarding Blaze's technology, strategy, and litigation approach, as well as the undermining of Blaze's patent prosecution strategy and litigation positions, which constitute independent acts of fraud." Opp'n 23.

The Court agrees with Samsung here as well. The factual basis for Blaze's fraud and misappropriation counterclaims are inherently intertwined—both arise from Samsung's alleged intentional misappropriation of Blaze's confidential and trade secret information through the alleged fraudulent negotiations and misrepresentations. And while Blaze is correct that its fraud claim also includes allegations of fraudulent inducement, this does not save its claim. The CUTSA preemption analysis "asks whether, 'stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action.'" *Snapkeys, Ltd.* v. *Google LLC,* 442 F. Supp. 3d 1196, 1205 (N.D. Cal. 2020). Courts within this District have repeatedly "found fraud claims superseded by CUTSA where a defendant is alleged to have made misrepresentations to induce the plaintiff to offer . . . confidential information." *Id.* So too here, the Court finds allegations regarding Samsung's misrepresentations do not save Blaze's fraud claim from preemption. The alleged misrepresentations matter only because they allegedly induced Blaze to disclose the very

information that Samsung later misappropriated.

The Court therefore **GRANTS** Samsung's motion to dismiss as preempted by the CUTSA Blaze's fraud counterclaim with leave to amend. *Lopez*, 203 F.3d at 1127.

**4. Breach of the Implied Covenant**

Blaze also alleges that Samsung's failure to negotiate a license and/or sales agreement with Blaze in good faith constitutes a breach of the covenant of good faith and fair dealing implied in the NDAs. Under New York law, an implied covenant encompasses only those promises which a reasonable person would understand would be included in the contract. *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 93 (S.D.N.Y. 2018).[5]

Samsung contends this claim impermissibly broadens the scope of the NDAs. According to Samsung, Blaze's claim requires reading into the NDAs an additional affirmative duty "to negotiate a license and/or sale agreement with Blaze," and then further requires that such negotiations be conducted in "good faith." Samsung argues that the NDAs do not concern licensing negotiations or contain a provision requiring both parties to negotiate; they encompass an exchange of trade secret and confidential information without any reference to negotiations.

Blaze does not meaningfully respond to this argument, instead summarily contending that "relief to Blaze is available under the implied covenant and distinct in situations where the factfinder concludes Samsung's conduct, though technically compliant with contract terms, frustrated Blaze's reasonable contractual expectations." Opp'n 27.

The Court finds Samsung's arguments persuasive. Because the NDAs contain no obligation to negotiate a license or sale, Blaze cannot use the implied covenant to impose such an affirmative obligation on Samsung. *See Skanska USA Bldg. Inc. v. Regeneron Pharms. Inc.*, No. 23-CV-8418 (PMH), 2024 WL 3274731, at *5 (S.D.N.Y. July 1, 2024) (dismissing implied covenant claim where there was "no obligation to negotiate"). In other words, Blaze's claim is inconsistent with the purpose of the NDAs and constitutes an unreasonable and implausible

[5] Blaze also alleges breach of contract under "New York Law" here pursuant to the NDA's choice-of-law provision. *See* Counterclaims, at 108.

reading. *See, e.g., id.*; *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 400 (S.D.N.Y. 2019) (refusing to read additional obligations into an NDA for purposes of a breach of implied covenant claim).

The Court therefore **GRANTS** Samsung's motion to dismiss Blaze's breach of the implied covenant of good faith and fair dealing with leave to amend. *Lopez*, 203 F.3d at 1127.

**5. Unjust Enrichment**

Blaze also brings an unjust enrichment claim, alleging that "Samsung unjustly retained for itself the benefits of Blaze's trade secret in order to enhance its own processes and advance its own development and manufacturing of Samsung Pay features that compete against Blaze's products, and to invalidate the Blaze patents as those patents threatened the financial success of Samsung's products." Answer and Counterclaims ¶ 453.

Samsung contends that Blaze's unjust enrichment claim fails as a matter of law because unjust enrichment is not a separate cause of action in California. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (collecting cases).[6] Blaze does not respond to this argument or line of cases.

Samsung is correct that "unjust enrichment" is not a separate cause of action in California. However, the Ninth Circuit has also held that "when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation modified); *see also Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1132–33 (N.D. Cal. 2023) ("[B]oth the Ninth Circuit and the California Supreme Court construe California law to permit a cause of action for unjust enrichment."). Even so, Blaze's claim still fails under a quasi-contract theory. "[A] quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016)

---

[6] Unlike the preceding state law claims, Blaze does not identify its unjust enrichment claim as arising under New York state law, and it did not dispute Samsung's use of California state law in its opposition. *See* Answer and Counterclaims, at 109, 110.

(internal quotation marks omitted) (quoting *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172 (2001)). Because the NDAs are express, binding agreements governing the parties' exchange and use of confidential information, Blaze cannot maintain a quasi-contract claim based on the same subject matter. While Blaze briefly contends that its unjust enrichment claim addresses conduct outside of its breach of NDA claim, it does not explain how or cite to any portion of the counterclaims in support.

The Court therefore **GRANTS** Samsung's motion to dismiss Blaze's unjust enrichment counterclaim with leave to amend. *Lopez*, 203 F.3d at 1127.

**6. Promissory Estoppel**

Finally, Blaze's promissory estoppel claim alleges that "Samsung promised Blaze it would negotiate a patent license or sale in good faith." Answer and Counterclaims ¶ 457. Among other elements, promissory estoppel requires the existence of a "clear and unambiguous" promise. *Bhandari v. Cap. One, N.A.*, No. C 12-04533 PSG, 2012 WL 6725898, at *6 (N.D. Cal. Dec. 27, 2012).

Samsung contends that this claim fails because Blaze does not identify when and where Samsung made this "promise." In other words, the alleged "promise" to negotiate in good faith is not clear and unambiguous—at best, Samsung contends the alleged "promise" may be derived from an "implied" clause in the parties' NDAs.

Blaze rebuts that it "supplie[d] factual context suggesting the understanding was mutual and specific to induce Blaze's disclosures and reliance during the parties' negotiations." Opp'n 29. In support, Blaze cites to paragraph 457 of its counterclaims, which provides: "Samsung promised Blaze it would negotiate a patent license or sale in good faith." Answer and Counterclaims ¶ 457.

The Court finds dismissal of this claim appropriate as well. Blaze fails to allege facts establishing when, where, or how Samsung made such a promise to negotiate in good faith, and even if the alleged promise was implied by the NDAs, "[a]n 'impliedly understood' promise is not a clear and definite promise." *Perez v. CitiMortgage, Inc.*, No. ACV 14-00355-DOC, 2014 WL

United States District Court
Northern District of California

2609656, at *10 (C.D. Cal. June 10, 2014).

The Court therefore **GRANTS** Samsung's motion to dismiss Blaze's promissory estoppel counterclaim with leave to amend. *Lopez*, 203 F.3d at 1127.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Samsung's motion to dismiss. Should Blaze wish to file amended non-patent counterclaims, it must do so by October 21, 2026.

**IT IS SO ORDERED.**

Dated: September 30, 2026

EDWARD J. DAVILA
United States District Judge